**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

COUPONS, INC.,

                    Plaintiff,

          v.                                         Case No. 1:06-CV-00142 HHK


ELLEN A. EFROS, ESQ.; RONALD P.
KANANEN, ESQ.; RADER, FISHMAN &
GRAUER, PLLC; and DOES 1-20

                    Defendants

## ANSWER AND COUNTERCLAIM

### DEFENDANTS' ANSWER TO COMPLAINT

NOW COME defendants Ellen A. Efros ("Efros"), Ronald P. Kananen ("Kananen"),
and Rader, Fishman & Grauer, PLLC ("Rader"; collectively, "Defendants"), by and through
their attorneys, and for their answer to the Complaint for Legal Malpractice ("Complaint") of
plaintiff Coupons, Inc. ("Plaintiff" or sometimes "Coupons"), state as follows:

      1.      Responding to paragraph 1 of the Complaint, Defendants admit that Coupons,
Inc. purported to be a California corporation having its principal place of business at the
location specified and that it purported to perform the services specified.

      2.      Responding to paragraph 2 of the Complaint, Defendants admit the allegations
thereof.

      3.      Responding to paragraph 3 of the Complaint, Defendants admit that Ellen A.
Efros is a resident of the District of Columbia.  Defendants deny that Ronald P. Kananen is a
resident of the District of Columbia.

4.      Responding to paragraph 4 of the Complaint, Defendants admit the allegations thereof.  However, Defendants deny that Efros is presently a partner in Rader, Fishman & Grauer, PLLC.

5.      To the extent paragraph 5 of the Complaint consists of legal conclusions, Defendants are not required to respond thereto.  To the extent paragraph 5 of the Complaint consists of factual allegations, Defendants are without information sufficient to form a belief as to the truth of the matters stated therein and on that basis deny the allegations thereof.

6.      Responding to paragraph 6 of the Complaint, Defendants admit that Coupons obtained insurance policies from Indian Harbor Insurance Company but otherwise deny the allegations of paragraph 6 as the terms of such policies are set forth in the policies.  To the extent that paragraph 6 consists of legal conclusions, Defendants are not required to respond thereto.

7.      Responding to paragraph 6 of the Complaint, Defendants admit that Coupons obtained insurance policies from Indian Harbor Insurance Company but otherwise deny the allegations of paragraph 7 as the terms of such policies are set forth in the policies.  To the extent that paragraph 6 consists of legal conclusions, Defendants are not required to respond thereto.

8.      Responding to paragraph 8 of the Complaint, Defendants admit the allegations of the first sentence thereof and that Coupons retained Rader to represent it in *Black Diamond CCT Holdings, LLC, et al. v. Coupons, Inc.,* Case No. RDB-02-CV3701 (the "Black Diamond Litigation").  Defendants otherwise deny the allegations of paragraph 8 of the Complaint.

9.      Responding to paragraph 9 of the Complaint, Defendants admit that with the assistance of Plaintiff, Efros prepared answer to the complaint in the Black Diamond Litigation. Defendants otherwise deny the allegations of paragraph 9 of the Complaint.

10.     Responding to paragraph 10 of the Complaint, Defendants admit that Coupons retained Rader to perform certain patent searches in 2001 and 2002 and that Rader provided certain patent search results to Coupons.  Defendants also admit that Rader found "at least one of the patents that was later the subject of the Black Diamond Litigation."  Defendants otherwise deny the allegations of paragraph 10 of the Complaint.

11.     Responding to the first sentence of paragraph 11 of the Complaint, Defendants admit that on or about December 16, 2002, Efros sent a letter to Michael Reever of Marsh Advantage America referencing the Black Diamond Litigation.  Defendants otherwise deny the allegations of the first sentence of paragraph 11 as the content of the letter is set forth in the letter.  Responding to the second sentence of paragraph 11 of the Complaint, Defendants admit that Intellectual Property Insurance Services Corporation sent a letter addressed to Francis L. Serafin, Chief Executive Officer of Coupons, Inc., dated December 27 2002 which referenced December 16, 2002 correspondence from Efros and contained the statement, "**Please note, only our receipt of our claim form can constitute notice to us of a CLAIM**."  Defendants otherwise deny the allegations of paragraph 11 of the Complaint.

12.     In response to paragraph 12 of the Complaint, Defendants admit that in January 2003, before Coupons' made the decision not to pursue coverage and instructed Defendant not to pursue coverage, Efros began to work on preparing the necessary information to complete a claim form in support of a request for coverage for the Black Diamond Litigation.  Defendants also admit that Coupons' president, Steven Boal, expressed his belief that the cost of defending

the Black Diamond Lawsuit would not exceed the $500,000 retention under the applicable

policy. Based, in part, on that consideration, Coupons instructed Defendants not to submit a

claim form to Coupons' insurance carrier. Defendants deny the remaining allegations of

paragraph 12.

13.    In response to paragraph 13 of the Complaint, Defendants deny the allegations

thereof.

14.    Responding to the first and second sentences of paragraph 14 of the Complaint,

Defendants admit that on December 1, 2003, Efros sent an email to Frank Serafin at Coupons

which referenced the topic of insurance coverage. Defendants otherwise deny the allegations

of the first and second sentences of paragraph 14 concerning the content of the email message

as such content is set forth in the message itself. Responding to the third sentence of paragraph

14 of the Complaint, Defendants are without information sufficient to form a belief as to the

truth of the allegations and on that basis deny the allegations. Defendants deny the allegations

of the fourth sentence of paragraph 14 of the Complaint.

15.    Responding to paragraph 15 of the Complaint, Defendants admit that, at the

instruction of Coupons' officers' Steven Boal and Jeffrey Weitzman, Efros assisted Coupons

with the preparation of an insurance claim form and that she submitted it to Intellectual

Property Insurance Services Corporation on or about January 22, 2004. Defendants deny the

remaining allegations of paragraph 15 of the complaint.

16.    Responding to paragraph 16 of the Complaint, Defendants admit that

Intellectual Property Insurance Services Corporation sent a letter dated July 2, 2004 to Efros

addressing Coupons' claim for insurance coverage for the Black Diamond Litigation.

Responding to the allegations of paragraph 16 concerning the alleged content of the July 2,

4

2004 letter, Defendants deny such allegations on the ground that the actual content of the letter is set forth in the letter.  With respect to the status of any arbitration between Coupons and Indian Harbor, Defendants are without information sufficient to form a belief as to the truth of the matter stated and, on that basis, deny the allegation.  Defendants deny all other allegations of paragraph 16.

17.     Responding to the first sentence of paragraph 17 of the Complaint, Defendants are without sufficient information sufficient to form a belief as to the truth of the matters stated therein and on that basis deny the allegations thereof.  To the extent that the balance of paragraph 17 of the Complaint consists of legal conclusions, Defendants are not required to respond thereto.  To the extent that the balance of paragraph 17 consists of factual allegations, Defendants deny the allegations thereof.

18.     Defendants incorporate herein by reference, as though set forth in full, paragraphs 1 through 17, inclusive, above.

19.     Paragraph 19 of the Complaint consists of legal conclusions and Defendants are not required to respond thereto.

20.     To the extent that paragraph 20 of the Complaint consists of legal conclusions, Defendants are not required to respond thereto.  To the extent that paragraph 20 consists of factual allegations, such allegations are denied.  In particular, Defendants deny they breached any duty owed to Coupons.

21.     To the extent that paragraph 21 of the Complaint consists of legal conclusions, Defendants are not required to respond thereto.  To the extent that paragraph 21 consists of factual allegations, such allegations are denied.  In particular, Defendants deny that their

actions were the direct or proximate cause of any losses or damages. In addition, they deny that Coupons suffered legally cognizable losses or damages in any amount.

22.    Defendants incorporate herein by reference, as though set forth in full, paragraphs 1 through 21, inclusive, above.

23.    Paragraph 23 of the Complaint consists of legal conclusions and Defendants are not required to respond thereto.

24.    To the extent that paragraph 24 of the Complaint consists of legal conclusions, Defendants are not required to respond thereto. To the extent that paragraph 24 consists of factual allegations, such allegations are denied. In particular, Defendants deny they breached any duty owed to Coupons.

25.    To the extent that paragraph 25 of the Complaint consists of legal conclusions, Defendants are not required to respond thereto. To the extent that paragraph 25 of the Complaint consists of factual allegations, such allegations are denied. In particular, Defendants deny that their actions were the direct or proximate cause of any losses or damages. In addition, they deny that Coupons suffered legally cognizable losses or damages in any amount.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The complaint fails to state a claim upon which relief can be granted in favor of Plaintiff against each and/or any defendant.

### SECOND AFFIRMATIVE DEFENSE

The complaint is barred by the doctrine of waiver and/or estoppel.

### THIRD AFFIRMATIVE DEFENSE

The complaint is barred by the doctrine of assumption of the risk.

### FOURTH AFFIRMATIVE DEFENSE

The complaint is barred because none of the Defendants' alleged acts or omissions proximately caused the harm or damages alleged by Plaintiff.

### FIFTH AFFIRMATIVE DEFENSE

The complaint is barred because Plaintiff suffered no legally cognizable damages.

### SIXTH AFFIRMATIVE DEFENSE

The complaint is barred by Plaintiff's failure to act reasonably to minimize or mitigate the damages or injuries alleged in the complaint.

### SEVENTH AFFIRMATIVE DEFENSE

Persons or entities other than these answering Defendants so negligently, carelessly, and recklessly conducted themselves so as to proximately cause the incident and damages alleged in the Complaint, and such conduct was the intervening and/or superseding cause of the incident and damages alleged, thereby barring any recovery against these answering Defendants.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff was contributorily negligent in bringing about the damages alleged in the Complaint.

### NINTH AFFIRMATIVE DEFENSE

The Complaint is barred by the doctrine of unclean hands.

### TENTH AFFIRMATIVE DEFENSE

Defendants fully and completely fulfilled their duties to Plaintiff, if any, and exercised proper care and skill in doing so.

### ELEVENTH AFFIRMATIVE DEFENSE

The complaint is barred by the fraudulent, bad faith and/or wrongful conduct of Plaintiff, as alleged in the counterclaim filed in this action by Rader against Coupons.

## TWELFTH AFFIRMATIVE DEFENSE

Without conceding that any act of Rader caused damages to Plaintiff or any other person in any respect, Rader alleges that it is entitled to offset and recoup against any judgment that may be entered against it all obligations of Plaintiff owing to Rader. Offset and recoupment are appropriate by reason of Plaintiff's fraud, breach of contract, bad faith and other wrongful conduct and breaches.

WHEREFORE, having answered the Complaint, Defendants request that the Complaint be dismissed with prejudice, and that they be awarded reasonable costs and expenses associated with defending against the Complaint, and that the Court grant such other relief as is appropriate under the circumstances.

[End of Answer. Counterclaim begins on following page.]

## COUNTERCLAIM OF RADER, FISHMAN & GRAUER, PLLC AGAINST COUPONS, INC.

NOW COMES counterclaim-plaintiff Rader, Fishman & Grauer, PLLC ("Rader"), by and through its attorneys, and for its counterclaim against counterclaim-defendant Coupons, Inc. ("Coupons"), alleges as follows:

1.      The Court has jurisdiction of this counterclaim pursuant 28 U.S.C. §1332.  The counterclaim-plaintiff and counterclaim-defendants are completely diverse, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2.      In November of 2002, Coupons was named as a defendant in the lawsuit titled *Black Diamond CCT, et al. v. Coupons, Inc.* (the "Black Diamond Litigation").

3.      On or about December 3, 2002, Rader sent an engagement letter (the "Engagement Letter") to Coupons.  The Engagement Letter offered terms and conditions pursuant to which Rader would represent Coupons in the Black Diamond Litigation.  The Engagement Letter was signed on behalf of Rader by Ellen A. Efros ("Efros"), a partner of the firm at the time.

4.      Coupons accepted the terms and conditions set forth in the Engagement Letter, and an officer of Coupons counter-signed the Engagement Letter.

5.      Pursuant to the terms and conditions set forth in the Engagement Letter, Coupons agreed to pay Rader a "reasonable fee" for Rader's representation of Coupons in the Black Diamond Litigation, based "primarily on hourly rates."

6.      Pursuant to the terms and conditions set forth in the Engagement Letter, Coupons further agreed to reimburse Rader for certain out-of-pocket expenses incurred by Rader, and disbursements made by Rader, in connection with that representation.

7.    The Engagement Letter stated that Rader would "send [Coupons] monthly invoices" and that Coupons "agree[d] to pay in full within thirty (30) days of receipt."

8.    Coupons' obligation to pay Rader's invoices within 30 days was emphasized in a later section of the Engagement letter, which described generally the client's responsibilities. Among the client's responsibilities set forth in that portion of the Engagement Letter was the responsibility to "remit payment of [Rader's] billing statements within thirty (30) days of receipt."

9.    The Engagement Letter provided that, subject to its "ethical and professional obligations," Rader could "terminate its legal services and withdraw from [the] engagement in the event [its] fee statements [were] not paid in a timely manner."

10.    By 2004, Coupons was seriously behind on its payments of Rader's invoices relating to the Black Diamond Litigation. Coupons consistently was failing to pay those invoices within the 30-day period required by the Engagement Letter.

11.    Beginning in approximately the middle of 2004, Efros and another Rader partner, Ronald P. Kananen ("Kananen"), had numerous conversations with Steven Boal ("Boal"), the CEO of Coupons, concerning Coupons' failure to pay Rader's invoices in a timely fashion. In those conversations, Boal repeatedly represented that Coupons would get "caught up" on those invoices, and would begin to comply with the 30-day payment period required by the Engagement Letter.

12.    As a result of those representations, Rader continued to represent Coupons in the Black Diamond Litigation, and did not exercise its contractual right to withdraw.

13.     However, those representations were untrue.  Coupons never "caught up" on Rader's invoices, and continued to fail to comply with the 30-day payment period required by the Engagement Letter.

14.     In October 2004, Boal informed Efros and Kananen that Coupons was retaining a new law firm, and that this new law firm would take on primary responsibility for the Black Diamond Litigation.  Boal asked Efros if she would continue to work on the Black Diamond Litigation, along with the new law firm, because of her in-depth knowledge of the case.  During that conversation, Efros again reminded Boal that Coupons was far behind in its payment of Rader's invoices.  Boal responded with a representation that Rader would be "paid in full" by the end of calendar year 2004.

15.     In reliance upon Boal's representation that Rader's invoices would be paid "in full" by the end of calendar year 2004, Rader continued to represent Coupons in the Black Diamond Litigation, in the role of assisting the new law firm, and in so doing incurred additional fees, expenses and disbursements.

16.     Boal's representation that Rader would be "paid in full" by the end of calendar year 2002 was untrue.

17.     Rader completed the majority of its work on Black Diamond Litigation representation by the end of calendar year 2004.  On March 29, 2005, Rader sent its final invoice to Coupons for the Black Diamond Litigation representation.  As of that date, Coupons owed $399,617.28.

18.     Coupons subsequently made a number of small payments totaling $7,065.43.

19.     As of the filing of this counterclaim, Coupons has failed to pay $392,551.85 in fees, expenses and disbursements for which it was invoiced by Rader.

20.    At no time prior to the filing of this lawsuit did Coupons ever challenge or object to the amounts stated in any of Rader's invoices relating to the Black Diamond Litigation.

## COUNT 1: BREACH OF CONTRACT

21.    Paragraphs 1 through 20 are incorporated herein by reference.

22.    The Engagement Letter was a contract between Rader and Coupons.

23.    The Engagement Letter required Coupons to pay the fees, expenses and disbursements set forth in Rader's invoices, and to do so within 30 days of receipt.

24.    Coupons breached the terms of the Engagement Letter by failing to make payment of the amounts set forth in Rader's invoices within 30 days of receipt.

25.    Rader has been damaged by Coupons' breach of the Engagement Letter.

## COUNT 2:  QUANTUM MERUIT/UNJUST ENRICHMENT

26.    Paragraphs 1 through 25 are incorporated herein by reference.

27.    Rader provided valuable services to Coupons by representing Coupons in the Black Diamond Litigation.

28.    Rader provided those valuable services to Coupons after notifying Coupons that it expected to be paid for those valuable services.

29.    Coupons has failed to pay Rader for those valuable services.

30.    By accepting those valuable services, but failing to pay for them, Coupons has been unjustly enriched.

31.    As a result, Rader has been damaged.

## COUNT 3:  ACCOUNTS STATED

32.      Paragraphs 1 through 31 are incorporated herein by reference.

33.      Rader rendered invoices to Coupons for services provided by Rader to Coupons in connection with the Black Diamond Litigation.

34.      At the time it received those invoices, Coupons knew and understood that those invoices were demands for payment no later than 30 days after receipt.

35.      Coupons did not challenge or object to the amounts stated in those invoices.

36.      Accordingly, Rader's invoices were accounts stated, and Coupons is liable for the full amount of those invoices.

37.      Coupons has failed to pay those invoices.

38.      As a result, Rader has been damaged.

## COUNT 4:  FRAUD

39.      Paragraphs 1 through 38 are incorporated herein by reference.

40.      As set forth above, during the course of Rader's representation of Coupons in the Black Diamond Litigation, Boal represented to Efros and/or Kananen that Coupons would get "caught up" on Rader's invoices, and that those invoices would be "paid in full" by the end of calendar year 2004.

41.      Boal made those representations within the scope of his employment and authority as the Chief Executive Officer of Coupons.

42.      Upon information and belief, at the time those representations were made, they were untrue, and Coupons had no present intention to get "caught up" on Rader's invoices or to pay those invoices "in full" by the end of calendar year 2004.

43.    Upon information and belief, Boal made those representations with an intent to deceive Rader, and to induce Rader to continue its representation of Coupons in the Black Diamond Litigation.

44.    Boal's false representations were material to Rader, and Rader took actions in reliance upon Boal's false representations.  Rader continued to represent Coupons in the Black Diamond Litigation, did not exercise its contractual right to withdraw from that representation, and continued to incur additional fees and expenses.

45.    As a result, Rader has been damaged.

## COUNT 5: BAD FAITH LITIGATION

46.    Paragraphs 1 through 45 are incorporated herein by reference.

47.    This action was brought by Coupons against Rader in bad faith.

48.    The complaint that Coupons has filed against Rader contains allegations that are false and/or without factual basis, and that are known to Coupons to be false and/or without factual basis.

49.    Among the allegations in the complaint that are false and/or without factual basis are the following:

　　　a.    The allegation, contained in the introductory paragraph, that "Kananen conducted patent searches on behalf of Coupons for the express purpose of submitting the results of those searches to Indian Harbor Insurance Company."

　　　b.    The allegation, contained in the introductory paragraph, that "neither Efros nor any other attorney at Rader advised Coupons that Coupons' failure to timely submit an official claim form to Indian Harbor could

result in loss of insurance coverage for the patent infringement lawsuit

that E-Centives, Inc. had filed against Coupons."

c. The allegation, contained in Paragraph 10, that, in 2001, Kananen

"provided a search and opinion letter to . . . Indian Harbor."

d. The allegation, contained in Paragraph 14, that December 12, 2003 was

"Coupons' first indication that there might have been a deadline for

submitting its Claim Form."

50.     If Coupons attempts to "prove" that these allegations are true, it necessarily will

be relying upon perjured testimony or other forms of falsified evidence, and thus will be

engaged in further bad faith litigation and an attempted fraud on the court.

51.     Because this lawsuit was brought by Coupons in bad faith, Rader is entitled to

recover all of its reasonable attorneys' fees and expenses incurred in connection with this

lawsuit.

52.     The filing of this lawsuit in bad faith was done by Coupons with malice and evil

motive, and in reckless or willful disregard of the rights of Rader, Efros and Kananen.  If

Coupons attempts to "prove" the allegations in the complaint that it knows to be untrue and/or

unsupported by any evidence, it necessarily will be taking further actions with malice and evil

motive, and in reckless or willful disregard of the rights of Rader, Efros and Kananen.

Accordingly, punitive damages should be imposed against Coupons.

WHEREFORE, counterclaim-plaintiff requests the following relief:

1.     Compensatory damages;

2.     Pre-judgment interest on the compensatory damages;

3.     Punitive damages;

4.     An award of attorneys' fees and expenses incurred in connection with this

lawsuit;

5.     Post-judgment interest on all amounts awarded; and

6.     Such other and further relief as the Court deems just and proper.


                              Respectfully submitted,


                              _____/s/_____
                              Jonathan K. Tycko
                                D.C. Bar No. 445851
                              Kathleen R. Hartnett
                                D.C. Bar No. 483250
                              TYCKO, ZAVAREEI & SPIVA LLP
                              2000 L Street, N.W., Suite 808
                              Washington, D.C. 20036
                              (202) 973-0900
                              (202) 973-0950 (fax)
                              jtycko@tzslaw.com
                              khartnett@tzslaw.com

                              Of counsel:

                              Steven D. Wasserman
                              Mark J. Hancock
                              SEDGWICK, DETERT, MORAN & ARNOLD LLP
                              One Market Plaza
                              Steuart Tower, 8th Floor
                              San Francisco, California 94105
                              (415) 781-7900
                              (415) 781-2635 (fax)

                              *Attorneys for Defendants Ellen A. Efros, Esq.,
                              Ronald P. Kananen, Esq., and Rader, Fishman
                              & Grauer, PLLC*

## CERTIFICATE OF SERVICE

Undersigned hereby certifies that on this 23rd day of February, 2006, the foregoing

Answer And Counterclaim was served via U.S. mail, first class, postage prepaid, upon:

>       Neil A. Goteiner
>       Farrella Braun & Martel LLP
>       235 Montgomery Street, 30th Floor
>       San Francisco, CA 94104


                            _____/s/_____
                            Jonathan K. Tycko