THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COUPONS, INC.,<br><br>      Plaintiff,<br><br>  v.<br><br>ELLEN A. EFROS, ESQ.; RONALD P. KANANEN, ESQ.; RADER, FISHMAN & GRAUER, PLLC; and DOES 1-20,<br><br>      Defendants. | Case No. 1:06-CV-00142 HHK<br><br>**ORAL ARGUMENT REQUESTED** |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INDIAN HARBOR INSURANCE COMPANY'S MOTION TO INTERVENE

On February 23, 2006, defendants Ellen Efros, Ronald Kananen and Rader, Fishman & Grauer, PLLC (collectively "Defendants") filed an answer and counterclaim in this legal malpractice action after it was transferred to this Court from the United States District Court for the Northern District of California. Together with plaintiff Coupons, Inc.'s ("Coupons") complaint, Defendants' answer and counterclaim raise legal and factual issues that relate to the dispute between Indian Harbor Insurance Company ("Indian Harbor") and Coupons in a pending California arbitration proceeding. For the reasons set forth below, Indian Harbor respectfully requests that the Court grant its motion to intervene of right pursuant to Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(2).

### BACKGROUND

**A.**  **Coupons' Demand For Arbitration Against Indian Harbor**

Indian Harbor issued a specialized claims-made and reported Intellectual Property Infringement Defense Cost Reimbursement Policy (the "Policy") to Coupons. Thereafter, Coupons was sued in a patent infringement action entitled *Black Diamond v. Coupons, Inc.*,

United States District Court for the District of Maryland, Case No. L02CV3701 (the "Underlying Action"). Indian Harbor declined to reimburse Coupons for the defense and settlement of the Underlying Action for, among other reasons: (1) Coupons' untimely CLAIM[1] submission barred coverage for the Underlying Action; and (2) Coupons' (or its agents') knowledge of the patents-in-suit prior to the effective date of the Policy barred coverage for the Underlying Action under Exclusion 9 in the Policy. Coupons then submitted a Demand For Arbitration against Indian Harbor with the American Arbitration Association asserting claims for declaratory relief, breach of contract and "bad faith."[2]

### B. Coupons' Legal Malpractice Complaint Against Defendants

On July 26, 2005, Coupons sued Defendants, Coupons' former counsel, for legal malpractice alleging, *inter alia*, that they: (1) failed to disclose patents material to Coupons' application for and renewal of the Policy; (2) failed to advise Coupons concerning the timely submission of a CLAIM to Indian Harbor; and (3) asserted a defense that caused Coupons to pay more to settle the Underlying Action. (Coupons' Complaint, ¶¶ 9-12.).[3]

This suit was originally commenced in the Superior Court of Santa Clara, then removed to the United States District Court for the Northern District of California and subsequently transferred, on January 5, 2006, to this Court.

### C. Defendants' Answer And Counterclaim

On February 23, 2006, Defendants filed an answer and counterclaim. The answer admits certain of the allegations in the complaint including: (1) "Rader found 'at least one of the patents that was later the subject of the Black Diamond Litigation'"; (2) Ms. Efros began preparing a

---

[1] The term "CLAIM" in capital letters refers to a defined term in the Policy.

[2] The arbitration hearing is currently set for July 17, through July 26, 2006.

[3] Indian Harbor first learned that Coupons filed this action in late December 2005.

claim form but then Mr. Boal of Coupons "expressed his belief that the cost of defending the Black Diamond Lawsuit would not exceed the $500,000 retention"; and (3) "based, in part, on that consideration, Coupons instructed Defendants not to submit a claim form." (Defendants' Answer, ¶¶ 10, 12.)

The counterclaim asserts claims for breach of contract, quantum meruit, accounts stated, fraud and bad faith litigation. Despite the representations made by Coupons to Defendants, the counterclaim alleged that Coupons failed to pay Defendants the $392,551.85 in outstanding attorneys' fees (for which Coupons allegedly seeks reimbursement in the arbitration). (Defendants' Counterclaim, ¶ 19.)

Additionally, Defendants assert in their bad faith litigation counterclaim that certain of the allegations in Coupons' complaint are false and cannot be proven without "*perjured testimony or other forms of falsified evidence.*" (*Id.*, ¶¶ 48-50.) The allegations in the complaint that Defendants assert are "false and/or without factual basis" include:

- "The allegation, contained in the introductory paragraph, that 'neither Efros nor any other attorney at Rader advised Coupons that Coupons' failure to timely submit an official claim form to Indian Harbor could result in loss of insurance coverage for the patent infringement lawsuit that E-Centives, Inc. had filed against Coupons.'"

- "The allegation, contained in Paragraph 14, that December 12, 2003 was 'Coupons' first indication that there might have been a deadline for submitting its Claim Form.'"

(*Id.*, ¶ 49.)[4]

Any one of the specified allegations in the pleading, if established, might implicate substantial portions, if not the entirety, of the pending dispute between Coupons and Indian Harbor. Specifically, Coupons' untimely CLAIM submission or Coupons' (or its agents')

---

[4] The Arbitrator issued a subpoena that requested the deposition of Ronald Kananen and included requests for production of documents, but Defendants refused to comply with the subpoena.

- 3 -

knowledge of, and failure to disclose, the patents-in-suit may bar coverage for the Underlying Action under the Policy.

## ARGUMENT

**I.     Indian Harbor Is Entitled To Intervene As Of Right.**

Rule 24(a) of the Federal Rules of Civil Procedure provides:

> "**Intervention of Right.**  Upon timely application anyone shall be permitted to intervene in an action
>
> * * *
>
> (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

Fed. R. Civ. Proc. 24(a)(2).

To intervene as a matter of right under Rule 24(a) of the Federal Rules of Civil Procedure, a prospective intervenor must first possess standing under Article III of the Constitution.  See, e.g., Jones v. Prince George's County, Maryland, 348 F.3d 1014, 1017-18 (D.C. Cir. 2003).  If the prospective intervenor possesses Article III standing, intervention as of right depends on the following factors:  (1) the timeliness of the application, (2) whether the applicant has a legally protected interest in the action, (3) whether the action threatens to impair that interest, and (4) whether the applicant's interest is adequately represented by existing parties.  Fund for Animals, Inc. v. Norton, 322 F.3d 728, 731 (D.C. Cir. 2003); see also Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1074 (D.C. Cir. 1998) (quoting Fed. R. Civ. Proc. 24(a)(2)).  See also Nuesse v. Camp, 385 F.2d 694, 700 (D.C. Cir 1967) ("[I]n the intervention area the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many

apparently concerned persons as is compatible with efficiency and due process."). As set forth below, Indian Harbor satisfies each of these requirements.

      A.    **Indian Harbor Possesses Standing Under Article III Of The Constitution To Intervene As Of Right.**

In the D.C. Circuit, a prospective intervenor must possess standing under Article III of the Constitution. See, e.g., Jones v. Prince George's County, Maryland, 348 F.3d 1014, 1017-18 (D.C. Cir. 2003). Because the prospective intervenor seeks to intervene in an already pending cause of action, however, the intervenor need *not* assert an actionable claim to establish Article III standing for the purposes of Rule 24(a)(2). Id. Rather, the intervenor need only demonstrate an "interest" in the litigation. Id. at 1018. See also Trbovich v. United Mine Workers, 404 U.S. 528, 537 (1972).

The pleadings in this action raise legal and factual issues that implicate the dispute in the arbitration between Indian Harbor and Coupons, and include: (1) whether Coupons' untimely CLAIM submission bars coverage for the Underlying Action; (2) whether Coupons' (or its agents') knowledge of the patents-in-suit prior to the effective date of the Policy bars coverage for the Underlying Action under Exclusion 9 in the Policy; (3) whether Indian Harbor must reimburse Coupons for (a) the attorneys' fees it allegedly did not and, depending on the outcome of this action, *may never,* pay; and (b) the amounts in excess of a reasonable settlement demand that Coupons paid because of Rader Fishman's alleged malpractice.

Here, Coupons sued Defendants for legal malpractice alleging Defendants: (1) failed to disclose patents material to Coupons' application for and renewal of the Policy; (2) failed to advise Coupons concerning the timely submission of a CLAIM to Indian Harbor; and (3) asserted a defense that caused Coupons to pay more to settle the Underlying Action. Defendants' answer admits certain of the allegations in the complaint including: (1) "Rader found 'at least one of the patents that was later the subject of the Black Diamond Litigation'"; (2)

Ms. Efros began preparing a claim form but then Mr. Boal of Coupons "expressed his belief that the cost of defending the Black Diamond Lawsuit would not exceed the $500,000 retention"; and (3) "based, in part, on that consideration, Coupons instructed Defendants not to submit a claim form."

Further, Defendants assert pursuant to a bad faith litigation counterclaim that certain of the allegations in the complaint are false and cannot be proven without "*perjured testimony or other forms of falsified evidence*" including the allegations that "neither Efros nor any other attorney at Rader advised Coupons that Coupons' failure to timely submit an official claim form to Indian Harbor could result in loss of insurance coverage" and "December 12, 2003 was Coupons' first indication that there might have been a deadline for submitting its Claim Form."

The adjudication of any one of these issues may have material and irrevocable implications for the dispute in the arbitration. *At a minimum*, it could operate to resolve substantial portions, if not the entirety, of the pending dispute between Coupons and Indian Harbor. Accordingly, the fact that Indian Harbor has a sufficient "interest" to confer Article III standing for the purposes of Rule 24(a)(2) cannot be disputed.

**B.    Indian Harbor's Application For Intervention Is Timely.**

In assessing the timeliness of an application for intervention, courts will consider all the circumstances of a case. See NAACP v. New York, 413 U.S. 345, 365-66 (1973). Here, the timeliness factor is easily satisfied.

Indian Harbor applied to intervene in this action approximately one month after the filing of Defendants' answer and counterclaim. The action was transferred to this Court only seven weeks earlier. Coupons filed a response to the counterclaim on April 3, 2006. To date, the Court has not calendared a Rule 26 Scheduling Conference in the action and the parties have not served their initial disclosures. Accordingly, Indian Harbor is seeking intervention at the very earliest

stages of the litigation and granting its motion will neither delay the proceedings in any significant way nor prejudice the parties. See, e.g., Chiles v. Thornburgh, 865 F.2d 1197 (11th Cir. 1989) (motion to intervene filed seven months after original complaint was filed, three months after government filed its motion to dismiss and before discovery began was timely); United States v. Union Elec. Co., 64 F.3d 1152 (8th Cir. 1995) (motion to intervene filed more than four months after complaint but before much progress had been made in the litigation was timely).

    C.  **Indian Harbor Has A Legally Protected Interest In The Action.**

A party that satisfies the requirements for constitutional standing under Article III of the Constitution need make no further showing to demonstrate a legally protected interest for the purposes of Rule 24(a). See Fund for Animals, 322 F.3d at 735; see, e.g., Jones, 348 F.3d at 1019-20 ("because Nina has suffered a cognizable injury sufficient to establish Article III standing, she also has the requisite interest under Rule 24(a)(2)"); Mova Pharm., 140 F.3d at 1076 ("Upjohn need not show anything more than that it has standing to sue in order to demonstrate the existence of a legally protected interest for purposes of Rule 24(a)").

As set forth above, Indian Harbor possesses constitutional standing under Article III to intervene as of right and thus, has demonstrated a legally protected interest for the purposes of Rule 24(a).

    D.  **The Action Threatens To Impair Indian Harbor's Legally Protected Interest.**

To intervene in this action as of right under Rule 24(a)(2), Indian Harbor also must be "so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect [its] interest[s] . . . ." Fed R. Civ Pro. 24(a). Indian Harbor need only demonstrate that it is "possible" for its interests to be impaired, as a practical matter, if intervention is not granted. See, e.g., Appleton v. FDA, 310 F.Supp.2d 194, 197 (D.D.C. 2004) ("disclosures resulting from

the disposition of this action could impair the applicants' ability to protect their trade secrets or confidential information"); see also Michigan State AFL-CIO v. Miller, 103 F.3d 1240, 1247 (6th Cir. 1997); Grutter v. Bollinger, 188 F.3d 394, 397-98 (6th Cir. 1999). In this case, the risk of impairment is more than a mere possibility.

The adjudication of any number of issues in this action might operate to resolve the parties' dispute in the arbitration or, at a minimum, might resolve substantial portions of that dispute. Absent its participation in this suit, Indian Harbor will have no means to participate in an adjudication of issues that may be dispositive for the purposes of the arbitration. Additionally, Indian Harbor will have no other means to obtain discovery from Defendants. Consequently, the risk that Indian Harbor's interests may be practically impaired is both real and substantial.

### E. Indian Harbor Is Not Adequately Represented By The Existing Parties.

To secure intervention, Indian Harbor also must establish that its interest is not "adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2). The United States Supreme Court has held that this requirement is satisfied "if the applicant demonstrates that representation of his interest 'may be' inadequate; and the burden of making that showing should be minimal." Fund for Animals, 322 F.3d at 735-36 (quoting Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972).

To satisfy this requirement, the prospective intervenor need only demonstrate, for example, that: (1) Indian Harbor's stake in the litigation differs from that of the parties; (2) the existing parties may make different arguments than those of Indian Harbor; and/or (3) Indian Harbor will offer necessary elements to the proceedings that the parties may neglect. See, e.g., Diamond v. District of Columbia, 792 F.2d 179, 192-93 (D.C. Cir. 1986); see also California v. Tahoe Regional Planning Agency, 792 F.2d 775, 778 (9th Cir 1986). Further, the intervenor

need only make a *minimal* showing.  See, e.g., Fund for Animals, 322 F.3d at 735; Diamond, 792 F.2d at 192-93 ("This burden [] is not onerous."); see also Tahoe Regional Planning Agency, 792 F.2d at 778 ("The applicant is required only to make a minimal showing that representation of its interests may be inadequate.").

Here, Indian Harbor plainly satisfies this requirement.  As the insurer that issued the Policy to Coupons, Indian Harbor's stake in the litigation differs from that of Coupons, its insured, or Defendants, the attorneys Coupons retained to defend it in the Underlying Action.  As explained in greater detail above, the legal and factual issues Indian Harbor must address in this action are narrowly delineated and may have specific implications for its position in the arbitration.  The existing parties need not address each legal and factual issue material to Indian Harbor and the arbitration to adjudicate the claims between them.  For example, Coupons need not necessarily establish the nature and extent of the deficiencies in the patent searches conducted by Defendants in connection with its application for and renewal of the Policy to prevail in its legal malpractice claim against Defendants.  Similarly, Defendants need not necessarily establish the date they advised Coupons of the deadline for filing a Claim Form under the Policy to defend against that Claim.  However, the determination of these issues could potentially impact the disposition of central issues in the arbitration.

Consequently, it is apparent that Indian Harbor's interests are not adequately represented by the existing parties.  Quite to the contrary, because an arbitration award in Coupons' favor would potentially eliminate portions of the damages Coupons seeks in this action and fund the settlement of Defendants' breach of contract claim, the purposes of both Coupons and Defendants might be better served if Indian Harbor's interests in this action were *not* represented.

**II.     Indian Harbor Is Entitled To Intervene Permissively.**

Rule 24(b) of the Federal Rules of Civil Procedure provides:

> "**Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common.
>
> \*\*\*
>
> In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

Fed. R. Civ. Proc. 24(b)(2).

Rule 24(b)(2) authorizes permissive intervention for an applicant who timely files a motion "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2); Appleton, 310 F.Supp.2d at 196. A court may allow intervention after considering "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(2). In this Circuit, "'permissive intervention is an inherently discretionary enterprise,' [and] the court enjoys considerable discretion under Rule 24(b)." Envtl. Def. v. Leavitt, 329 F.Supp.2d 55, 66 (D.D.C. 2004) (quoting EEOC v. Nat'l Children's Ctr., Inc., 146 F.3d 1042, 1046 (D.C. Cir. 1998)).

Indian Harbor easily satisfies Rule 24(b)(2). As demonstrated above, the pleadings in this action raise legal and factual issues that relate to the dispute between Indian Harbor and Coupons in the pending arbitration. The adjudication of any one of these issues could implicate the parties' dispute in the arbitration. Additionally, because Indian Harbor is seeking intervention at the very earliest stages of the litigation, intervention will neither delay the proceedings in any significant way nor prejudice the parties. For these reasons, Indian Harbor also qualifies for permissive intervention under Fed. R. Civ. Proc. 24(b)(2).

## **CONCLUSION**

For the foregoing reasons, Indian Harbor respectfully requests that the Court grant leave for it to intervene in this action.

Respectfully submitted,

April 7, 2006                                   SONNENSCHEIN NATH & ROSENTHAL LLP


By    /s/ Kirk R. Ruthenberg
      Kirk R. Ruthenberg #415520
      1301 K Street, N.W.
      Washington, D. C. 20005
      (202) 408-6400
      (202) 408-6399 (facsimile)
      kruthenberg@sonnenschein.com

      Attorneys for Indian Harbor Insurance Company

Of Counsel:
Sonnenschein Nath & Rosenthal LLP
Donald M. Carley
Peter R. Soares
685 Market Street, 6th Floor
San Francisco, CA 94105
(415) 882-5000
(415) 543-5472 (facsimile)

27233643

- 11 -