THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COUPONS, INC. ) | Case No. 1:06-CV-00142 HHK |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| ELLEN A. EFROS, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**OPPOSITION OF DEFENDANTS ELLEN A. EFROS, RONALD P. KANANEN AND RADER, FISHMAN & GRAUER, PLLC TO INDIAN HARBOR INSURANCE COMPANY'S MOTION TO INTERVENE**

Defendants Ellen A. Efros, Ronald P. Kananen, and Rader, Fishman & Grauer, PLLC (collectively, "defendants") respectfully oppose the motion to intervene filed by Indian Harbor Insurance Company ("Indian Harbor").

There is no legal basis on which Indian Harbor may, or should, be allowed to intervene in this action. Indian Harbor is engaged in binding arbitration proceedings with Coupons, Inc. ("Coupons") in San Francisco, California. By this motion, Indian Harbor is improperly attempting to circumvent the discovery limitations it accepted when it agreed to private arbitration. Those limitations include the Federal Arbitration Act, which defendants have already cited to Indian Harbor in thwarting its improper attempt to subpoena defendant Ron Kananen in January 2006. As Indian Harbor wants to intervene solely for the purpose of conducting discovery for use in its private arbitration, which will go to hearing in July 2006—long before this case will go to trial—Indian Harbor has no legally protected interest in this action nor Article III standing as required by Rule 24 of the Federal Rules of Civil Procedure. Moreover, the circumstances under which this motion arises do not justify the exercise of the

1

court's discretion to allow permissive intervention. For the reasons set forth herein, the motion should be denied in its entirety.

## I. BACKGROUND

### A. Rader's Former Representation of Coupons

Rader Fishman & Grauer PLLC ("Rader") is an intellectual property law firm having offices in Washington, D.C.; Bloomfield Hills, Michigan; and Salt Lake City, Utah. In 2000, Rader was retained by Coupons to perform a limited patent search in connection with a patent application that Coupons had filed. On November 14, 2002, Black Diamond CCT Holdings, LLC and E-Centives, Inc. (collectively, "Black Diamond") filed a complaint against Coupons, Inc. in the United States District Court for the District of Maryland (Case No. L02CV3701; the "Black Diamond Litigation"). The complaint alleged that Black Diamond was the current owner of two patents that had been infringed by Coupons. Coupons retained Rader to defend the Black Diamond Litigation.

Coupons had an Intellectual Property Infringement Defense Cost Reimbursement Policy (the "Policy") issued by Indian Harbor. At the commencement of the Black Diamond Litigation, Coupons' top executives specifically elected not to submit to Indian Harbor a formal claim under the Policy. Coupons would later change its position and submit a formal claim form in 2004.

Rader's representation of Coupons in the Black Diamond litigation ended on March 15, 2005. At that time, Coupons owed Rader approximately $400,000 in unpaid fees. The parties to the Black Diamond litigation later reached a settlement and the case was dismissed on April 25, 2005.

### B. Coupons' Malpractice Action Against Rader, and Rader's Counterclaim

On July 26, 2005, Coupons filed a complaint for malpractice against Rader, Kananen and Efros in Santa Clara County Superior Court in California. The defendants removed that action to

the United States District Court for the Northern District of California. After that, the case was transferred to this Court on jurisdictional grounds.

Coupons' complaint alleges the following claims against the defendants:

1. <u>First cause of action for professional negligence.</u> This claim alleges that defendants breached duties to accurately advise Coupons with respect to available insurance coverage and interpretation of Coupons' insurance policies and to advise it of the risks of not filing a claim form within the 2002 Policy period; to thoroughly and accurately conduct the requested patent searches and to disclose to Coupons and Indian Harbor all patents responsive to the search request for purposes of the policy applications; and to research and accurately advise Coupons with respect to available defenses to the claims asserted by the plaintiffs in the Black Diamond litigation.

2. <u>Second cause of action for breach of fiduciary duty.</u> This claim alleges that defendants breached fiduciary duties by failing to advise that failure to submit a claim form prior to August 10, 2003 could create the risk of Indian Harbor denying Coupons' claim for insurance coverage; by failing to find, or, if found, failing to disclose to Coupons and in turn to Indian Harbor, the Black Diamond patents in connection with the policy applications; and by failing to advise Coupons of the facts required to assert a certain affirmative defense and the risks inherent in asserting such a defense.

Defendants deny the material allegations of the complaint, and deny that they breached any duties owed to Coupons. In fact, Rader's counterclaim asserts that certain allegations in the complaint are made in bad faith, including Coupons' allegations about Rader negligently advising Coupons in connection with the insurance claim. Defendants believe that the filing of the complaint was motivated in large part by Coupons' quest for an excuse to avoid having to pay the approximately $400,000 in attorney's fees owed to Rader. Rader's counterclaim against Coupons seeks recovery of those unpaid fees.

3

### C. Coupons' Arbitration Against Indian Harbor

As stated in Indian Harbor's memorandum in support of its motion to intervene (p. 2), Indian Harbor is engaged in arbitration proceedings with Coupons. Their agreement to arbitrate is reflected in Section IV.E of Indian Harbor's insurance policy attached as Exhibit A to the proposed Complaint in Intervention. In the arbitration, which is being conducted under the auspices of the American Arbitration Association ("AAA"), Coupons is challenging Indian Harbor's denial of coverage under the Policy. Indian Harbor states in its memorandum (p. 2, fn. 2) that the arbitration hearing is scheduled to commence on July 17, 2006. Coupons' counsel has informed defendants' counsel that the arbitrator recently denied Indian Harbor's motion to stay the arbitration proceedings pending the taking of discovery from defendants in the present action.

### D. Indian Harbor's Past, Improper and Unsuccessful Attempt to Subpoena Kananen for Deposition in the Arbitration

In January 2006, at the request of Indian Harbor, the AAA arbitrator issued a subpoena with a request for documents to Kananen commanding him to appear and give testimony on February 17, 2006 in San Francisco. (A copy of that subpoena is attached hereto as Exhibit A.) On January 13, 2006, defendants' counsel sent a letter to Indian Harbor's counsel citing authority showing that the subpoena was invalid under California law because the arbitrator's subpoena power did not extend to non-California residents. (A copy of defendants' counsel's letter dated January 13, 2006 is attached hereto as Exhibit B.)

On January 20, 2006, Indian Harbor's counsel contacted defendants' counsel by telephone and asserted that the subpoena to Kananen was enforceable under section 7 of the Federal Arbitration Act ("FAA"; 9 U.S.C. § 7). Indian Harbor's counsel also stated that the purpose of the subpoena was to seek Kananen's pre-hearing deposition, not to compel him to testify at the arbitration hearing. On January 23, 2006, defendants' counsel sent a letter to Indian Harbor's counsel responding to the points that Indian Harbor's counsel had made on the

4

telephone. (A copy of this January 23, 2006 letter is attached hereto as Exhibit C.) Specifically, the January 23, 2006 letter cites the FAA, the Federal Rules of Civil Procedure and decisional law showing that a subpoena issued from an arbitration sitting in the Northern District of California could not be enforced, either as a hearing subpoena or as a deposition subpoena, against a non-California resident.[1] The letter also pointed out the absence of an AAA rule allowing for the taking of non-party, oral depositions. Further, the letter explained that it was unduly burdensome to require Kananen to submit to a deposition in the private arbitration because he never bargained for, or voluntarily agreed to participate in that proceeding, as Coupons and Indian Harbor had. Finally, the January 23, 2006 letter demanded the withdrawal of the subpoena.

On January 24, 2006, Indian Harbor's counsel sent a letter to defendant's counsel announcing the withdrawal of the subpoena. (A copy of Indian Harbor's January 24, 2006 letter is attached hereto as Exhibit D.) Defendants' counsel confirmed the withdrawal of the subpoena in a letter dated January 30, 2006. (A copy of the January 30, 2006 letter is attached hereto as Exhibit E.) Indian Harbor has made no further efforts to subpoena any defendant for deposition in the arbitration proceedings.

## II.   ARGUMENT

When Indian Harbor included an arbitration provision within its own insurance policy agreeing with Coupons to resolve any disputes between them through binding, private arbitration, Indian Harbor accepted one of the well-known principles of arbitration—discovery is limited. It is limited by the arbitration agreement, which includes the AAA rules, and it is limited by state and federal law. When Indian Harbor included the arbitration clause in its insurance policy, it knew or should have known that future disputes with its insured could give

---

[1] The legal citations in the attached letters from defendants' counsel are hereby incorporated by reference.

rise to the need for discovery from third parties. However, it assumed the risk that it could not obtain such discovery, just as it accepted the benefits that arbitration might provide.

As is shown by the authorities cited in the attached correspondence from defendants' counsel to Indian Harbor's counsel, California state law and the FAA do not permit Indian Harbor to take the non-party depositions that they now want—those of Kananen and Efros. *See* Cal. Code of Civ. Proc. §§ 1282.6(c) and 1989 ("A witness . . . is not obliged to attend as a witness before any court, judge, justice or any other officer, unless the witness is a resident within the state at the time of service"); 9 U.S.C. § 7; Fed. R. Civ. P. 45(b)(2); *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 2 F.3d 1397, 1406 (5th Cir. 1993), *cert. denied*, 510 U.S. 1073 (1994) ("a federal court sitting in one district cannot issue a subpoena *duces tecum* to a non-party for the production of documents located in another district"). Accordingly, Indian Harbor is now attempting to circumvent the discovery limitations placed on it by the FAA (and which it agreed to when it consented to arbitration) by asserting a purported right to intervene in this action. In fact, Indian Harbor admits as much in paragraph 17 of its proposed Complaint in Intervention: "Absent its participation in this suit, Indian Harbor will have no other means to obtain discovery from Defendants." Indian Harbor has no right to intervene in this suit for the purposes of conducting discovery, particularly where its arbitration discovery rights have already been limited, with its consent, by the FAA.

**A.    Indian Harbor Is Not Entitled to Intervene as of Right**

Rule 24(a) of the Federal Rules of Civil Procedure[2] provides as follows:

> Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter

---

[2] Unless otherwise stated, all references to "Rules" herein shall refer to the Federal Rules of Civil Procedure.

6

impair or impede the applicant's ability to protect that interest, unless the
applicant's interest is adequately represented by existing parties.

The applicant bears the burden of establishing its right to intervene. *United States v. Texas E. Transmission Corp.*, 923 F.2d 410, 414 (5th Cir. 1991). "In addition to satisfying the four elements of Rule 24—timeliness, interest[3], impairment of interest, and adequacy of representation—prospective intervenors in this circuit must possess standing under Article III of the Constitution." *Jones v. Prince George's County, Maryland*, 348 F.3d 1014, 1017 (D.C. Cir. 2003).

      1.    *Indian Harbor Possesses Neither Article III Standing Nor a Legally Protected Interest in this Action*

The issues of whether an applicant has standing under Article III of the Constitution and a legally protected interest under Rule 24(a) are analyzed together. *See Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233-324 (D.C. Cir. 2003) ("With respect to intervention as of right in the district court, the matter of standing may be purely academic. One court has rightly pointed out that any person who satisfies Rule 24(a) will also meet Article III's standing requirement") (citing *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000)). "Interpreting this connection between a sufficient interest to intervene and Article III standing, the D.C. Circuit requires that the interest be concrete enough to be 'legally protectable.' This court has held that 'an intervenor must demonstrate more than 'a mere provable claim' in order to satisfy the threshold interest required by [Rule 24]." *Nationwide Mut. Ins. v. National REO Management*, 205 F.R.D. 1, 4 (D.D.C. 2000) (citations omitted). "To establish standing under Article III, a prospective intervenor—like any party—must show: (1) injury-in-fact, (2) causation, and (3) redressability." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 733 (D.C. Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

---

[3] Indian Harbor does not claim that it fits under the other prong of Rule 24(a), a statutory right of intervention.

Here, Indian Harbor can cite no "injury" and the only "interest" that it can be construed to have in this action is a desire to conduct discovery that it cannot obtain under its previously agreed-upon arbitration rules and statutes. This is the only relief it seeks in its proposed complaint: "an order allowing Indian Harbor to intervene in the Malpractice Action and participate in pre-trial discovery in the Malpractice Action, either in full or as limited to the issues set forth in paragraph 21, above." (Prayer of Indian Harbor's proposed Complaint in Intervention, p. 8.) Although the proposed Complaint in Intervention identifies Indian Harbor as a proposed "Plaintiff in Intervention," it does not "[set] forth any claim or defense" as required by Rule 24(c). Rather, it merely repeats the grounds for Indian Harbor's alleged entitlement to intervene.

In its memorandum, Indian Harbor conspicuously fails to cite any authority to support the proposition that an entity—particularly one engaged in private arbitration—which seeks to intervene in a pending action solely for the purpose of conducting discovery meets the Rule 24 "interest" requirement or the Article III standing requirement. However, at least one other District Court has ruled that a desire to conduct discovery is not sufficient grounds for intervention. The District Court for the District of Maine ruled as follows in *In re New Motor Vehicles Canadian Export Antitrust Litigation,* 225 F.R.D. 62 (D. Me. 2004):

> The would-be intervenors have provided no authority for their request to intervene solely to participate in discovery. Intervention of right depends upon whether "the disposition of the *action* may as a practical matter impair or impede the applicant's ability to protect [the applicant's] interest." Fed. R. Civ. P. 24(a). Permissive intervention is available "when an applicant's *claim* or *defense* and the *main action* have a question of law or fact in common." Fed. R. Civ. 24(b). Perhaps the criteria for both types of intervention are met here. But nowhere does the Rule imply that the would-be intervenor can intervene only for discovery. Instead, the focus clearly is on the prejudice that would flow from "disposition of the action" or of a question of law or fact if intervention is denied. The would-be intervenors here, however, are not interested in participating in disposition of the action or in the resolving of questions of law or fact.

*Id.* at 63 (emphasis in original).

8

Finally, if the court rules that Indian Harbor has no interest in this case which satisfies Rule 24, the policy behind the rule will not be offended. "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 699 (D.C. Cir. 1967). By granting Indian Harbor leave to amend, the court would not be "disposing of a lawsuit" because Indian Harbor is already engaged in arbitration with Coupons. Indian Harbor has no basis for commencing another legal proceeding against Coupons if it is not allowed to intervene. If public policy is to be offended, it will be by allowing Indian Harbor to intervene under the circumstances presented here. Indian Harbor's participation in this case will only increase the cost of litigation to the defendants as they respond to all of Indian Harbor's discovery intended to be used in its private arbitration.

For all of the reasons stated above, Indian Harbor has not met its burden of establishing that it has Article III standing or a legally protected interest in this action.

    2.    *This Action Does Not Threaten to Impair Any Legally Protected Interest*

Once an applicant has successfully established a sufficient interest in the subject of the action, Rule 24(a) states that it must demonstrate that "disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." Here, if intervention is denied, Indian Harbor will not be affected by the "disposition" of this case. Based upon the July 17, 2006 arbitration hearing date identified by Indian Harbor in its memorandum (see p. 2, fn. 2), Indian Harbor's "interest" in this case will go away long before there is any adjudication of any of the issues identified by Indian Harbor as having implications for the arbitration.[4] This further demonstrates that Indian Harbor has no legally cognizable interest in

---

[4] In the present action, the initial case management conference has not been held and a trial date has not been set.

this case. *See Nationwide Mut. Ins.*, 205 F.R.D. at 5 (denying intervention as a matter of right because "the underlying lawsuit will be unaffected by the ruling in this case").

Nor will Indian Harbor be unreasonably prejudiced if it is unable to participate in discovery in this case. Arbitrations frequently go to hearing with one or more parties having been unable to conduct all of the discovery that it would prefer to conduct due to a witness's unavailability or the limitations imposed by the applicable rules and statutes. As much as Indian Harbor wants to participate in discovery in this case, the circumstances it finds itself in are hardly unique. In fact, they are of Indian Harbor's own making by virtue of its election to arbitrate disputes with its policyholders.

Even if the disposition of the present action were to precede the hearing on the arbitration—something that is highly unlikely given the arbitrator's recent denial of Indian Harbor's request for a stay—Indian Harbor's interests would not be in jeopardy of impairment. This is because Indian Harbor would not be bound by any judgment issued in this action since Indian Harbor is neither a party, nor in privity to a party, in this action. The fact that an applicant for intervention would not be subject to either issue or claim preclusion was cited as a basis for denying intervention in *Nationwide Mut. Ins.,* 205 F.R.D. 1:

> The applicant also claims that her interests will be affected by the resolution of the instant action because she "will be bound by a judgment in this action." This assertion is without merit. There is no authority for the proposition that the ruling in this case will affect the underlying lawsuit in D.C. Superior Court through either issue or claim preclusion. In order to be bound by issue preclusion or claim preclusion, a person must be a party or privy to a party in the original lawsuit. To the extent the applicant may claim that she is in privity with the defendant because she works for the defendant, the court rejects that claim. For the purposes of preclusion, a person is in privity with a party only if the person has "precisely the same legal right in respect to the subject matter involved." In this case, the applicant's right to a judgment in the underlying lawsuit is different from and independent of the defendant's right to be indemnified under the insurance contract. Therefore, the underlying lawsuit will be unaffected by the ruling in this case. Accordingly, the court concludes that the applicant lacks a sufficient legal interest in the instant matter to support intervention as a matter of right.

*Id.* at 5 (citations omitted).  Here, Indian Harbor is not in privity with any of the parties to this action—and does not claim to be—since its rights in defending the coverage claim in the arbitration are distinct from the malpractice and fee claims being asserted by the parties in this action.

Not only would a judgment favorable to Coupons pose no threat of impairment to Indian Harbor's interests in a subsequent arbitration, but a judgment against Coupons could actually serve to *benefit* Indian Harbor's position in a subsequent arbitration.  Under the doctrine of offensive collateral estoppel, Indian Harbor might be able to use a judgment issued by this court to preclude Coupons from re-litigating the same issue, should it arise, in the arbitration.  See *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329-331 (1979) (discussing requirements for application of offensive collateral estoppel). This further undermines Indian Harbor's argument that this action threatens to impair its interests.

Finally, Indian Harbor has failed to meet its burden of showing that it would even be entitled to conduct the discovery it seeks in light of the attorney-client privilege that still exists between Coupons and defendants as to past communications.  By suing defendants, its former attorneys, Coupons waived the attorney-client privilege for purposes of this action with respect to communications between defendants and Coupons.  *See, Rhone-Poulenc Rorer v. Home Indemnity Co.*, 32 F.3d 851, 863 (3d Cir. 1994) ("[A] client may waive the privilege as to certain communications with a lawyer by filing a malpractice action against the lawyer"), cited in *Minebea Co. v. Papst*, 355 F. Supp. 2d 518, 522 (D.D.C. 2005).  However, there will be an issue as to whether the scope of this waiver will permit Indian Harbor to discover communications between defendants and Coupons and, if so, to what extent.  As it stands, defendants will object to testifying in this action about communications with Coupons if Indian Harbor is made a party.

11

   3.  *Indian Harbor Has Not Met Its Burden of Showing That Its Interest Will Be Inadequately Represented by Existing Parties in This Litigation*

  Indian Harbor must also establish that its interest is not "adequately represented by existing parties." Rule 24(a). Indian Harbor cannot make this showing because it has no legally protected interest in this action. Further, the "interest" that it does claim to have will not be impaired by any disposition of this action. Both of these points are discussed above.

  Moreover, even as to the discovery interest that Indian Harbor claims to have, its interest will be adequately represented by the parties in this case. Indian Harbor only identifies two issues in this regard. First, it contends that "Coupons need not necessarily establish the nature and extent of the deficiencies in the patent searches conducted by Defendants in connection with the application for and renewal of the Policy to prevail in its legal malpractice claim against Defendants." (Memorandum, p. 9.) Indian Harbor does not meet its burden of showing why this would be the case. Coupons' complaint alleges that the defendants breached a duty "to thoroughly and accurately conduct the requested patent searches, and to disclose to Coupons and Indian Harbor all patents responsive to the search request for purposes of the policy applications." (Coupons' Complaint, ¶19.b.) This allegation unequivocally indicates that Coupons is seeking to prove that there were deficiencies in the patent searches performed by defendants. Although defendants strongly deny this, there is no basis for believing that Coupons will not seek to vigorously prove its claim, and thereby "represent" Indian Harbor's interests with respect to this issue.

  Second, Indian Harbor contends that "Defendants need not necessarily establish the date they advised Coupons of the deadline for filing a Claim Form under the Policy to defend against that Claim." (Memorandum, p. 9.) The related allegation in Coupons' complaint against defendants is found in paragraph 19.a, and states that defendants breached duties "to accurately advise Coupons with respect to available insurance coverage and interpretation of Coupons'

insurance policies and to advise it of the risks of not filing a claim form within the 2002 Policy period." This allegation in Coupons' complaint will necessarily bring into play the communications between defendants and Coupons as to the submission of an insurance claim. Defendants have every motivation to vigorously defend themselves against this malpractice claim, and they will seek to establish that they fully satisfied the applicable standard of care with respect to their involvement in the handling of the insurance claim. Again, Indian Harbor's claimed interest will be adequately "represented."

In summary, not only does Indian Harbor have no legally-protected interest in this case, but the discovery interest that it does claim to have (but which gives it no right to intervene) will be adequately represented by the existing parties. If Indian Harbor is allowed to intervene to conduct discovery, its discovery efforts will be cumulative of the existing parties' efforts, and this is not permissible. *See Environmental Defense Fund, Inc. v. Costle*, 79 F.R.D. 235, 243 (D.D.C. 1978) (court denies intervention of utility in dispute regarding salinity level of Colorado River because arguments of utility "will be cumulative of the arguments advanced by the other defendants").

**B.     Indian Harbor Is Not Entitled to Intervene Permissively**

Rule 24(b) governs permissive intervention. Permissive intervention may be granted "when a statute of the United States confers a conditional right to intervene" (that is not something that Indian Harbor alleges here) or "when an applicant's claim or defense and the main action have a question of law or fact in common." Rule 24(b). As Indian Harbor acknowledges in its memorandum, "'permissive intervention is an inherently discretionary enterprise,' [and] the court enjoys considerable discretion under Rule 24(b)." *Envtl. Def. v. Leavitt*, 329 F. Supp.2d 55, 66 (D.D.C. 2004) (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998)).

The arguments provided above in opposition to mandatory intervention also support denial of permissive intervention, and they are hereby incorporated by reference. Specifically, Indian Harbor agreed to private arbitration of its dispute with Coupons, which necessarily included limited discovery under applicable rules and statutes. By making this motion, Indian Harbor is attempting to circumvent the FAA, which does not permit Indian Harbor to depose any of the defendants in the arbitration proceedings. Indian Harbor wants to intervene in this action so that it can conduct discovery against defendants. (It already has discovery rights against Coupons in the arbitration.) That means that its participation in the case will make this litigation significantly more expensive for defendants as they may be forced to submit to extended depositions, respond to additional written discovery and deal with any motions that arise therefrom. This is not fair to defendants, particular where the discovery will be obtained solely for use in a private arbitration to which defendants are not parties, and Indian Harbor's discovery efforts would contribute nothing to resolution of the present action.

The fact that Indian Harbor's presence in this case would not add any value to it is, on its own, a sufficient ground for denying permissive intervention. In deciding a motion for permissive intervention, the court should consider whether the applicant's input is likely to make a significant and useful contribution to the development of the underlying factual and legal issues. *See League of United Latin Am. Citizens v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989) (county not allowed to intervene in action under Voting Rights Act because its input would not significantly help develop relevant factual issues). Indian Harbor's argument in support of permissive intervention says nothing about how its presence would help develop relevant factual issues. In fact, there is no basis for concluding that Indian Harbor's participation would be of any benefit to the case. Instead, its discovery either will be cumulative of the discovery that Coupons can be expected to engage in, or will be irrelevant to this case.

Finally, as stated above, Indian Harbor's participation will raise complicated issues relating to the attorney-client privilege that would probably need to be sorted out by the Court, but which can be avoided entirely by denying Indian Harbor's motion.

### III. CONCLUSION

For all the reasons stated above, Indian Harbor's motion should be denied in its entirety.

Respectfully submitted,

May 3, 2006

      /s/
Steven D. Wasserman
 CA Bar No. 88291 (admitted pro hac vice)
Mark J. Hancock
 CA Bar No. 160662 (admitted pro hac vice)
SEDGWICK, DETERT, MORAN & ARNOLD LLP
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, CA  94105
(415) 781-7900 (telephone)
(415) 781-2635 (fax)
steven.wasserman@sdma.com
mark.hancock@sdma.com
*Counsel for Defendants Ellen A. Efros, Ronald P. Kananen and Rader, Fishman & Grauer, PLLC*

Jonathan K. Tycko
 D.C. Bar No. 445851
Kathleen R. Hartnett
 D.C. Bar No. 483250
TYCKO, ZAVAREEI & SPIVA LLP
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
(202) 973-0900
(202) 973-0950 (fax)
jtycko@tzslaw.com
khartnett@tzslaw.com
*Counsel for Defendants Ellen A. Efros and Ronald P. Kananen and for Defendant and Counterclaim-Plaintiff Rader, Fishman & Grauer, PLLC*

15