THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COUPONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ELLEN A. EFROS, *et al.*, <br><br> Defendants. | Case No. 1:06-CV-00142-HHK |

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO INDIAN HARBOR INSURANCE COMPANY'S MOTION TO INTERVENE

Indian Harbor Insurance Company ("Indian Harbor") Fed Rule Civ. P. 24, by this motion, seeks to do an end-run around its own arbitration clause. Coupons, Inc. ("Coupons") complied with Indian Harbor's arbitration clause by filing its arbitration claim over 18 months ago. In this arbitration, a third-party witness declined to appear voluntarily for deposition, and Indian Harbor's overheated response was to file this motion and its parallel motion to stay the arbitration, all in order to take depositions it is not entitled to get in the arbitration. When Indian Harbor drafted the arbitration clause of its insurance policy it knew that discovery in arbitration is limited and that there is limited subpoena power over third party witnesses, yet it still seeks to circumvent these restrictions. The arbitrator last Friday issued an order declining to stay the July arbitration.[1] And the parties in this litigation are far away from being prepared to begin depositions. Indian Harbor, however, is insisting on proceeding with this motion without any chance of obtaining deposition testimony prior to the arbitration.

More fundamentally, Rule 24 does not permit intervention for the sole purpose of taking discovery for use in an arbitration. The desire to take depositions not otherwise

---

[1] See Exhibit A, a true and correct copy of arbitrator Paul Renne's April 28, 2006 order denying Indian Harbor's motion to stay the arbitration.

allowed in an arbitration is not a legally protected interest justifying Rule 24 intervention. Indian Harbor's gambit violates Federal and California State policy in favor of enforcing arbitration clauses and disrespects the arbitrator's ruling denying a stay. That it is Indian Harbor's own arbitration clause it is trying to circumvent, is astonishing chutzpah.

In addition, Indian Harbor has made no showing that it would obtain anything in this litigation that is relevant to its defense. There is nothing in the Rader, Fishman & Grauer, PLLC ("Rader") counterclaim that addresses the question raised by the arbitrator in the arbitrator's summary judgment ruling. The sole stated purpose of this motion is to seek to take irrelevant deposition testimony.[2] The actual purpose is to delay the arbitration further, which the arbitrator has now squarely rejected. Indian Harbor's motion to intervene is frivolous.

## I. FACTUAL BACKGROUND

### A. Coupons' Insurance Claim

#### 1. The Insurance Policy

In 2001, Coupons purchased patent infringement defense insurance from Indian Harbor. It renewed this policy with Indian Harbor in August 2002, having a policy period of August 10, 2002 through August 10, 2003 ("2002 Policy").[3] The Policy provides coverage to Coupons for defense costs and damages related to patent infringement lawsuits. Ronald Kananen ("Mr. Kananen"), of Rader, wrote the patent search and opinion letters that were submitted by Coupons as part of the application process for its insurance policies in 2001 and 2002.

#### 2. The Black Diamond Litigation

Coupons was sued by Black Diamond CCT Holdings, LLP and E-Centives, Inc. (together "Black Diamond") in November 2002 for alleged infringement of patents

---

[2] See page 1 of Exhibit B, Indian Harbor's Reply in support of its motion to stay the arbitration.
[3] A true and correct copy of the Policy is attached hereto as Exhibit C and is incorporated herein by this reference.

("Black Diamond Litigation"). Coupons retained Ellen Efros of Rader to represent it in the Black Diamond Litigation. Ms. Efros notified Indian Harbor of the lawsuit on December 16, 2002. Indian Harbor acknowledged receipt of Coupons' notice on December 27, 2002 with a letter that laid out the requirements necessary for Coupons to perfect its claim for insurance coverage. This letter turned out to be fundamentally misleading to its insured. While this letter reminded Coupons that it must submit an official Claim Form, provided by Indian Harbor, before it would process Coupons' claim, there was no indication in this letter that there was a deadline for submitting this Claim Form and that Coupons' failure to submit a Claim Form would give Indian Harbor a basis for denying coverage to Coupons. There was also no indication in the 2002 policy itself of such a termination deadline. Instead, the deadline Indian Harbor is now relying on appears in a "renewal endorsement" attached to the *subsequent* 2003-2004 policy, an endorsement received *after* the purported deadline for filing claims. The arbitrator determined these essential facts in his April 28, 2005 ruling denying the parties' cross-motions for summary judgment.[4]

After consulting with its counsel at Rader, Coupons decided that it would not immediately submit Indian Harbor's Claim Form, because the litigation was proceeding slowly, because Coupons did not know whether it would incur costs in excess of the Policy's $500,000 deductible, and because the cost of submitting the Claim Form would be substantial and potentially a waste of money if legal fees and settlement costs did not exceed the $500,000 deductible.

3. Renewal of Coupons' Insurance Policy

Coupons renewed its patent infringement defense policy with Indian Harbor in August 2003. Rader attorneys gathered the necessary documents for Coupons' renewal and assisted it in preparing its renewal application. In this renewal application, Coupons

---

[4] A true and correct copy of the Arbitrator's award denying the motions for summary judgment is attached hereto as Exhibit D.

noted that it had a prior claim on file with Indian Harbor. Indian Harbor did not question Coupons with respect to this assertion, nor did it notify Coupons that Coupons was required to submit the Claim Form before the new policy incepted in order to avoid Indian Harbor denying coverage for Coupons' claim. Similarly, no Rader attorney notified Coupons that it might be required to submit its Claim Form prior to August 10, 2003. Coupons' Policy was renewed with an effective date of August 10, 2003.

### 4. Submission of Coupons' Claim Form

In December 2003, Ms. Efros suggested that she contact Indian Harbor regarding Coupons' claim, as it had become clear that costs of the Black Diamond Litigation would exceed Coupons' $500,000 deductible.[5] It was not until December 2003 that Coupons was first notified that there might be a problem with the timing of the submission of its Claim Form. Even then, however, Indian Harbor did not take the position that Coupons' claim was already barred.

On January 23, 2004, at the urging of Mr. Kananen and Ms. Efros, Coupons submitted Indian Harbor's Claim Form. Indian Harbor accepted the Claim Form and proceeded to consider authorizing payment of defense expenses. Also in January 2004, Coupons sought and received pre-approval from Indian Harbor of its choice of counsel to provide the patent infringement opinion required by Indian Harbor as part of its claims process (at a cost of over $30,000). Throughout the spring of 2004, Coupons provided Indian Harbor with all of the information and documents it requested, at substantial expense to Coupons.

On July 2, 2004, Indian Harbor wrote a letter to Coupons denying coverage for the litigation, based on Coupons' failure to submit a Claim Form during the 2002-2003 policy period and because it claimed Coupons had prior knowledge of the patents Coupons allegedly infringed.[6]

---

[5] A true and correct copy of Ellen Efros' December 1, 2003 email is attached hereto as Exhibit E.
[6] A true and correct copy of Indian Harbor's July 2, 2004 denial letter is attached hereto as Exhibit F.

### B.  Coupons' Claims Against Indian Harbor

Coupons asserts in the arbitration that Indian Harbor denied coverage in bad faith. Pursuant to the terms of Coupons' insurance policy, Coupons initiated an arbitration against Indian Harbor in October 2004. In April 2005, both Indian Harbor and Coupons made motions for summary judgment on the issue of whether Coupons was required to submit its Claim Form by a certain date ("late claim issue"). The arbitrator, Paul Renne, denied both motions.

Mr. Renne determined that there was no language in the 2002 Policy, the relevant year for the Black Diamond Litigation, that required Coupons to submit a Claim Form prior to the end of the policy period. He also found, however, that the Renewal Endorsement, included in the 2003 Policy, the subsequent renewal, required that Coupons submit a Claim Form on pending litigation prior to August 10, 2003, the end of the prior policy period. Mr. Renne found that summary judgment was not appropriate in Indian Harbor's favor because: (1) the effective date of the policy including the Renewal Endorsement was August 10, 2003, so Coupons would have *had no chance to submit a Claim Form*, even if it had seen the policy the day it became effective; (2) The Renewal Endorsement did not alert Coupons to the fact that an endorsement in the 2003 Policy effectively changed the applicable terms of the prior policy; and (3) there was no evidence in the record as to whether Coupons received a copy of the 2003 Policy prior to August 10, 2003 or that anyone drew Coupons' attention to the Renewal Endorsement and informed it of its likely effect on Coupons' rights under the 2002 Policy. *See* Exhibit C at pp 2-3. According to the arbitrator, then, Indian Harbor cannot establish a late claim defense unless it can show that it specifically drew Coupons' attention to the consequences of the Renewal Endorsement prior to the end of the 2002 Policy year. There is no evidence that Coupons had such notice.

Indian Harbor also denied coverage on the ground that Coupons was aware of the patents at issue in the Black Diamond Litigation ("Barnett patents") prior to the renewal

of the 2002 Policy, but that it failed to draw the Barnett patents to Indian Harbor's attention. Mr. Kananen admitted to Indian Harbor that Rader found one of the Barnett patents prior to the 2002 renewal, but stated that this patent was irrelevant to Coupons' product, so it was not included in the opinion letter submitted to Indian Harbor. Mr. Kananen did not call this Barnett patent to the attention of anyone at Coupons, and no one at Coupons was aware of it prior to November 2002, when Black Diamond and E-Centives initiated the litigation against Coupons.

C.  **Coupons' Claims Against Rader**

Coupons has always maintained, consistent with the Arbitrator's ruling, that it was under no obligation to submit its Claim Form prior to August 10, 2003. Indian Harbor, however, has maintained that Coupons' insurance brokers and Rader were on notice, or should have been on notice, that there would be a renewal endorsement in the 2003-2004 policy, and therefore that Coupons should have filed its Claim Form by August 10, 2003. Coupons believes that Indian Harbor should not escape liability based on Rader's failure to recognize the August 10 filing deadline. There remains a risk, however, that the Arbitrator will disagree, finding that Rader knew or should have known of the filing deadline.

Rader declined to enter into an agreement tolling the statute of limitations, so Coupons prudently filed this action against Rader to preserve its rights. Rader took on the responsibility of advising Coupons with respect to its patent infringement insurance coverage and in fact assisted Coupons in renewing its policy in 2003. No one at Rader ever drew Coupons' attention to the renewal endorsement requiring Coupons to submit a Claim Form prior to August 10, 2003. No one at Rader advised Coupons of the risk of losing all insurance coverage for the Black Diamond Litigation.

Coupons also filed this action to ensure that it preserved its right to seek any damages caused by Mr. Kananen's actions in not informing Coupons or Indian Harbor of

the Barnett patents, should the arbitrator rule that Rader's actions are imputable to Coupons.

Notwithstanding Indian Harbor's argument for why it is necessary to intervene in this matter to obtain discovery, nothing in Rader's counterclaim touches on this notice issue which the arbitrator has defined as a question to be decided on the late filing issue. The counterclaim simply suggests by implication that Rader may have advised Coupons that failure to submit its Claim Form at all could result in Coupons not obtaining insurance coverage. As Indian Harbor knows, there is no documentary evidence supporting Rader's suggestion that it advised Coupons of the risk that not filing its Claim Form could result in the loss of its $5 million insurance coverage. Attorneys typically reduce this type of advice, affecting several million dollars of insurance coverage, to writing.

In any event, only if the arbitrator rules in favor of Indian Harbor and finds that Coupons was on notice of the renewal endorsement, will Coupons seek in this litigation to show that Rader breached its professional obligations to Coupons by failing to advise Coupons of this deadline.

Coupons' final cause of action against Rader arises out of Rader's assertion of an affirmative defense in the Black Diamond Litigation for which there was no factual basis. This resulted in Coupons potentially being liable for plaintiffs' attorneys fees in the Black Diamond Litigation, had plaintiffs prevail in that case. To the extent that this failure impacted negatively on Coupons' negotiation position in the Black Diamond Litigation, Indian Harbor asserts as a defense that it should not be responsible for any resulting portion of the settlement amount. This, however, is an element of damages for which Coupons bears the burden in the Indian Harbor arbitration. No ruling in this litigation will affect Indian Harbor's rights in the arbitration, even if there were a ruling on this issue prior to the conclusion of the arbitration.

## II.     ARGUMENT

### A.     Indian Harbor Improperly Seeks to Circumvent Its Own Arbitration Provision.

Indian Harbor wrote the binding arbitration clause and imposed it on its insureds. Indian Harbor has heretofore benefited by the limited discovery and informal procedures afforded by arbitrations. Indian Harbor cannot misuse Rule 24 to violate axiomatic state and federal principles favoring arbitration to circumvent the arbitration discovery regime that it selected.[7]

In *Haworth, Inc. v. Steelcase, Inc.*, 12 F.3d 1090 (Fed. Cir. 1993), a similar situation arose in which a would-be Rule 24 intervenor sought to intervene in ADR proceedings solely to obtain document discovery under Rule 24.[8] The appellate court, in affirming the district court's denial of intervention, emphasized that "public access interests should not, in this case, override the ADR agreement, which also fosters strong public policies in favor of judicial economy and private resolution of disputes." *Id.* at 1093. Additionally, the appellate court recognized that "the allowance of HMI's [proposed intervenor] intervention, over the opposition of both parties to the ADR proceeding, poses a threat to the continuation and successful completion of the ADR proceeding." *Id.* at 1094.

---

[7] *Harvey Aluminum v. United Steelworkers of Am.*, 263 F.Supp.488 (C.D.Cal. 1967). Under Federal law, arbitrations are vigorously enforced, and any doubt concerning the scope of arbitration should be resolved in favor of arbitration. *Ever-Gotesco Resources & Holdings, Inc. v. Pricesmart, Inc.*, 192 F.Supp.2d 1040 (S.D.Cal. 2002). Additionally, California has a strong policy of supporting the enforcement of arbitration agreements. *SI V, LLC v. FMC Corp.*, 223 F.Supp.2d 1059 (N.D. Cal. 2002).

[8] In *Haworth*, the proposed intervenor, HMI, attempted to rely on an earlier case, *Meyer Goldberg v. Fisher Foods*, 823 F.2d 159 (6th Cir. 1987), in which the Court of Appeals had reversed the district court's denial of a motion to intervene for discovery purposes. The *Haworth* court, however, analyzed the elements of Rule 24 and distinguished *Meyer Goldberg*, relying heavily on the facts that in *Meyer Goldberg* the proceeding was "public" unlike the ADR proceeding at issue in *Haworth* and the underlying case had terminated. Our case is distinguishable from *Meyer Goldberg* on these same grounds – it involves an ongoing ADR proceeding. In addition, the two cases in *Meyer Goldberg* involved identical defendants and identical relief, unlike the situation presented here.

**B.     Indian Harbor Does Not Meet the Test to Intervene Under Rule 24(a)**

Indian Harbor correctly cites the four factors necessary to establish intervention as a matter of right under Rule 24(a), namely: (1) the timeliness of the application; (2) whether the applicant has a legally protected interest in the action; (3) whether the action threatens to impair that interest; and (4) whether the applicant's interest is adequately represented by existing parties. Indian Harbor must establish all 4 factors. *Jones v. Prince George's County, Maryland*, 348 F.3d 1014, 1017-1018 (DC Cir. 2003). Indian Harbor fails, however, to satisfy at least three of these factors because it has no legally protected interest in this action. Coupons therefore respectfully requests that the Court deny Indian Harbor's motion to intervene.

   1.     Indian Harbor Has No Legally Protected Interest in This Litigation.

Indian Harbor is not entitled to intervene solely for the purposes of obtaining deposition discovery. This deposition discovery is speculative at best and is premised on possible discovery arising from vague allegations contained in Rader's counterclaim. Indeed, Indian Harbor cannot cite one case in which the courts have allowed intervention under the circumstances outlined in Indian Harbor's motion. Coupons' malpractice lawsuit against Rader tolls the statute and addresses the possibility that the arbitrator might conclude, on some imputation or other theory, that Coupons had, or should have had, notice of certain facts through Coupon's attorneys, Rader. Coupons' arbitration claim against Indian Harbor is for bad faith and contract breach. The defendants are different in each action.

Even entering into Indian Harbor's Rule 24 field of dreams ballpark, any deposition testimony will play little to no material role in the arbitrator's inquiry into the bad faith of Indian Harbor given the disconnect between the arbitrators inquiry (see pp. 5-6 above) and the absence of that issue from Rader's counterclaim. Accordingly, the arbitrator rejected Indian Harbor's stay motion to take discovery here, thereby

emphasizing the little weight that the arbitrator affords to Indian Harbor's speculative deposition evidence.

These facts do not begin to approach the Rule 24 test: whether Indian Harbor has show that it "would suffer harm from an adverse decision on the merits." *State of Alaska v. FERC*, 980 F.2d 761, 763 (D.C. Cir. 1992). Indian Harbor has shown no actual interest required for intervention purposes. *Compare, Fund for Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003), (holding that a real interest existed because the intervenor's "property" was directly at issue in the lawsuit and that a verdict regarding the subject matter of the lawsuit directly impacted the intervenor); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060 (D.C. Cir. 1998), (holding that a real interest existed because the patent holder intervenor was directly affected by a drug manufacturer's action against the FDA; the action would directly impact the intervenor's ability to limit competition for its drug products in the future, creating intervenor standing to intervene); *Appleton v. FDA*, 310 F.Supp.2d 194 (D.D.C. 2004), (holding that the intervenor drug manufacturing companies had a real interest in an action where a former FDA employee sought from the FDA drug approval records which contained trade secrets and confidential information relating to the businesses of the intervenors and that such information would be compromised by the action.); *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997), (holding that the Michigan Chamber of Commerce was allowed to intervene in a lawsuit regarding the legality of certain provisions of Michigan's Campaign Finance Act. The Chamber of Commerce was a vital participant in the political process and was significantly and directly affected by the relief being sought by the challenging union in the case); *Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999), (holding that the minority intervenors had a real interest because a verdict regarding the use of race in determining admissions would directly affect such intervenors, as minority applicants, thereby giving rise to a protectable interest).

Indian Harbor cannot even establish a potential interest, as no legal issue to be adjudicated in this litigation affects any of Indian Harbor's legal rights. This is sufficient to deny intervention. *See DSMC, Inc. v. Convera Corp.*, 273 F.Supp. 2d 14 (D.C. Cir. 2002). ("[T]he proposed intervener's interest in the lawsuit cannot be a potential interest, but must be a legally protectable interest." *Id.* at 25.) The *DSMC* court recognized that a potential interest, only coming into existence when certain contingencies occurred, was insufficient to establish intervention by holding that "such potential harm caused by an indemnification agreement to be too attenuated to justify intervention as of right because that harm is contingent on intervening events." *Id.* at 25-26. Indian Harbor is fundamentally unaffected by the resolution of the malpractice action. Its only possible interest might be in potential, but highly speculatively, relevant depositions based on an overly tendentious interpretation of Rader's counterclaim.[9]

    2.    <u>Indian Harbor Cannot Meet the Third or Fourth Factors of the Rule 24(a) Test for Intervention.</u>

Indian Harbor's desultory attempt to meet the remaining Rule 24 fails: in its words: "the adjudication of any number of issues in this action might operate to resolve the parties' dispute in the arbitration ..." Motion at 8. As an initial matter, this notion is irrelevant, as the arbitrator has denied Indian Harbor's motion to stay the arbitration, so the issues pertaining to Indian Harbor's requested discovery will no doubt be resolved long before any issue in this case is adjudicated. More importantly, Indian Harbor cannot articulate any issue in this litigation that would impair its rights in the arbitration – the scope of Rader's duties to Coupons and its alleged malpractice do not implicate or

---

[9] Indian Harbor's Motion emphasizes the speculative and contingent nature of the relief being sought: the litigation "**might** implicate substantial portions, if not the entirety, of the pending dispute..." (Motion, p. 3); "the patents-in-suit **may** bar coverage for the Underlying Action..." (Motion, p. 4); "[t]he adjudication of any one of these issues **may** have material and irrevocable implications for the dispute in the arbitration. *At a minimum*, it **could** operate to resolve substantial portions, if not the entirety, of the pending dispute..." (Motion, p. 6); "**may** have specific implications for its position in the arbitration" (Motion, p. 9); and "**could potentially** impact the disposition of central issues in the arbitration." (Motion, p. 9) (emphasis added).

change Indian Harbor's duties to its insured or resolve whether it breached those duties. Even if issues in this litigation were adjudicated prior to the resolution of the arbitration, they would neither alter Coupons' causes of action against Indian Harbor nor impair Indian Harbor's defenses in the arbitration. Finally, because Indian Harbor has no legally protected interest in this litigation, it cannot show that its interests are being inadequately represented.

### C. Indian Harbor Should Not Be Allowed to Permissively Intervene under Fed. R. Civ. Pro. 24(b)

Indian Harbor cannot show "a question of law or fact in common" between the arbitration and this action, as required by Fed. R. Civ. Pro. 24(b)(2). Rather, Indian Harbor's Rule 24(b)(2) rationale is just this: "[t]he adjudication of any one of these issues [in the pleadings] could implicate the parties' dispute in the arbitration." That's it -- no evidentiary facts; no explanation of how the adjudication of issues in the pleadings will create a common legal or factual question. Obviously, Indian Harbor's intervention will in no way "significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Board of Education* 552 F.2d 1326, 1329 (9th Cir. 1977).

Additionally, in *DSMC*, the court emphasized the importance of evaluating undue prejudice and delay in determining whether permissive intervention should be allowed.[10] *DSMC*, 273 F. Supp. 2d at 27. Given the Arbitrator's denial of Indian Harbor's stay of the arbitration and the counterclaim's failure to implicate the issue before the arbitration, it is clear that Indian Harbor's intervention motion is a caper to waste Coupons' time and money in an exercise that cannot help its cause in the arbitration except to prejudice

---

[10] While the *DSMC* court allowed permissive intervention, here the facts are different for purposes of such analysis because: (1) intervention in *DSMC* did not cause undue prejudice or delay, while Coupons faces extreme prejudice should the intervention cause delay in the arbitration; and (2) the other parties raised no objections to the intervention in *DSMC* whereas both Coupons and Rader object here. See *DSMC*, 273 F.Supp.2d at 27.

Coupons as it attempts to meet its tight deadline for completion of discovery and preparation for the arbitration.[11] Indeed, it is clear from the discovery record in the arbitration that Indian Harbor has already received considerable evidence from Coupons that demonstrates that there is nothing to Indian Harbor's claim that Rader indicated to Coupons that it risked Indian Harbor denying its claim if Coupons did not submit its perfected claim form by August 10 (see above at p. 7). In addition to Coupons' production of these materials, and waiver of the attorney client privilege, Coupons is producing additional documents from Rader's and its files relating to its other allegations against Rader in this action.

Therefore, Indian Harbor cannot allege lack of document discovery. Indian Harbor has also had the opportunity to take the depositions of Coupons' employees. Therefore, Indian Harbor cannot allege lack of discovery in the arbitration.

### III.   CONCLUSION

For the foregoing reasons, Coupons respectfully requests that the Court deny Indian Harbor's efforts to circumvent the requirements of its own arbitration clause by denying Indian Harbor's motion to intervene.

---

[11] Coupons and Indian Harbor must complete discovery in the next 12 days, of the next 12 days there are 7 days of deposition and there are 2 more depositions at least to schedule. The schedule then provides for the submission of summary judgment motions. There is no time for additional depositions.

Date:  May 3, 2006                              Respectfully submitted,

                                                _____/s/_____
                                                Daniel E. Farrington (#471403)
                                                The Farrington Law Firm, LLC
                                                4550 Montgomery Avenue
                                                Suite 775 North
                                                Bethesda, MD 20814
                                                (301) 951-1538 (Tel.)
                                                (301) 951-1544 (Fax)


                                                Neil A. Goteiner (appearing *pro hac vice*)
                                                Farella, Braun & Martel, LLP
                                                235 Montgomery St.
                                                San Francisco, CA 94104
                                                (415) 954-4400 (Tel.)
                                                (415) 954 4480 (Fax)