1    DONALD M. CARLEY (State Bar No. 178889)
     PETER R. SOARES (State Bar No. 206715)
2    SONNENSCHEIN NATH & ROSENTHAL LLP
     685 Market Street, 6th Floor
3    San Francisco, CA 94105
     Telephone: (415) 882-5000
4    Facsimile: (415) 543-5472

5    Attorneys for Respondent and
     Counter-Claimant
6    INDIAN HARBOR INSURANCE COMPANY

7

8              **AMERICAN ARBITRATION ASSOCIATION**

9                      **SAN FRANCISCO**

10

11

12    COUPONS, INC.,

13        Claimant,

14          vs.

15    INDIAN HARBOR INSURANCE COMPANY,

16        Respondent.

17

18    AND RELATED COUNTER-CLAIM

19

20

| No. 74133Y01022 04 DEAR |
|---|
| **INDIAN HARBOR INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO STAY THE ARBITRATION PROCEEDINGS;** |
| **REPLY DECLARATION OF DONALD M. CARLEY** |

Arbitrator:    Paul A. Renne, Esq.
Hearing Date:   April 28, 2006
Hearing Time:   2:00 p.m.
Location:      101 California St., 5th Flr.
               San Francisco, CA 94111

21

22

23

24

25

26

27

28

SONNENSCHEIN NATH & ROSENTHAL LLP
685 MARKET STREET, 6th FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 882-5000

1

2

# TABLE OF CONTENTS

I.    Introduction. ...........................................................................................................1

II.   Indian Harbor Did Not "Waive" Its Right To Conduct Discovery. .................................1

III.  Indian Harbor Promptly and Justifiably Sought a Stay. ....................................................3

IV.   Absent a Stay, There Will Be a Risk of Prejudicial, Contradictory Outcomes. ...............5

V.    Absent a Stay, Indian Harbor Will Suffer Severe Prejudice. ............................................7

VI.   Conclusion............................................................................................................................9

SONNENSCHEIN NATH & ROSENTHAL LLP
685 MARKET STREET, 6TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 882-5000

Indian Harbor's Reply in Support of Motion to Stay

1    **I.    Introduction.**

2    Coupons would have the Arbitrator believe that Indian Harbor's motion to stay is nothing

3    but a "pretext for delaying the arbitration." (Opp., 3:18-19.) Hardly. As Coupons is fully aware,

4    Indian Harbor is seeking a stay so it will have a meaningful opportunity to conduct discovery into

5    the new allegations in the *Rader* action that, if true, will dramatically affect (if not dispose of) this

6    arbitration. That is precisely why Coupons opposes Indian Harbor's motion to stay – not because

7    it wishes to accelerate the arbitration, but because it wants to deprive Indian Harbor of essential

8    discovery that could provide material evidence to the arbitrator but prove harmful to Coupons'

9    case. Accordingly, for the reasons discussed in detail below, the Arbitrator should grant Indian

10    Harbor's motion to stay.

11    **II.    Indian Harbor Did Not "Waive" Its Right To Conduct Discovery.**

12    According to Coupons, Indian Harbor should not be allowed to participate in discovery in

13    the *Rader* action because it "forced" Coupons into arbitration. Coupons does not, however, claim

14    to be an unsophisticated consumer who was badgered into accepting an unconscionable adhesion

15    contract. Instead, Coupons sought business insurance and voluntarily agreed to the terms of its

16    insurance contract (including the arbitration clause). In fact, Coupons was the party that demanded

17    arbitration.

18    Moreover, the mere fact that Indian Harbor's policy contains an arbitration clause cannot

19    preclude Indian Harbor from seeking a stay. To the contrary, the AAA Rules expressly permit a

20    party to request a postponement where, as here, good cause exists. *See* Commercial Arbitration

21    Rules, R-28, Postponements ("The arbitrator may postpone any hearing . . . upon request of a party

22    for good cause shown, or upon the arbitrator's own initiative."). Nothing in the FAA prohibits a

23    party from seeking to stay an arbitration, either. Similarly, neither the AAA Rules nor the FAA

24    preclude a party from seeking civil discovery in the present situation – *i.e.*, when the other party is

25    seeking to litigate claims that directly impact the rights of the parties in arbitration.

26    At bottom, then, Coupons' position appears to be that Indian Harbor "waived" any right to

27    participate in discovery in the *Rader* action because it elected to arbitrate its dispute with Coupons.

28    But Coupons cites not a single authority that would support such a proposition, likely because

SONNENSCHEIN NATH & ROSENTHAL LLP
685 MARKET STREET, 6TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 882-5000

1    there is none. Moreover, Coupons' argument is essentially the inverse of a more common

2    complaint – *i.e.*, that a party waived its right to arbitration by participating in litigation. In that

3    related context, the governing case law plainly refutes any notion of "waiver."

4        A party seeking to prove waiver of the right to arbitrate "bears a heavy burden of proof,"

5    and must show (a) that the other party knowingly took acts inconsistent with the right to arbitrate

6    and (b) that those inconsistent acts caused prejudice to the party opposing arbitration. *Britton v.*

7    *Co-op Banking Group*, 916 F. 2d 1405, 1412 (9th Cir. 1990); *see also Mitsui & Co. (USA), Inc. v.*

8    *C&H Refinery, Inc.*, 492 F. Supp. 115, 118 (N.D. Cal. 1980) (waiver arises where "it would be

9    manifestly unfair to permit one side to resort to arbitration over the protest of the other."). Merely

10   filing pleadings and engaging in civil discovery is insufficient to give rise to a waiver. *See ATSA*

11   *of California, Inc. v. Continental Ins. Co.*, 702 F. 2d 172, 175 (9th Cir. 1983).

12       Here, none of Indian Harbor's conduct is inconsistent with its right to arbitrate the parties'

13   dispute. Indian Harbor's complaint in intervention in the *Rader* action does not does not ask the

14   District Court to actually *adjudicate* the disputes subject to arbitration. Rather, it merely prays for

15   permission to participate in discovery – which, as noted above, is insufficient to give rise to a

16   waiver of the right to arbitrate. (*See* Carley Reply Decl., ¶ 3, Exh. "A," Complaint, p. 8.) As

17   Coupons concedes, moreover, the only reason Indian Harbor cannot obtain the discovery it seeks

18   in the context of this arbitration is because of the *procedural* restrictions on deposing third-party

19   witnesses who reside out-of-state. (Opp., at 6:8-11.) It has nothing to do with the substantive

20   basis for the Arbitrator's jurisdiction over this dispute.

21       In short, by seeking to intervene and participate in discovery in the *Rader* action, Indian

22   Harbor is not disavowing the parties' agreement to arbitrate, or the Arbitrator's authority to resolve

23   the parties' dispute. Rather, Indian Harbor is seeking to support the arbitration by utilizing the

24   available procedural mechanisms to learn more about the allegations in the *Rader* action that are of

25   direct and critical relevance to the issues currently before the Arbitrator. The Arbitrator ultimately

26   will decide those issues, and he should not be denied full knowledge of the facts and evidence that

27   bear upon them. Absent a stay, however, the Arbitrator will be forced to make a final, binding

28   ruling on the parties' dispute without recourse to the important evidence that Coupons placed at

SONNENSCHEIN NATH & ROSENTHAL LLP
685 MARKET STREET, 6th FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 882-5000

1    issue by suing its former attorneys. As discussed below, such a result would severely prejudice

2    Indian Harbor, whereas a stay would cause no prejudice to Coupons. Accordingly, a stay is

3    warranted.

4    **III.    Indian Harbor Promptly and Justifiably Sought a Stay.**

5          Coupons suggests that Indian Harbor unreasonably delayed moving for a stay, because

6    "there was nothing new in Rader's counterclaim to warrant" the instant motion. (Opp., 3:27-28.)

7    In particular, Coupons notes that (a) Indian Harbor knew the Rader firm was involved in this

8    matter before it filed the counterclaim; and (b) the counterclaim does not expressly allege that the

9    Rader firm advised Coupons that it needed to submit a completed claim form to secure coverage

10   or, alternatively, that the form was unnecessary. (Opp., 2:2-5, 3:27-4:7.) These immaterial

11   observations in no way undermine the timeliness of Indian Harbor's motion.

12         Indian Harbor did not learn of the *Rader* action until late December 2005. (Carley Reply

13   Decl., ¶ 2.) While Coupons smugly notes that it did not file the action "under seal," or actively try

14   to "conceal" it, the fact remains that neither it (nor the Rader firm) notified Indian Harbor or its

15   attorneys of its existence. (*Id.*) Indian Harbor's attorneys only serendipitously happened across

16   the action while they were searching the District Court's on-line docket for another purpose. (*Id.*)

17   The mere fact that Indian Harbor previously knew the Rader firm was involved with the

18   procurement of Coupons' policy is irrelevant. Before discovering the *Rader* action, Indian Harbor

19   had no reason to predict when or where Coupons would sue its former attorneys, or on what

20   precise grounds.

21         Moreover, the key development that justified Indian Harbor's discovery efforts was the

22   Rader firm's answer and counterclaim, which it filed on February 23, 2006. This pleading did not,

23   of course, explicitly state, "The Rader firm told Coupons that it was required to submit a claim

24   form, but Coupons disregarded this advice," or "The Rader firm advised Coupons that a claim

25   form was unnecessary." This is hardly surprising, though: any such allegations would have

26   expressly divulged attorney-client communications in a public record. Presumably for that reason,

27   the Rader firm instead chose to craft its admissions and allegations so that they indirectly – but by

28   no means subtly – indicated that such communications occurred:

SONNENSCHEIN NATH & ROSENTHAL, LLP
685 MARKET STREET, 6TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 882-5000

- 3 -
Indian Harbor's Reply in Support of Motion to Stay

- The Rader firm's answer admitted that it began preparing a claim form for Coupons, but that Coupons' CEO "expressed his belief that the cost of defending the Black Diamond Lawsuit would not exceed the $500,000 retention[.]" This admission indicates that the Rader firm believed a claim form was necessary, and communicated this fact to Coupons (at least implicitly) by starting to prepare the form.

- The answer admitted that "based, in part, on that consideration" – *i.e.*, that the amount at issue would not exceed the self-insured retention – Coupons "instructed [the Rader firm] not to submit a claim form." This admission suggests that Coupons knew that completing the claim form was prerequisite to making claim, but decided not to make a claim, based on its (mistaken) belief regarding the amount at issue.

- The counterclaim alleges Coupons would have to commit perjury to prove that the Rader firm failed to advise Coupons that it needed to timely submit a claim form to secure coverage. Stated otherwise, the counterclaim alleged that the Rader firm *did* advise Coupons about the necessity of a claim form.

- The counterclaim asserted that Coupons would have to commit perjury to prove that December 12, 2003 was "Coupons' first indication that there might have been a deadline for submitting its Claim Form." As before, this indirectly (but necessarily) alleges that Coupons was advised of the deadline at an earlier date – *i.e.*, by the Rader firm. Alternatively, it suggests Coupons may have known of the claim-reporting deadline because it was aware of the renewal endorsement to the policy, which unambiguously explained that deadline.

These admissions and allegations were not "old news" to Indian Harbor, as Coupons suggests. To the contrary, they directly (if not expressly) indicated that the Rader firm had advised Coupons of the necessity of presenting a completed claim form, in advance of the deadline for doing so, but that Coupons disregarded that advice based on its understanding of the amount at issue in the underlying litigation -- which understanding, in turn, was probably based on the Rader firm's advice. As the Arbitrator is well aware, these issues are of central importance to this case, and raise numerous questions calling out for further discovery. How did the Rader firm know about the claim-reporting deadline? Did it learn of the deadline because it read the renewal endorsement to the policy? Did the Rader firm tell Coupons about the claim-reporting deadline or the renewal endorsement? Did Coupons learn of the claim-reporting deadline, and if so, how and when? Did it independently read the renewal endorsement? These are the types of questions Indian Harbor needs to pursue in discovery in the *Rader* action, as the answers will have wide-ranging, if not dispositive, impacts on this arbitration.

SONNENSCHEIN NATH & ROSENTHAL LLP
685 MARKET STREET, 6TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 882-5000

1      In sum, the answer and counterclaim raised new issues that created a compelling need for

2   further discovery. The Rader firm's attorneys, however, had flatly refused to allow Indian Harbor

3   to pursue such discovery in connection with the arbitration. (*See* Carley Decl., ¶ 4, Exh. "C.")

4   Accordingly, on March 14, 2006 – only three weeks after the Rader firm filed its counterclaim –

5   Indian Harbor submitted this motion to stay the arbitration and, promptly thereafter, petitioned to

6   intervene in the *Rader* action to participate in discovery. In no way was this conduct unjustified,

7   or unreasonably belated. To the contrary, Indian Harbor has acted promptly to protect its ability to

8   learn more about the critical allegations that only recently came to light.

9   **IV.    Absent a Stay, There Will Be a Risk of Prejudicial, Contradictory Outcomes.**

10      According to Coupons, there is no risk of conflicting rulings justifying a stay because the

11   *Rader* action (a) likely will be stayed in the near future; (b) is simply a "hedge" lawsuit that

12   depends on the outcome of the arbitration; and (c) will not proceed to judgment before the

13   arbitration hearing. None of these arguments has merit.

14      First, the *Rader* action has *not* been stayed to date, nor has any motion to stay been filed by

15   any party thereto. (Carley Reply Decl., ¶ 4, Exh. "B.") Once Indian Harbor intervenes in the

16   *Rader* action, moreover, it will vigorously oppose any such stay. Furthermore, the speculative

17   prospect that the *Rader* action might be stayed in the future does not justify denying a stay of the

18   arbitration, which would deprive Indian Harbor of its opportunity to conduct critical discovery. If

19   the *Rader* action were to be stayed, sometime in the future, the Arbitrator always could consider

20   lifting the stay on this arbitration, if warranted.

21      Second, Coupons' argument that the *Rader* action "depends in large part on the outcome of

22   the arbitration" (Opp., 4:19-20) is only one, self-serving way of looking at the issue. From Indian

23   Harbor's perspective, the outcome of the *arbitration* will depend, as to some key issues, on the

24   evidence supporting the allegations in the *Rader* action. As noted above, the Rader firm's answer

25   and counterclaim directly implicate numerous factual issues that, pending further discovery, may

26   have dispositive effects on the parties' dispute here. Once Indian Harbor is allowed to intervene in

27   the *Rader* action, it will have the legal right to conduct discovery into those issues. That right

28   should not be defeated by the fact that *Coupons* decided to file a malpractice action against its

SONNENSCHEIN NATH & ROSENTHAL LLP
685 MARKET STREET, 6TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415)882-5000

1    former attorneys while this arbitration was pending. To the contrary, the filing of that malpractice

2    action is precisely what gave Indian Harbor the procedural right to intervene and seek discovery.

3    Coupons admittedly chose to "hedge" its bets by suing its former attorneys; it now must live by the

4    consequences. One can only assume and hope that Coupons' decision to sue the Rader firm (and

5    two of its partners) for malpractice was not taken lightly.

6          Third, contrary to Coupons' argument, the arbitration award in this matter will not resolve

7    any issues in the *Rader* action. Arbitration awards have no *res judicata* or collateral estoppel

8    effect against a non-party to the arbitration, such as the Rader firm here. *See Vandenberg v.*

9    *Superior Court*, 21 Cal. 4th 815, 824 (1999) ("[A] private arbitration award, even if judicially

10   confirmed, may not have nonmutual collateral estoppel effect under California law unless there

11   was an agreement to that effect in the particular case.").

12         Fourth, it is irrelevant that no judgment in the *Rader* action will likely be rendered before

13   the Arbitrator issues his ruling here. As noted above, Indian Harbor is not asking the District

14   Court to rule upon the *merits* of the dispute currently before the Arbitrator. Indian Harbor is

15   seeking to participate in *discovery* – and even then, is only concerned with certain issues. Once it

16   intervenes, Indian Harbor could ask the District Court for a scheduling order that facilitates the

17   prompt completion of discovery on those issues relevant to Indian Harbor. In short, Indian Harbor

18   is not asking to postpone the arbitration hearing until a judgment comes down in the *Rader* action:

19   it only asks for a brief stay, to allow it to pursue its limited (yet essential) discovery.

20         Finally, there are very real risks of contradictory outcomes here. For example, in the *Rader*

21   action, Coupons alleges the Rader firm negligently asserted a defense under 35 U.S.C. section 273

22   that caused Coupons to pay more to settle the underlying action. In the arbitration, Coupons has

23   refused to allow its employees to testify on this issue, invoking the attorney-client privilege. By

24   contrast, in the *Rader* action, the privilege does not apply, because the case involves legal

25   malpractice. Hence, unless the arbitration is stayed, so that Indian Harbor can conduct discovery

26   into the "negligent settlement" issue in the *Rader* action, the Arbitrator will have to make his

27   award without hearing any meaningful evidence on the issue. The Arbitrator thus could award (or

28   decline to award) to Coupons monies it paid in the underlying settlement that the *Rader* court later

SONNENSCHEIN NATH & ROSENTHAL LLP
685 MARKET STREET, 6TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 882-5000

1    finds were (or were not) attributable to the Rader firm's malpractice. Because the Arbitrator's

2    award is final and binding, but will not act as *res judicata* in the *Rader* action, Coupons therefore

3    could obtain a windfall, "double-dip" recovery for its settlement payment (or, theoretically, could

4    receive less than it deserved). The same risk adheres to Coupons' claim in the arbitration for

5    reimbursement of its defense costs – which, in the *Rader* action, it claims it did not owe, and

6    allegedly did not pay, and may never have to pay, depending on how the *Rader* court rules.

7    Plainly, the threat of inconsistent outcomes is substantial.

8    **V.    Absent a Stay, Indian Harbor Will Suffer Severe Prejudice.**

9           Based on the above, it is apparent that Indian Harbor will suffer severe prejudice if the

10   arbitration is not stayed. Once it intervenes in the *Rader* action, Indian Harbor will have a legal

11   right to pursue discovery into important factual issues that directly bear on critical issues to Indian

12   Harbor's defenses in the arbitration. Absent a stay, that right will effectively and permanently be

13   lost – which, of course, is Coupons' goal.

14          This prejudice is not obviated by Coupons' highly redacted production of certain self-

15   selected documents that purportedly contain the Rader firm's "insurance-related communications."

16   (*See* Carley Reply Decl., ¶ 5.) Indian Harbor should not have to accept Coupons' convenient

17   assertion that the unredacted portions of the few documents it has chosen to share conclusively

18   disprove the Rader firm's allegations. Essentially, Coupons is asking the Indian Harbor (and the

19   Arbitrator) to assume – based on a select handful of redacted documents – that its former attorneys

20   are bald-faced liars. But the Rader firm filed its counterclaim in federal court, where the threat of

21   Rule 11 sanctions is real and substantial. If the counterclaim truly were as facially unmeritorious

22   as Coupons suggests, one can only presume it never would have been filed.

23          Furthermore, the foundation of Coupons' entire argument is that if it was not written down, it

24   did not happen. This premise is not just shaky, but unsupportable. In law, and in many areas of

25   business, every oral statement is not necessarily written down or confirmed. The fact that a

26   statement does not appear in one of the select documents Coupons has produced does not prove it

27   was not made. Perhaps the Rader firm's advice regarding the claim-reporting deadline was given

28   orally. Or, perhaps it was memorialized in documents that Coupons has withheld or redacted. Or,

SONNENSCHEIN NATH & ROSENTHAL LLP
685 MARKET STREET, 6TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 282-5000

1    perhaps Coupons told the Rader firm to do *nothing* with respect to insurance, such that Coupons

2    did not deem it an "insurance-related communication" (whatever that term means). Either way,

3    Indian Harbor will never know unless and until it is allowed to complete its discovery in the *Rader*

4    action. In short, documents rarely tell the whole story – particularly when one party purports to

5    unilaterally decide which documents the other party can see.

6        Similarly immaterial is Coupons' proposal that the depositions of key witnesses in the

7    *Rader* action could be admitted in the arbitration, but without giving Indian Harbor the opportunity

8    to cross-examine them. As the foregoing discussion shows, Indian Harbor's interests in the *Rader*

9    action are not "exactly aligned" with the Rader firm, as Coupons now claims. In particular, the

10   Rader firm will have no interest in eliciting testimony that it negligently caused Coupons to pay

11   additional amounts in the underlying settlement, or that its fee bills were unreasonable – topics

12   that will be of great interest to Indian Harbor. Moreover, the Rader firm's "interest" is defending

13   itself against a malpractice claim – not probing or establishing all the elements necessary to show

14   the absence of coverage under Indian Harbor's policy. The Rader firm thus may focus its defense

15   efforts on issues that will skirt the coverage issues raised here – *e.g.*, by trying to show that it owed

16   no duty to advise Coupons about the claim-reporting requirements, as opposed to showing that it

17   owed and fulfilled that duty.

18       Furthermore, Indian Harbor has no assurances that the Rader firm will allow its witnesses

19   to be deposed in time for their testimony to be used in the arbitration. Nor is there any guarantee

20   that Coupons will finish the depositions before the arbitration hearing. To the contrary, unless the

21   arbitration is stayed, Coupons admits that "the arbitration will be completed *long before discovery*

22   *is concluded* in the Rader Litigation[.]" (Opp., at 3:14-15 [emphasis added].) Simply put, Indian

23   Harbor needs to *actively* participate in discovery to ensure its rights and interests are adequately

24   protected. Otherwise, Coupons will have every incentive (and the ability) to delay the depositions

25   in the *Rader* action so as to prevent the Arbitrator from being able to consider the witnesses'

26   testimony. Such a delay tactic seems particularly likely, given the fervor with which Coupons has

27   opposed Indian Harbor's discovery efforts. Expecting Coupons to protect Indian Harbor's rights

28   would be like putting the fox in charge of the henhouse.

SONNENSCHEIN NATH & ROSENTHAL LLP
685 MARKET STREET, 6TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 882-5000

1    Coupons' history in dealing with the significance of the *Rader* action and its impact on the

2    arbitration only provides more cause for concern. After Indian Harbor learned of the *Rader* action,

3    it initiated discussions with Coupons about the effect that action had on Coupons' ability to assert

4    the attorney-client privilege. Coupons first denied it had waived the privilege. It then asserted that

5    the privilege was waived. Later, its attorney invoked the privilege during the deposition of Frank

6    Serafin. Coupons then indicated that Indian Harbor could recall Mr. Serafin and ask the same

7    questions to which it has previously invoked the privilege. At the subsequent deposition of Jeffrey

8    Weitzman, Coupons' counsel allowed certain questions related to his communications with the

9    *Rader* firm, but construed any waiver of the attorney-client privilege so narrowly that only

10   questions that mirrored the allegations in the pleadings were permissible.

11       In sum, Indian Harbor will suffer severe prejudice if it cannot actively participate in

12   discovery in the *Rader* action. By contrast, staying the arbitration will cause no prejudice to

13   Coupons. It was Coupons – not Indian Harbor – that decided to sue its former lawyers. It also

14   made the decision not to disclose the suit to Indian Harbor. Thus, any "delay" is largely of

15   Coupons' own making. At worst, moreover, Coupons only will have to wait a few months, until

16   Indian Harbor completes its limited discovery in the *Rader* action, before proceeding with the

17   arbitration. In these circumstances, it is well worth putting the arbitration on hold for a few

18   months to ensure that the Arbitrator will have access to critical information that goes to the heart

19   of several important, disputed issues.

20   **VI.    Conclusion**

21       In ruling on this motion to stay, the Arbitrator essentially has two choices. First, the

22   Arbitrator could issue a brief, temporary stay of the arbitration, which will cause no prejudice to

23   Coupons, but will allow Indian Harbor to meaningfully explore the critical evidence that Coupons

24   placed at issue by suing its former attorneys. The alternative is to rush the arbitration along,

25   effectively deprive Indian Harbor of its legal right to discovery, and have the Arbitrator issue a

26   final, binding ruling without the opportunity to review the essential evidence that will come to

27   light in the *Rader* action. In Indian Harbor's view, the proper choice is both clear and easy, and its

28   motion to stay should be granted.

SONNENSCHEIN NATH & ROSENTHAL LLP
685 MARKET STREET, 6TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 882-5000

1    Dated: April 24, 2006                        Respectfully Submitted,

2                                                 SONNENSCHEIN NATH & ROSENTHAL LLP

3

4                                                 By

5                                                     DONALD M. CARLEY
                                                  Attorneys for Respondent and Counter-Claimant
6                                                 INDIAN HARBOR INSURANCE COMPANY

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   27235285/v11

SONNENSCHEIN NATH & ROSENTHAL LLP
685 MARKET STREET, 6TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 882-5000

- 10 -
Indian Harbor's Reply in Support of Motion to Stay

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COUPONS, INC.,

           Plaintiff,

     v.

ELLEN A. EFROS, ESQ.; RONALD P.
KANANEN, ESQ.; RADER, FISHMAN &
GRAUER, PLLC; and DOES 1-20,

           Defendants.

Case No. 1:06-CV-00142 HHK

**ORAL ARGUMENT REQUESTED**

### INDIAN HARBOR INSURANCE COMPANY'S MOTION TO INTERVENE

Pursuant to Federal Rule of Civil Procedure 24, Indian Harbor Insurance Company

("Indian Harbor") hereby moves this Honorable Court for an Order granting its motion to

intervene of right pursuant to Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, for

permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(2).

Indian Harbor satisfies the requirements to intervene of right because: (1) it possesses

standing under Article III of the Constitution, (2) its application is timely, (3) it has a legally

protected interest in this action, (4) this action threatens to impair that interest, and (5) its interest

is not adequately represented by the parties to this action. In the alternative, Indian Harbor

satisfies the requirements for permissive intervention because the pleadings in this action raise

legal and factual issues that relate to the dispute between Indian Harbor and Coupons in a

pending California arbitration proceeding and intervention will neither unduly delay or prejudice

the adjudication of the rights of the original parties.

In further support, Indian Harbor respectfully refers the Court to the accompanying

Memorandum of Points and Authorities in support of this motion, and the proposed complaint in

intervention, which are incorporated herein by reference.

Respectfully submitted,

SONNENSCHEIN NATH & ROSENTHAL LLP

April 7, 2006

By_____ /s/ Kirk R. Ruthenberg_____
Kirk R. Ruthenberg #415520
1301 K Street, N.W.
Washington, D. C. 20005
(202) 408-6400
(202) 408-6399 (facsimile)
kruthenberg@sonnenschein.com

Attorneys for Indian Harbor Insurance
Company

Of Counsel:
Sonnenschein Nath & Rosenthal LLP
Donald M. Carley
Peter R. Soares
685 Market Street, 6th Floor
San Francisco, CA 94105
(415) 882-5000
(415) 543-5472 (facsimile)

- 2 -

## CERTIFICATE OF SERVICE

I, Erin M. Shoudt, do hereby certify that the foregoing Indian Harbor Insurance Company's Motion to Intervene, its accompanying Memorandum of Points and Authorities in Support, its Complaint in Intervention, Proposed Order and the Certificate Required by Local Rule 7.1 were served April 7, 2006 upon the following via email and by postage prepaid first class U.S. Mail:

> Jonathan K. Tycko
> TYCKO ZAVAREEI, & SPIVA, LLP
> 2000 L Street, NW
> Suite 808
> Washington, DC 20036
> (202) 973-0900
> Fax: (202) 318-2623
> Email: jtycko@tzslaw.com
>
> Mark J. Hancock
> SEDGWICK, DETERT, MORAN & ARNOLD LLP
> One Market Plaza
> Steuart Tower
> San Francisco, CA 94105
> (415) 781-7900
> Fax: (415) 781-2635
> Email: mark.hancock@sdma.com
>
> Steven D. Wasserman
> SEDGWICK, DETERT, MORAN & ARNOLD LLP
> One Market Plaza
> Steuart Tower
> San Francisco, CA 94105
> (415) 781-7900
> Fax: (415) 781-2635
> Email: steven.wasserman@sdma.com

                                        /s/ Erin M. Shoudt
                                        Erin M. Shoudt

27234021

- 3 -

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COUPONS, INC.,

        Plaintiff,

    v.

ELLEN A. EFROS, ESQ.; RONALD P. KANANEN, ESQ.; RADER, FISHMAN & GRAUER, PLLC; and DOES 1-20,

        Defendants.

---

RADER, FISHMAN & GRAUER, PLLC,

        Counter-Claimant,

    v.

COUPONS, INC.,

        Counter-Defendant.

---

INDIAN HARBOR INSURANCE COMPANY,

        Plaintiff in Intervention,

    v.

COUPONS, INC.; ELLEN A. EFROS, ESQ.; RONALD P. KANANEN, ESQ.; RADER, FISHMAN & GRAUER, PLLC; and DOES 1-20,

        Defendants in Intervention.

Case No. 1:06-CV-00142 HHK

### COMPLAINT IN INTERVENTION

COMES NOW plaintiff in intervention Indian Harbor Insurance Company ("Indian Harbor"), by and through its attorneys, and for its Complaint in Intervention, states as follows:

## PARTIES

1.    Indian Harbor is a corporation created and existing under the laws of the State of North Dakota, with its principal place of business in Stamford, Connecticut.

2.    Upon information and belief, plaintiff, counter-defendant, and defendant-in-intervention Coupons, Inc. ("Coupons") is a corporation created and existing under the laws of the State of California with its principal place of business in Mountain View, California.

3.    Upon information and belief, defendant, counter-claimant, and defendant-in-intervention Rader, Fishman & Grauer, PLLC (the "Rader Firm") is a law firm and a private limited liability company registered in the State of Michigan, with its principal place of business in Bloomfield Hills, Michigan.

4.    Upon information and belief, defendant and defendant-in-intervention Ellen A. Efros ("Efros") is a natural person who resides in Washington, D.C. Upon information and belief, Efros is an attorney at law and a former member of the Rader Firm.

5.    Upon information and belief, defendant and defendant-in-intervention Ronald P. Kananen ("Kananen") is a natural person who resides in the State of Virginia. Upon information and belief, Kananen is an attorney at law and a member of the Rader Firm.

## JURISDICTION

6.    Indian Harbor brings this intervention action under Federal Rule of Civil Procedure 24. Jurisdiction is proper in this Court under 28 U.S.C. section 1332 because, as alleged more fully below, there is complete diversity between the citizenship of Indian Harbor and the citizenship of the defendants in intervention and the amount in controversy, excluding interest and costs, exceeds $75,000.00.

7.    Jurisdiction is proper in this Court under 28 U.S.C. section 1367(a) because the claims of Indian Harbor are so related to claims in the action between the defendants in

- 2 -

intervention that they form part of the same case or controversy under Article III of the United States Constitution.

### BACKGROUND ALLEGATIONS

8.    Indian Harbor issued to Coupons a specialized claims-made and reported Intellectual Property Infringement Defense Cost Reimbursement Policy (the "Policy"). A copy of the Policy is attached hereto as Exhibit "A" and fully incorporated herein by reference.

9.    Thereafter, Coupons was sued in the action entitled *Black Diamond v. Coupons, Inc.*, United States District Court for the District of Maryland, Case No. L02CV3701 (the "Black Diamond Litigation").

10.   Indian Harbor declined to reimburse Coupons for the defense and settlement of the Black Diamond Litigation for reasons including that: (1) Coupons' untimely CLAIM[1] submission barred coverage for the Black Diamond Litigation; and (2) Coupons' (or its agents') knowledge of the patents-in-suit prior to the effective date of the Policy barred coverage for the Black Diamond Litigation under Exclusion 9 in the Policy.

11.   Coupons then submitted a Demand For Arbitration against Indian Harbor with the American Arbitration Association asserting claims for declaratory relief, breach of contract, and "bad faith" (the "Arbitration"). The hearing in the Arbitration is set for July 17 through July 26, 2006.

12.   On July 26, 2005, Coupons initiated this action in the Superior Court of the State of California for the County of Santa Clara against its former counsel, the Rader Firm, Efros, and Kananen (the "Defendants"), for legal malpractice (the "Malpractice Action"). In the complaint, Coupons alleged that the Defendants: (1) failed to disclose patents material to Coupons' application for and renewal of the Policy; (2) failed to advise Coupons concerning the timely

---

[1] The term "CLAIM" in capital letters refers to a defined term in the Policy.

submission of a CLAIM to Indian Harbor; and (3) asserted a defense that caused Coupons to pay more to settle the Black Diamond Litigation. Indian Harbor first learned that Coupons filed the Malpractice Action in late December 2005.

13.    The Malpractice Action was removed to the United States District Court for the Northern District of California and was subsequently transferred, on January 5, 2006, to this Court.

14.    On February 23, 2006, the Defendants filed an Answer that admits certain of the allegations in the Malpractice Action, including that: (1) the Rader Firm "found 'at least one of the patents that was later the subject of the Black Diamond Litigation'"; (2) Efros began preparing a claim form, but then Mr. Boal of Coupons "expressed his belief that the cost of defending the Black Diamond Lawsuit would not exceed the $500,000 retention"; and (3) "based, in part, on that consideration, Coupons instructed Defendants not to submit a claim form."

15.    Along with its Answer in the Malpractice Action, the Rader Firm brought a Counterclaim against Coupons asserting counts for breach of contract, quantum meruit, accounts stated, fraud, and bad-faith litigation. Those counts rely principally on the core allegation that, despite repeated representations to the contrary, Coupons failed to pay defendants the $392,551.85 outstanding in attorneys' fees owed to the Rader Firm (for which Coupons allegedly seeks reimbursement in the Arbitration).

16.    Additionally, in its count for bad-faith litigation, the Rader Firm asserts that certain of the allegations in the Malpractice Action are false and cannot be proven without perjured testimony or falsified evidence. In particular, the allegations that the Rader Firm asserts are "false and/or without factual basis" include:

- 4 -

(a)     "The allegation, contained in the introductory paragraph, that 'neither Efros nor any other attorney at Rader advised Coupons that Coupons' failure to timely submit an official claim form to Indian Harbor could result in loss of insurance coverage for the patent infringement lawsuit that E-Centives, Inc. had filed against Coupons'"; and

(b)     "The allegation, contained in Paragraph 14, that December 12, 2003 was 'Coupons' first indication that there might have been a deadline for submitting its Claim Form.'"

17.     In furtherance of its defense to the Arbitration, Indian Harbor has attempted to obtain discovery concerning the allegations in the pleadings in the Malpractice Action and, specifically, in Defendants' Answer and the Counterclaim. However, Defendants have refused to cooperate with any discovery sought in the Arbitration. Absent its participation in this suit, Indian Harbor will have no other means to obtain discovery from Defendants.

## RIGHT TO INTERVENTION

18.     Indian Harbor re-alleges and incorporates by reference all of the preceding allegations as though set forth fully herein.

19.     Indian Harbor is entitled to intervene in the Malpractice action as a matter of right under Federal Rule of Civil Procedure 24(a).

20.     Indian Harbor has a legally protected interest in the Malpractice Action and the Counterclaim filed therein. Indian Harbor's interest is sufficient to grant it standing under Article III of the United States Constitution.

21.     The pleadings in the Malpractice Action raise legal and factual issues that relate to the Arbitration between Indian Harbor and Coupons, including:

(a)     Whether Coupons' untimely CLAIM submission bars coverage for the Black Diamond Litigation;

- 5 -

        (b)     Whether Coupons' (or its agents') knowledge of the patents-in-suit prior to the effective date of the Policy bars coverage for the Black Diamond Litigation under Exclusion 9 in the Policy; and

        (c)     Whether Indian Harbor must reimburse Coupons for:

        (1)     the attorneys' fees Coupons allegedly did not and, depending on the outcome of the Malpractice Action, may never, pay; and

        (2)     the amounts in excess of a reasonable settlement demand that Coupons paid because of the Rader Firm's alleged malpractice.

        22.     The adjudication of these issues, or any one of them, would greatly affect Indian Harbor's interests in the Arbitration. Such an adjudication might even resolve substantial portions, if not the entirety, of the pending dispute between Coupons and Indian Harbor. Also, in discovery in the Malpractice Action, the parties to that action likely will develop evidence that implicates the issues listed in paragraph 21 above. That evidence relates to the claims made by Coupons in the Arbitration and Indian Harbor's defense to those claims. The amount in controversy in the Arbitration greatly exceeds $75,000.00, as Coupons is claiming millions of dollars in damages.

        23.     Indian Harbor has timely sought to intervene in the Malpractice Action to protect its interests therein. Indian Harbor first learned that Coupons filed the Malpractice Action in late December 2005. The Defendants did not file their Answer and Counterclaim – which alerted Indian Harbor to the importance of the Malpractice Action – until February 23, 2006.

        24.     Indian Harbor is so situated that the disposition of the Malpractice Action may, as a practical matter, impair or impede its ability to protect its interests as alleged above. Absent intervention in the Malpractice Action, Indian Harbor will have no means to participate in an

adjudication of issues that might implicate the claims in the Arbitration, or to participate in discovery in the Malpractice Action that would be relevant to those issues.

      25.    Indian Harbor's interests are not adequately represented by the existing parties to the Malpractice Action. The stakes of the parties to the Malpractice Action differ from that of Indian Harbor. Among other things, an award in Coupons' favor in the Arbitration would potentially eliminate portions of the damages that Coupons seeks in the Malpractice Action and fund the settlement of the Rader Firm's counterclaim for breach of contract. Also, Coupons and/or the Defendants may make different arguments than would Indian Harbor, and Indian Harbor will offer necessary elements to the proceedings in the Malpractice Action that the parties thereto may neglect. In particular, to prevail on its claims in the Malpractice Action, Coupons need not necessarily establish each of the allegations in its complaint that would be material to Indian Harbor's interests in the Arbitration, including the extent of Defendants' knowledge of the patents-in-suit. Similarly, Defendants need not necessarily establish the date they advised Coupons of the deadline for filing a Claim Form under the Policy to defend against that Claim.

## PERMISSIVE INTERVENTION

      26.    Indian Harbor re-alleges and incorporates by reference all of the preceding allegations as though set forth fully herein.

      27.    Indian Harbor should be permitted to intervene in the Malpractice Action under Federal Rule of Civil Procedure 24(b)

      28.    Indian Harbor's claims and defenses relate to questions of fact and law in the Malpractice Action.

      29.    Intervention will not unduly delay or prejudice the adjudication of the rights of the original parties to the Malpractice Action. The Defendants only recently filed their Answer

and Counterclaim, on February 23, 2006, and Coupons filed its Answer to the Counterclaim on

April 3, 2006.

     WHEREFORE, plaintiff in intervention Indian Harbor prays for relief as follows:

     1.    For an order allowing Indian Harbor to intervene in the Malpractice Action and

participate in pre-trial discovery in the Malpractice Action, either in full or as limited to the

issues set forth in paragraph 21 above; and

     2.    For such other and further relief as this Court may deem just and proper.

Respectfully submitted,

SONNENSCHEIN NATH & ROSENTHAL LLP

Date:

By   /s/ Kirk R. Ruthenberg
     Kirk R. Ruthenberg #415520
     1301 K Street, N.W.
     Washington, D. C. 20005
     (202) 408-6400
     (202) 408-6399 (facsimile)
     kruthenberg@sonnenschein.com

     Attorneys for Plaintiff in Intervention
     Indian Harbor Insurance Company

Of Counsel:
Sonnenschein Nath & Rosenthal LLP
Donald M. Carley
Peter R. Soares
685 Market Street, 6th Floor
San Francisco, CA 94105
(415) 882-5000
(415) 543-5472 (facsimile)

27233580