

**Endorsement No.: IPI 843-22**

## THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

This endorsement, effective **August 10, 2002** at 12:01 a.m., standard time, forms a part of Policy No. IPI – 190153-D02 issued to **Coupons, Inc.** by Indian Harbor Insurance Company.

This endorsement modifies insurance provided under the following:
Intellectual Property Infringement Defense Cost Reimbursement

The attached Additional Insured Endorsement was inadvertently excluded from the Policy at the time of issue and is now hereby included in the above-identified Policy as of the Effective Date given above.

No additional premium was charged for this addition.

**All other terms & conditions of the Policy remain the same.**

_Sheila A. Van Metre_
Authorized Representative

(IPI 843-22 – Addtl Insured)

IN 000030



Ind'  Harbor Insurance Company
Seaview House, 70 Seaview Avenue, Stamford, CT 06902

# INFRINGEMENT DEFENSE COST AND DAMAGES
# REIMBURSEMENT INSURANCE - ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

| POLICY NO.: | POLICY CHANGES EFFECTIVE: | COMPANY |
|---|---|---|
| IPI-190153-D02 | August 10, 2002 | Indian Harbor Insurance Company |
| NAMED INSURED: | | AUTHORIZED REPRESENTATIVE |
| Coupons, Inc. | | Sheila A. VanMeter |

| ADDITIONAL INSUREDS |
|---|

In consideration of the premium charged, it is understood and agreed that Item 1. of the Declarations includes the following Additional Insured:

Yahoo.com

All other terms and conditions remain unchanged.

_Sheila A. VanMeter_
Authorized Representative

(Amendatory)

IN 000031



**Indian Harbor Insurance Company**
Seaview House, 70 Seaview Avenue, Stamford, CT 06902-6040

## Intellectual Property Infringement Defense
## Cost Reimbursement Policy - *DECLARATIONS*

## POLICY NO. IPI – 190153- D02

**NOTE:** Unless waived by Endorsement, no CLAIM to have a CIVIL PROCEEDING or any part thereof deemed COVERED LITIGATION will be accepted or considered if such CIVIL PROCEEDING is actually commenced on or before the Effective Date of this Policy as well as commenced within Ninety (90) days after the Effective Date of this Policy.

Item 1. Name and Address of Insured:

    Coupons, Inc.
    1301 Shoreway Road, #102
    Belmont, CA 94002

Insured's Agent, Address:

Crump Group
160 Spear Street, 16th Floor
San Francisco, CA 94105

Insured is:    ☐ Individual    ☒Corporation    ☐Partnership    ☐Other_____

Item 2. Policy Period (Month, Day, Year):

| From: August 10, 2002 | To: August 10, 2003 |
|---|---|

(12:01a.m. Standard Time at the address of the Insured as stated herein)

(Note: Policy renewability is not guaranteed. Re-application for continued coverage is required.
The Company reserves the right to refuse continued coverage, except where required by law.)

Item 3. MANUFACTURED PRODUCTS Insured and Premium:

| Product(s) Description: | Premium: | |
|---|---|---|
| See Attached Schedule of MANUFACTURED PRODUCT(S) | $ 113,911.00 | |
| | 3,432.33 | StateTax |
| Coverage includes CIVIL PROCEEDINGS for infringement of: | 500.00 | Policy Process Fee |
| Patents?   Yes ☒    No: ☐ | 286.03 | Stamping Fee |
| Trademarks?   Yes ☐    No: ☒ | | |
| Copyrights?   Yes ☐    No: ☒ | | |
| TOTAL PREMIUM: | $ 118,129.36 | |

Item 4. Limits of Reimbursement (Indemnification) Liability and Damages (if indicated in Item 6); Coinsurance percentage; and Self-      Insured Retention:

| | |
|---|---|
| LITIGATION EXPENSE/DAMAGES (if applicable) per CLAIM................... | $5,000,000 |
| LITIGATION EXPENSE/DAMAGES (if applicable) Policy Aggregate........... | $5,000,000 |
| Coinsurance Percentage.................................................................. | 20% |
| Self Insured Retention per CLAIM........................................................ | $500,000.00 |

Item 5. Endorsements:

| Schedule of Insured Manufactured Products & Renewal & Service of Process Endorsements |
|---|

Item 6. Other Coverages:

| Reimbursement for DAMAGES included? YES: ☒     NO:☐ |
|---|

Countersigned if required by law:

By: _Sheila A. VanMeter_
             Authorized Representative

THIS DECLARATIONS PAGE WITH POLICY AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF,
COMPLETES THE ABOVE NUMBERED INFRINGEMENT DEFENSE COST REIMBURSEMENT POLICY

(DefPolicy2000 - 042501)

IN 000032

Seaview House, 70 Seav᷑    Avenue, Stamford, CT 06902

## *INFRINGEMENT DEFENSE COST AND DAMAGES REIMBURSEMENT INSURANCE - ENDORSEMENT*

### THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

| POLICY NO.: | POLICY CHANGES EFFECTIVE: | COMPANY |
|---|---|---|
| IPI- *190153-002* | **August 10, 2002** | Indian Harbor Insurance Company |
| NAMED INSURED: | | AUTHORIZED REPRESENTATIVE |
| *Coupons, Inc.* | | Sheila A. VanMeter |

### PROPOSED SCHEDULE OF INSURED MANUFACTURED PRODUCTS

The insured product is an electronic coupon distribution system described and claimed in US Patent Application Serial No. 09/451,160 by Coupons, Inc. including but not limited to the following additional preemptive limitations and features to wit a system which a) provides for a consumer to download and print a coupon at home (as distinguished from in stores) via the internet by inputting a United States Postal Service zip code as the only personal identification information, thereby allowing the consumer to remain totally anonymous; b) does not provide that data regarding the selections of the consumer are forwarded to a retail outlet; c) does not provide that the data regarding the selections may be redeemed over the internet; d) contains all of the limitations and assumed characteristics and features recited in the opinion letter thereon by Ronald Kananen of Rader, Rishman & Grauer on August 7, 2001.

X ~~Frances Gleng~~
Authorized Representative of
Named Insured

~~Sheila A. VanMeter~~
Authorized Representative of
Insurance Company

(Sched2 - 021998)



**Endorsement No.: IPI 843-20**

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

This endorsement, effective August 10, 2002 at 12:01 a.m., standard time, forms a part of Policy No. IPI-190153-D02 issued to Coupons, Inc. by Indian Harbor Insurance Company.

This endorsement modifies insurance provided under the following:
Infringement Defense Cost and Damages Reimbursement Insurance

---

### INSURANCE POLICY RENEWAL

In the event the Policy to which this Endorsement is attached is a renewal of a previous policy, then the following conditions shall apply:

1. COVERED LITIGATION which is proceeding under the previous Policy is excluded from coverage under this Policy.

2. Prospective Litigation involving the same or substantially related products as involved in any previous COVERED LITIGATION if brought against the same or related parties as under the previous Policy is excluded from coverage under this Policy.

3. CLAIMS tendered to the Company under the previous Policy are excluded from coverage under this Policy unless Company has indicated otherwise in writing specifically identifying the possible plaintiff(s) to which the carried forward CLAIM relates.

4. All rights to make a CLAIM under the previous Policy shall terminate as of the termination date set forth on the Declarations page of said previous Policy and the Company will not accept any such CLAIM submitted to it thereafter.

5. The Company will accept and consider CLAIMS made under this Renewal Policy on CIVIL PROCEEDINGS alleging INFRINGEMENT which CIVIL PROCEEDINGS are commenced at any time during this Renewal POLICY PERIOD.

6. If in the event there is no further renewal of this renewal Policy, the Company will accept CLAIM(S) for a period of ninety (90) days after the expiration of this renewal Policy provided that there has been no cancellation or termination of this Policy by either Named Insured or the Company but rather this Policy has expired.

---

_Sheila A. Von Metre_

Authorized Representative

(IPI 843-20 - 030599 - Renew)



## ENDORSEMENT # IPI 843-23

This endorsement, effective 12:01 a.m., August 10, 2002 forms a part of Policy No. IPI-190153-D02

Issued to Coupons, Inc.

By Indian Harbor Insurance Company

### SERVICE OF PROCESS

The Commissioner of Insurance of the State of California is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy.  The Company further designates:

> John W. Oster
> NAC Reinsurance Corporation
> One Embarcadero Center, Suite 3810
> San Francisco, CA  94111-3607

its agent in California to whom such process shall be forwarded by the Commissioner of Insurance.

All other terms and conditions of this policy remain unchanged.

_____
(Authorized Representative)

IHIC-CASOP (12/99)

IN  000035



Endorsement No. IPI-843-27

## IMPORTANT INFORMATION TO POLICYHOLDERS

In the event you need to contact someone about this Policy for any reason please contact your agent. If you have additional questions, you may contact the insurance company issuing this Policy at the following address and telephone number:

> Indian Harbor Insurance Company
> Seaview House
> 70 Seaview Avenue
> Stamford, CT 06902-6040
> 1-800-688-1840

If you have a problem with your insurance company, its agent or representative that has not been resolved to your satisfaction, please call or write to the Department of Insurance.

> California Department of Insurance
> Consumer Communications Bureau
> 300 South Spring Street, South Tower
> Los Angeles, CA 90013
> 1-800-927-8291 (if calling from within the Los Angeles Area)
> 1-800-482-4833 (TDD Number)

Written correspondence is preferable so that a record of your inquiry can be maintained. When contacting your agent, company or the Bureau of Insurance, have your Policy Number available.

IHIC-CA-NOT (6/01)

IN 000036

| RENEWAL APPLICATION FOR INTELLECTUAL PROPERTY INFRINGEMENT DEFENSE COST REIMBURSEMENT INSURANCE | INTELLECTUAL PROPERTY INSURANCE SERVICES CORPORATION 10503 Timberwood Circle, Suite 114 Louisville, KY 40223 |
|---|---|

### APPLICANT'S INSTRUCTIONS:

1. Answer all questions in detail. If more space is required, please attach a separate sheet.
2. Application must be signed and dated by owner, partner or officer.
3. PLEASE READ THE STATEMENTS AT THE END OF THIS APPLICATION CAREFULLY.
   (PLEASE TYPE OR PRINT)

| 1. | APPLICANT INFORMATION: | |
|---|---|---|
| a. | Full Name of Applicant: | *COUPONS, INC.* |
| b. | Principal Address: | *1301 Shoreway Rd. #104  Belmont CA 94002* |
| c. | Requested Limits: ☐ Same as Expiring Policy | ☑ Please quote other options as indicated below: *INCREASE POLICY LIMIT TO $5,000,000* |

| 2. | BUSINESS OPERATIONS: |
|---|---|

ARE THERE ANY CHANGES IN THE ANSWERS TO THE QUESTIONS IN THE APPLICATION SUBMITTED IN THE PRIOR YEAR: (IF YES, PLEASE EXPLAIN)
FOR EXAMPLE:

| a. | Business Name? | *NO* |
|---|---|---|
| b. | Corporate Status? | *NO* |
| c. | Change in function, way, result of products through modification or improvement? | *No* |
| d. | Change in operations (i.e., the way you install/repair/service/or manufacture, etc)? | *NO* |
| e. | Communications received relating to insured products (e.g. warning or cease and desist letters)? | *NO* |
| f. | Loss prevention, e.g. loss of or change in infringement avoidance procedures? (IF YES, PLEASE DETAIL) | *NO* |

| 3. | CLAIMS |
|---|---|

| a. | Did you withdraw/recall products from the market in the past 12 months? If so why? | *No* |
|---|---|---|
| b. | Are you aware of any facts or circumstances which might give rise to a claim, e.g. issuance or discovery of new IP or a new suit against you which was not previously reported to Indian Harbor Insurance Company? | *NO* |
| | If yes, please detail. | |

NOTICE TO APPLICANT: The coverage applied for is SOLELY AS STATED IN THE POLICY, which provides coverage on a "CLAIMS MADE" basis for ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD unless the extended reporting period option is exercised in accordance with the terms of the policy.

### WARNING

THE APPLICANT REPRESENTS THAT THE ABOVE STATEMENTS AND FACTS ARE TRUE AND THAT NO MATERIAL FACTS HAVE BEEN SUPPRESSED OR MISSTATED.

NOTICE TO ARKANSAS APPLICANTS: Any person who knowingly presents a false or fraudulent claim for payment for a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

NOTICE TO COLORADO APPLICANTS: It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

IN 000037

NOTICE TO D.C. APPLICANTS: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

NOTICE TO FLORIDA APPLICANTS: Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

NOTICE TO KENTUCKY APPLICANTS: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

NOTICE TO LOUISIANA APPLICANTS: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

NOTICE TO MICHIGAN APPLICANTS: A person who submits an application or files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

NOTICE TO MINNESOTA APPLICANTS: A person who submits an application or files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

NOTICE TO NEW JERSEY APPLICANTS: Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

NOTICE TO NEW MEXICO APPLICANTS: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

NOTICE TO NEW YORK APPLICANTS: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime, and shall be also subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

NOTICE TO OHIO APPLICANTS: Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

NOTICE TO OKLAHOMA APPLICANTS: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

NOTICE TO PENNSYLVANIA APPLICANTS: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

NOTICE TO ALL OTHER STATE APPLICANTS: Any person who knowingly includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

WARRANTY: I warrant to the insurer, that I understand and accept the notice stated above and that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the insurer evidence its acceptance of this application by issuance of a policy. I authorize the release of claim information from any prior insurer to Indian Harbor Insurance Co., Program Manager, Intellectual Property Insurance Services Corporation, 18503 Timberwood Circle, Suite 114, Louisville, KY 40223.

| Signature of Applicant | Date | Title (Officer, Partner, etc) |
|---|---|---|
| _Thomas L. Henry_ | 7/11/0√ | C F O |

SIGNING this application does not bind the Applicant or the Insurer or the Program Manager to complete the insurance, but one copy of this application will be attached to the policy, if issued.

IN 000038

# *INTELLECTUAL PROPERTY INSURANCE*

## INFRINGEMENT DEFENSE COST AND DAMAGES REIMBURSEMENT INSURANCE POLICY

© (1991 - 2000)  *Intellectual Property Insurance Services Corporation, Inc.*

---

This Policy applies only to those CLAIMS that are made to the Company for reimbursement of LITIGATION EXPENSE and DAMAGES (if DAMAGES are designated on the Declarations Page) arising out of COVERED LITIGATION. Coverage under this Policy does not include payment or reimbursement of any fines, or penalties including but not limited to punitive, exemplary, treble or multiple damages of any kind, non-pecuniary relief and taxes assessed against the Named Insured.  PLEASE NOTE THIS IS A DEFENSE COST AND DAMAGES REIMBURSEMENT POLICY ONLY.  UNLESS SPECIFICALLY ASSUMED BY THE COMPANY IN WRITING, THE DEFENSE OF THE NAMED INSURED IN ANY ACTION, ADMINISTRATIVE PROCEEDING(S) OR CIVIL PROCEEDING(S) OF WHATEVER NATURE IS AT ALL TIMES THE RESPONSIBILITY OF THE NAMED INSURED.  Words and phrases appearing in capital letters have special meaning while the same words and phrases in lower case type have their ordinary and customary meanings; please refer to the DEFINITIONS (SECTION I) below.  Please also read the Terms, Conditions, and Exclusions of this Policy carefully and discuss its coverage with your professional advisor.

---

NOTICE:  THE LIMIT OF INDEMNITY AVAILABLE TO PAY DAMAGES (IF SUCH COVERAGE IS DESIGNATED ON THE DECLARATIONS PAGE) SHALL BE REDUCED BY AMOUNTS REIMBURSED FOR LITIGATION EXPENSE.   AMOUNTS INCURRED FOR LITIGATION EXPENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.

The Company will only accept and consider CLAIMS on CIVIL PROCEEDINGS alleging INFRINGEMENT which CIVIL PROCEEDINGS are commenced no sooner than ninety (90) days after the beginning of the POLICY PERIOD, and thereafter during the POLICY PERIOD or, unless this Policy has been renewed or terminated, on CIVIL PROCEEDINGS alleging INFRINGEMENT which CIVIL PROCEEDINGS are commenced within ninety (90) days after the end of the POLICY PERIOD.

## CONDITIONS PRECEDENT

In reliance on the statements contained in the insurance application, which shall include any required FAVORABLE INFRINGEMENT OPINION and the Quotation/Acceptance Form executed by Named Insured, said application being attached hereto and made a part of this Policy, and in consideration of the payment of the premium specified on the Declarations Page hereof, the Company agrees with the Named Insured as follows:

I.          DEFINITIONS

A.          POLICY PERIOD shall mean the period from the Effective Date shown in Item 2 of the Declarations Page of this Policy to the expiration date shown in that Item or, if applicable, the Effective Date of cancellation of this Policy.

IN  000039

B.    **CIVIL PROCEEDING(S)** means any legal proceeding, suit, cause of action or alternative dispute resolution proceeding or the threat thereof, including but not limited to, cease and desist letter(s) and the like, directed to or brought against the Named Insured by one or more parties, where applicable, in a State Court, a Federal District Court or United States Appellate Court, or if an alternative dispute resolution, in a proper forum.

C.    **DAMAGES** means monetary sums arising out of COVERED LITIGATION paid by the Named Insured to a claimant pursuant to either judgments, or settlements negotiated with the written consent of the Company, whichever is applicable, as

    1.    lost past profits and/or past royalties, or

    2.    reasonable attorneys fees assessed by the Court against the Named Insured provided, however, that DAMAGES shall not include fines, penalties, including but not limited to punitive, exemplary or multiplied damages, non-pecuniary relief and taxes assessed against the Named Insured, or any amount for which the Named Insured is not financially liable or any amount as to which there is no legal recourse by the person who is awarded such relief against the Named Insured, and any such matters which are uninsurable under the law pursuant to which this policy shall be construed.

D.    **BODILY INJURY** or **PROPERTY DAMAGE** includes but is not limited to (1) Bodily injury, sickness, disease, occupational disease, death, shock, disability, mental anguish, mental injury, emotional upset, asbestosis, any trauma, suffered or alleged to be suffered by any person or entity; (2) Damage to tangible or intangible property; (3) Loss of, or loss of use of, tangible or intangible property; (4) Loss of, loss of use of, or interference with property rights; (5) All forms of radioactive contamination of property.

E.    **ASBESTOS** includes but is not limited to Asbestos, Asbestos Products, Asbestos Fibers, Asbestos Particles, Asbestos Dust, or any product or goods containing Asbestos in any form.

F.    **HANDLING, USE, MISUSE, or EXISTENCE** includes, but is not limited to, the manufacture, mining, use, sale, installation, distribution, removal, encapsulation, transportation, or presence of ASBESTOS. It includes the inspection for and exposure to ASBESTOS. It includes the failure to perform, or inadequate performance in said HANDLING, USE, MISUSE or EXISTENCE.

G.    **ASBESTOS LIABILITY** means any liability arising directly or indirectly from loss, injury or damage caused by the HANDLING, USE, MISUSE or EXISTENCE of ASBESTOS.

H.    **TRADE DRESS** means the appearance and image of a MANUFACTURED PRODUCT taken as a whole, including but not limited to the features of size, texture, shape, color or color combinations and graphics. TRADE DRESS does not include particular advertising or marketing techniques used to promote the product's sale.

I.    **TRADEMARK** shall mean a word, slogan, design or other symbol used to identify and distinguish goods or services which qualifies for legal status, under state or federal law, as a trademark, service mark, collective mark, certification mark or TRADE DRESS. Federally Registered Mark(s) is any Trademark which is registered on the Principal Trademark Register pursuant to 15 USC 1051(a) and which is identified by registration number on the Declarations Page. Federally Registered Marks shall also include any Trademark registered on the Supplemental Register pursuant to 15 USC 1091.

J.    **WORKS OF AUTHORSHIP** shall include the following:

    1.    (a) Literary Works;

           (b) Musical works, including any accompanying words;

           (c) Dramatic works, including any accompanying music;

           (d) Pantomimes and choreographic works;

    (DefPolicy2000–042501)

IN 000040

    (e)  Pictorial, graphic and sculptural works;
    (f)  Motion pictures and other audiovisual works;
    (g)  Sound recordings;
    (h)  Architectural works; and
    (i)  Computer programs

K.    COPYRIGHT shall mean the rights in original WORKS OF AUTHORSHIP fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device as conferred by 17 USCA 106 provided such WORKS OF AUTHORSHIP having been registered in the U.S. Copyright office under 17 USCA 408.

L.    MANUFACTURED PRODUCT(S) shall mean any WORK OF AUTHORSHIP, word, slogan, symbol, design, process, machine, article of manufacture or composition of matter specifically enumerated on the Declarations Page of this Policy manufactured in the United States or abroad during the POLICY PERIOD and used, sold or offered for sale in the United States during the POLICY PERIOD falling into the following categories:
    1.  NEW COVERED PRODUCTS
    2.  ESTABLISHED PRODUCTS
    3.  MATURE PRODUCTS

M.    NEW COVERED PRODUCTS means MANUFACTURED PRODUCTS which have been continuously offered for sale openly and notoriously in the relevant marketplace for less than two years and are the subject of a FAVORABLE INFRINGEMENT OPINION.

N.    ESTABLISHED PRODUCTS means MANUFACTURED PRODUCTS which have been continuously offered for sale openly and notoriously in the relevant marketplace for a period of between two years and four years and unless waived by endorsement are the subject of a FAVORABLE INFRINGEMENT OPINION.

O.    MATURE PRODUCTS means MANUFACTURED PRODUCTS which have been continuously offered for sale openly and notoriously in the relevant marketplace for more than four years.

P.    COVERED LITIGATION shall mean the defense of A CIVIL PROCEEDING or any part thereof brought during the POLICY PERIOD:
    1.    Which alleges INFRINGEMENT by the Named Insured, including INJUNCTION PROCEEDINGS, or
    2.    Which alleges INFRINGEMENT by the Named Insured's licensee, provided that such licensee is added as an Additional Insured by Endorsement to this policy, or;
    3.    Which alleges INFRINGEMENT to which the Named Insured is responding on behalf of its customer, pursuant to a manufacturer's warranty of non-infringement under Section 2.312(3) of the Uniform Commercial Code

provided that the allegations of INFRINGEMENT (i.e., PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT) correspond to an indicated coverage (i.e., PATENT, TRADEMARK, COPYRIGHT defense LITIGATION EXPENSE indemnification coverage) on the Declarations Page and the Company, in response to a CLAIM, has stated in writing to the Named Insured that LITIGATION EXPENSE arising from such CIVIL PROCEEDING will be reimbursed by this policy; except

COVERED LITIGATION does not include any CIVIL PROCEEDING brought as a counterclaim or retalitory suit in or to a legal proceeding, suit, cause of action or alternative dispute resolution proceeding brought by the Named Insured or a third party acting in concert with the Named Insured.

    (DefPolicy2000–042501)

IN 000041

Q.    PATENT shall mean any unexpired U.S. Patent included in COVERED LITIGATION.

R.    INFRINGEMENT means the unauthorized use, sale or offer for sale, by the Named Insured, within the United States of America, its territories or possessions during the POLICY PERIOD of any MANUFACTURED PRODUCT in violation of the enforceable and valid rights of another arising from the grant by the United States Patent & Trademark Office and/or the U.S. Registrar of Copyrights of any unexpired PATENT, TRADEMARK OR COPYRIGHT excluding rights arising under or enforceable by virtue of a Treaty with one or more foreign governments. INFRINGEMENT shall include in its meaning contributory infringement and inducement to infringe.

S.    INVALIDITY COUNTERCLAIM shall mean any legal action taken by the Named Insured in the course of and as part of COVERED LITIGATION which seeks invalidation of a COPYRIGHT, a TRADEMARK or one or more claims of a PATENT under which INFRINGEMENT is being asserted.

T.    RE-EXAMINATION PROCEEDING means a proceeding brought in the United States Patent and Trademark Office requesting re-examination of one or more claims of a PATENT under which claim(s), INFRINGEMENT is being asserted.

U.    INJUNCTION PROCEEDING(S) means any CIVIL PROCEEDING brought during the POLICY PERIOD alleging INFRINGEMENT against the Named Insured and thereby seeking to limit or cease Named Insured's specific activities with regard to MANUFACTURED PRODUCTS on the ground that the activities result in INFRINGEMENT, and which could result in a legally enforceable order against the Named Insured to limit or cease as aforesaid.

V.    CLAIM means a demand on the Company by the Named Insured on the Company's properly completed and executed "Infringement Defense Claim" form to have a CIVIL PROCEEDING alleging INFRINGEMENT or any part thereof deemed COVERED LITIGATION and for written acknowledgement that LITIGATION EXPENSE and DAMAGES (if designated on the Declarations Page) resulting from the COVERED LITIGATION will be reimbursed under this Policy. CLAIM does not refer to the actual CIVIL PROCEEDING brought against the Named Insured. COVERED LITIGATION arising out of the same act or a duplication of an act or out of a series of interrelated acts shall be considered as giving rise to a single CLAIM covered by a single policy irrespective of the number of CIVIL PROCEEDING(S), Plaintiffs, Defendants, or the number of PATENTS, TRADEMARKS or COPYRIGHTS or the year or policy under which the CLAIM is made.

W.    FAVORABLE INFRINGEMENT OPINION means an opinion by the Insured's selected patent attorney opining that there is no INFRINGEMENT of any unexpired U.S. PATENT, TRADEMARK or COPYRIGHT vis-à-vis a MANUFACTURED PRODUCT based upon a search thereof in the United States Patent & Trademark Office which opinion has been accepted by the Company applying reasonable standards.

X.    DEFENSE EXPENSES shall mean sums of money which the Named Insured shall have incurred as reasonable and customary attorney's fees, costs, and disbursements, including, but not limited to, court costs, costs of depositions, transcripts, fees and expenses of expert witnesses, but only to the extent that those costs arise out of COVERED LITIGATION. DEFENSE EXPENSES includes the

IN 000042

actual costs and expenses incurred in asserting any INVALIDITY COUNTERCLAIM or initiating any RE-EXAMINATION PROCEEDING which is a direct consequence of COVERED LITIGATION. DEFENSE EXPENSES shall further include:

1. Expenses incurred by the Company in any COVERED LITIGATION defended by the Company;

2. Costs levied against the Named Insured in any such COVERED LITIGATION defended by the Company;

3. Premiums on appeal bonds and bonds to release attachments, to the extent that the face amount of such bonds do not exceed the Company's then remaining applicable limit of indemnity and are required in any COVERED LITIGATION defended by the Company, provided however, neither this provision nor any other in this policy shall be construed as requiring the Company to commence or prosecute any appeal or to apply for or furnish such bonds.

Not included in DEFENSE EXPENSES are loss of earnings, expenses and costs incurred by the Named Insured for salaries and expenses of its officers, staff, in-house attorneys, directors, employees and outside attorneys or consultants functioning in the capacity of any of the foregoing.

All DEFENSE EXPENSES shall consume and not be in addition to the limits set forth in Item 4 of the Declarations Page.

Y.    INJUNCTION EXPENSE(S) means:

reasonable expenses including but not limited to, court costs, costs of depositions, transcripts, fees and expenses of expert witnesses incurred by the Named Insured in defense, including appeals, arising out of an INJUNCTION PROCEEDING(S), but only if such INJUNCTION PROCEEDING is brought during the POLICY PERIOD and solely in respect to the regular, ordinary and usual course of the business of the Named Insured as that business existed on the first date of the POLICY PERIOD and as described in the application attached hereto and made a part hereof.

INJUNCTION EXPENSES shall further include:

1. Expenses incurred by the Company in any INJUNCTION PROCEEDING defended by the Company;

2. Costs levied against the Named Insured in any such INJUNCTION PROCEEDING defended by the Company;

3. Premiums on appeal bonds and bonds to release attachments, to the extent that the face amount of such bonds do not exceed the Company's then remaining applicable limit of indemnity and are required in any INJUNCTION PROCEEDING defended by the Company, provided however, neither this provision nor any other in this policy shall be construed as requiring the Company to commence or prosecute any appeal or to apply for or furnish such bonds.

Not included in INJUNCTION EXPENSES are loss of earnings, expenses and costs incurred by the Named Insured for salaries and expenses of its officers, staff, in-house attorneys, directors, employees and outside attorneys or consultants functioning in the capacity of any of the foregoing.

All INJUNCTION EXPENSES shall consume and not be in addition to the limits set forth in Item 4 of the Declarations Page.

Z.    LITIGATION EXPENSES (INCLUDED IN THE LIMITS OF LIABILITY) shall mean:

1.    DEFENSE EXPENSES

2.    INJUNCTION EXPENSES

-5-    (DefPolicy2000–042501)

IN 000043

AA.    RECOVERED COSTS shall mean any monies received by the Named Insured by way of penalty, indemnification (other than by this policy), or punitive award, or the like, arising in connection with a COVERED LITIGATION.

## II.   INSURING AGREEMENTS

### A.   Insurance Coverage

Subject to the Self Insured Retention, Coinsurance Copayment Percentage and Limits of Liability stated on the Declarations Page for each of the PATENT, COPYRIGHT or TRADEMARK coverages indicated on the Declarations Page, the Company shall reimburse the Named Insured only for LITIGATION EXPENSE and DAMAGES (if DAMAGES are designated on the Declarations Page) for which the Named Insured is liable and has paid to a third party arising out of COVERED LITIGATION, even if such COVERED LITIGATION is groundless, false or fraudulent. All reimbursement of LITIGATION EXPENSE and DAMAGES (if DAMAGES are designated on the Declarations Page) payable under this Policy shall be subject to all the terms, conditions, limitations, and exclusions stated herein. Reimbursements payable under this Policy will be made at periodic intervals, mutually agreeable to the Company and the Named Insured, based upon receipts for LITIGATION EXPENSES paid by Named Insured and submitted to the Company during each period.

### B.   Territory

The insurance provided under this Policy applies to COVERED LITIGATION that is brought in the United States of America, its territories or possessions.

### C.   Limits of Liability

1.   Subject to the Coinsurance Percentage shown on the Declarations Page, the Limits of Liability shown on the Declarations Page is the most that the Company shall pay for reimbursement or indemnification of all LITIGATION EXPENSES and DAMAGES (if DAMAGES are designated on the Declarations Page) for:

a: any single CLAIM; or

b: all CLAIMS in the aggregate made during the POLICY PERIOD.

2.   The inclusion herein of more than one Named Insured or the making of more than one CLAIM or the bringing of CIVIL PROCEEDING(S) by more than one person or organization shall not operate to increase the Company's limit of liability. Two or more CLAIMS arising out of allegations of INFRINGEMENT or any series of related INFRINGEMENTS will be considered a single CLAIM. These provisions apply regardless of the number of Named Insureds, patents, MANUFACTURED PRODUCTS, plaintiffs, defendants, or organizations that are involved in such CIVIL PROCEEDINGS.

3.   The Company will not be obligated to continue to reimburse the Named Insured under this Policy after the applicable limit of the Company's liability has been exhausted by reimbursement of LITIGATION EXPENSES and/or DAMAGES (if DAMAGES are designated on the Declarations Page).

### D.   Coinsurance

The Named Insured shall be obligated to pay the percentage of coinsurance stated in Item 4 of the Declarations for all LITIGATION EXPENSE , including DEFENSE EXPENSE for INVALIDITY COUNTERCLAIM and RE-EXAMINATION PROCEEDINGS, up to the Limits of Liability shown in the Declarations.

(DefPolicy2000–042501)

IN 000044

E.    **The Named Insured**
The unqualified words "Named Insured" whenever used in this Policy means:

1.    The individual, partnership, joint venture or corporation designated in Item 1. of the Declarations Page including any partner, member, executive officer, director of such designated entity solely while acting within the scope of their duties as such but only with respect to MANUFACTURED PRODUCT(S) or;

2.    Any legal representative or trustee of a Named Insured listed in Item 1 above in the event of the Named Insured's incompetency, insolvency or bankruptcy.

3.    Named Insured shall include in its meaning Additional Insured(s) which is any third party which an individual, partnership, joint venture or corporation designated in Item 1 of the Declarations Page has undertaken in writing, to indemnify for LITIGATION EXPENSES and/or DAMAGES arising out of PATENT, TRADEMARK or COPYRIGHT infringement proceedings where such Third Party: 1) is licensed under one or more of Named Insured's patents, TRADEMARKS and/or COPYRIGHTS covering MANUFACTURED PRODUCT(S); and 2) such Third Party has manufactured, used, sold or offered for sale such MANUFACTURED PRODUCT(S) during the POLICY PERIOD, provided such Third Party and license were disclosed to the Company in the application for insurance under this Policy and such Third party is added to this policy as an Additional Insured by Endorsement; or,

where such Third Party is a Bonafide Purchaser of MANUFACTURED PRODUCTS where such purchase is governed by the Uniform Commercial Code Section 2.312(3), provided such Bonafide Purchaser is added as an Additional Insured by Endorsement to this Policy.

4.    No person or entity is a Named Insured under this Policy with respect to the conduct of any current or past partnership or joint venture that is not named in Item 1. of the Declarations Page of this Policy.

## III.    EXCLUSIONS

A.    Coverage under this policy does not include reimbursement of:

1.    Any loss, costs or expenses arising from any liability of the Named Insured for fines, or penalties, including but not limited to punitive, exemplary, treble, or multiple damages of any kind.

2.    Any loss, costs or expenses arising from BODILY INJURY or PROPERTY DAMAGE.

3.    Any loss, costs or expenses arising from any litigation or CIVIL PROCEEDING other than COVERED LITIGATION.

4.    Any loss, costs, expenses or professional fees arising from or incurred by the Named Insured prior to the commencement of the COVERED LITIGATION.

5.    Any LITIGATION EXPENSE or DAMAGES arising out of a CIVIL PROCEEDING where such CIVIL PROCEEDING was commenced, served or delivered prior to the beginning of the POLICY PERIOD whether or not the pleadings of such CIVIL

(DefPolicy2000–042501)

IN 000045

PROCEEDING are amended subsequent to the beginning of the POLICY PERIOD to allege INFRINGEMENT.

6.  Any loss, costs or expenses arising from or incurred by the Named Insured for salaries, expenses and/or fees of its officers, staff, in-house attorneys, directors, and employees and outside attorneys or consultants functioning in the capacity of any of the foregoing.

7.  Any loss, costs or expenses arising from any liability arising from any criminal act or omission of Named Insured.

8.  Any loss, costs or expenses arising from willful INFRINGEMENT.

9.  Any loss, costs or expenses arising from a CIVIL PROCEEDING alleging INFRINGEMENT where Named Insured has knowledge prior to the Effective Date of this Policy of any patents, trademarks, or applications for patents or trademarks or copyrights which are or could be the basis for the allegation of INFRINGEMENT other than those disclosed to the Company and discussed or noted in a FAVORABLE INFRINGEMENT OPINION, or where the Named Insured knew or reasonably should have known that its manufacture, use, sale or offer for sale of a MANUFACTURED PRODUCT would result in it being charged with INFRINGEMENT.

10.  Any loss, costs or expenses incurred in or arising out of the defense of any allegations of anti-trust or anti-competitive conduct or unfair trade practices.

11.  Any loss, costs or expenses arising from any Declaratory Actions of any nature whether Named Insured is Plaintiff or Defendant.

12.  Any loss, costs or expenses arising from any Administrative Proceeding of any nature including but not limited to International Trade Commission Proceedings, except RE-EXAMINATION PROCEEDINGS.

13.  Any loss, costs or expenses arising out of allegations of INFRINGEMENT of a MANUFACTURED PRODUCT which is the same as or substantially similar to a WORK OF AUTHORSHIP, word, slogan, symbol, design, process, machine, article of manufacture or composition of matter specified on the Declarations page of this policy produced within the three years preceding the Effective Date of this Policy by any former employer of the Named Insured.

14.  Any loss, costs or expenses arising from any adjudicatory proceeding or part thereof by or against a Named Insured other than COVERED LITIGATION.

15.  LITIGATION EXPENSES or DAMAGES arising from any COVERED LITIGATION in which the Named Insured or any parent, subsidiary or affiliate of a Named Insured or any officer, director or holder of more than five percent (5%) of the stock of any of the foregoing has any direct or indirect interest in any recoveries, injunctions or the like arising from such COVERED LITIGATION.

16.  Any loss, costs or expenses based upon or arising out of any circumstances or activities likely to give rise to a CLAIM of which a Named Insured has knowledge at a time prior to the Effective Date of this Policy. This exclusion includes, but is not limited to, any prior CIVIL PROCEEDING or possible CIVIL PROCEEDING or circumstance referenced in the Named Insured's Application for this Policy. If, on the Effective Date of this Policy, Named Insured had/has any knowledge of any event or circumstance which he knows or could reasonably believe may result in a CIVIL PROCEEDING alleging

(DefPolicy2000–042501)

IN 000046

INFRINGEMENT, any loss, costs and expenses incurred in such CIVIL PROCEEDING will not be reimbursed by this Policy irrespective of when such CIVIL PROCEEDING is actually initiated.

17.   Any loss, costs or expenses including but not limited to LITIGATION EXPENSES or DAMAGES arising from any CIVIL PROCEEDING alleging INFRINGEMENT by virtue of Named Insured's breach or termination of any contract, license or agreement or suspension of performance thereunder.

18.   Any loss, costs or expenses arising from any CLAIM made by any Named Insured under this Policy against any other Named Insured under this Policy.

19.   Any loss, cost or expenses based upon or arising out of discrimination by the Named Insured on the basis of race, creed, national origin, disability, age or sex, or sexual preference.

20.   LITIGATION EXPENSES and DAMAGES arising from MANUFACTURED PRODUCTS which have not yet been sold or on sale or which have been sold or on sale for less than four years except for NEW COVERED PRODUCTS and ESTABLISHED PRODUCTS.

21.   Any loss, cost or expenses based upon or arising out of the actual or threatened, discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, pollutants or contaminants into or upon the land, the atmosphere or any course or body of water, whether below or above ground. The intent and effect of this exclusion is to delete from any and all coverage afforded by this Policy any claim, judgment, liability, settlement, defense or expenses (including any loss, cost or expense arising out of any government cost, or expense arising out of any governmental direction or request that the Named Insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants) in any way arising out of such actual or threatened discharge, dispersal, release or escape, whether such results from the Insured's activities or the activities of others, and whether or not such is sudden or gradual, and whether or not such is accidental, intended, foreseeable, expected, fortuitous or inevitable, and wherever such occurs.

22.   Any loss, cost or expenses arising out of BODILY INJURY or PROPERTY DAMAGE as it relates to Nuclear Energy:

   a.   With respect to which a Named Insured is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be a Named Insured under any such policy but for its termination upon exhaustion of its limit of liability; or resulting from the "hazardous properties" of "nuclear material" and with respect to which (i) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the Named Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

   b.   resulting from the "hazardous properties" of "nuclear material" if:

-9-                    (DefPolicy2000–042501)

IN 000047

(i) the "nuclear material" (a) is at any "nuclear facility" owned by the Named Insured or operated by the Named Insured or on the Named Insured's behalf, or (b) has been discharged or dispersed therefrom;

(ii) the "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by the Named Insured or on the Named Insured's behalf; or

(iii) the BODILY INJURY or PROPERTY DAMAGE arises out of the furnishing by a Named Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (iii) applies only to PROPERTY DAMAGE to such "nuclear facility" and any property thereat.

c.    as used in this exclusion:

"hazardous properties" includes radioactive, toxic or explosive properties;

"nuclear material" means source material, special "nuclear material" or by-product material;

"source material", special "nuclear material" and by-"product material" have the meanings given them by the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"waste" means any waste material (i) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (ii) resulting from the operation by any person or organization and of a "nuclear facility" included under the first two paragraphs within the definition of "nuclear facility" below;

"nuclear facility" means:

i.    any "nuclear reactor";

ii.    any equipment or device designed or used for (a) separating isotopes of uranium or plutonium, (b) processing or utilizing "spent fuel", or (c) handling, processing or packaging "wastes."

iii.    any equipment or device used for the processing, fabricating, or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the Named Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

iv.    any structure, basin, excavation, premises or place prepared or used for storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

(DefPolicy2000-042501)

IN 000048

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

B.    ASBESTOS Exclusion:

1.    This insurance does not apply to ASBESTOS LIABILITY. This Policy does not cover any obligation on Named Insured's part to indemnify any party for ASBESTOS LIABILITY; nor, to any ASBESTOS LIABILITY assumed under contract.

2.    Any obligation or duty on Company's part to investigate or indemnify CLAIMS or suits, does not apply to any loss, claim or suit directly or indirectly resulting from, caused by or alleged to be caused by, ASBESTOS or ASBESTOS LIA-BILITY.

## IV.    CONDITIONS

A.    Company's Authorization of a CIVIL PROCEEDING to establish COVERED LITIGATION    –

1.    As a condition precedent to the Company's review of the Named Insured's CLAIM, the Named Insured shall:

a.    Submit to the Company in writing a properly completed and executed "Infringement Defense Claim" form provided by the Company. The CLAIM shall include the PATENTS, TRADEMARKS or COPYRIGHTS involved, a brief statement of the nature of the action brought against the Named Insured and the expected result; an explanation of how and when the alleged INFRINGING acts occurred and when the possibility of being involved in a CIVIL PROCEEDING was first discovered by the Named Insured; and a projection quantifying the negative impact to the Named Insured if the action for INFRINGEMENT is successful.

b.    Supply to the Company, no later than sixty (60) days from the date of the initial request for authorization, or any extension of time granted by the Company, the following:

i.    A current letter written to the standards of the profession, signed by independent, outside counsel chosen from a list of firms, such list of firms provided by the Company, who will not be selected as litigation counsel, setting forth the relevant claim or claims of the PATENT/TRADEMARK or COPYRIGHT alleged to be INFRINGED and rendering an opinion of noninfringement favorable to the Named Insured concerning the validity of the PATENT/TRADEMARK or COPYRIGHT and/or INFRINGEMENT thereof, i.e. stating either there is no INFRINGEMENT or the PATENT/TRADEMARK or COPYRIGHT is invalid;

ii.    A description of the Named Insured's MANUFACTURED PROD-UCT(S), and the TRADEMARK, COPYRIGHT or in the case of a PATENT the claims which are alleged to be INFRINGED and whether the INFRINGEMENT is in the manufacture, sale, offer for sale, or use

IN 000049

of the MANUFACTURED PRODUCT(S) or which, if any, combination thereof;

iii.    Identification of the Plaintiff, together with all information Named Insured may have concerning such Plaintiff including a credit report, if available;

iv.    Identification of the Federal District court(s) having jurisdiction over the CIVIL PROCEEDING;

v.    The Named Insured's preference for litigation counsel, provided that such counsel must be admitted to practice and a member in good standing in at least one state or Federal judicial district. The Company, however, reserves the right to approve counsel.

vi.    A budget projection for LITIGATION EXPENSE, including, but not limited to, proposed attorney's fee arrangements, and estimated costs and expenses for expert witnesses, collection of evidence and items of proof, depositions, interrogatories, and discovery. The Company, however, reserves the right to approve the budget.

vii.    A statement of any other relevant facts and circumstances relating to each PATENT, TRADEMARK, COPYRIGHT or CIVIL or INJUNCTIVE PROCEEDING;

viii.    A photostatic copy of the complete prosecution file maintained by the U.S. Patent Office and any summary or brief history of such file prepared by or on behalf of the Insured relating to each PATENT or TRADEMARK if applicable.

2.    The Company will only accept and consider CLAIMS on CIVIL PROCEEDINGS alleging INFRINGEMENT commenced no sooner than ninety (90) days after the beginning of the POLICY PERIOD, and thereafter during the POLICY PERIOD or, unless this Policy has been renewed or terminated, on CIVIL PROCEEDINGS alleging INFRINGEMENT commenced within ninety (90) days after the end of the POLICY PERIOD.

3.    The Company shall promptly acknowledge receipt of all material submitted under Paragraph A.1. of this Article IV. The Company will, except as set forth in Paragraph A.4. below, as soon as practicable, after receipt of all material required under Paragraph A.1. of this Article IV, authorize the CIVIL or INJUNCTIVE PROCEEDING in whole or in part in writing to the Named Insured whereupon such authorized whole or part shall become COVERED LITIGATION. The Company's approval must be obtained in writing concerning the selection of litigation counsel and the budget for LITIGATION EXPENSE.

4.    The Company may deny authorization of a CLAIM only under the following circumstances:

a.    Fraud or material misrepresentation by the Named Insured.

b.    Inability of the Named Insured to supply a an opinion of noninfringement from the independent outside counsel concerning validity and/or INFRINGEMENT as required in IV.A.1.b.i. above.

c.    Disapproval by the Company of the litigation counsel, or the budget for LITIGATION EXPENSE. In the event of such disapproval, the choice of counsel and/or the budget, may be submitted to arbitration as provided in IV.E. below. The decision of the arbitrator as to appropriateness of counsel and/or reasonableness of the budget shall be binding on both parties.

d.    The CLAIM is not covered by the terms and conditions of this Policy.

(DefPolicy2000–042501)

IN 000050

5. The Insured must notify the party(s) bringing the COVERED LITIGATION within sixty (60) days after authorization of a CLAIM that the MANUFACTURED PRODUCTS being charged with INFRINGEMENT are Insured under a PATENT, TRADEMARK and COPYRIGHT Infringement Defense Cost Reimbursement Insurance Policy.

6. The Company reserves the right to investigate the facts and circumstances surrounding Named Insured's CLAIM prior to and after authorization has been given by the Company. If authorization of a CLAIM has been given, the Company reserves the right to investigate the facts and circumstances surrounding Named Insured's CLAIM, should the need arise, but only with the knowledge of the Named Insured and his litigation counsel.

## B. COMPANY'S RIGHT TO ASSUME NAMED INSURED'S DEFENSE

1. The Company shall have the right but not the duty to assume the defense of any COVERED LITIGATION against the Named Insured and, in such event, the Named Insured shall provide the Company with full cooperation and such information as the Company shall reasonably require. In the event the Company does not assume the defense of the Named Insured, the Company shall, nevertheless, have the right to effectively associate with the Named Insured in the defense and settlement of any Claim that appears reasonably likely to involve the Company, including, but not limited to, exercising the right to effectively and meaningfully associate in the negotiation of a settlement and having its attorney made of record in the COVERED LITIGATION.

2. The Company shall have no obligation to reimburse the Named Insured for LITIGATION EXPENSES or to continue the defense (if the Company has assumed the defense) of the Named Insured after the then remaining applicable limit of indemnity in Item 4 of the Declarations Page has been exhausted.

3. The Named Insured shall not admit liability for or settle any COVERED LITIGATION, stipulate to any judgment without the Company's prior written consent, which consent shall not be unreasonably withheld.

4. If the Named Insured refuses or fails, within 30 days of mailing or delivering by the Company to the Named Insured of a written recommendation from the Company, to consent to any settlement of COVERED LITIGATION recommended by the Company and acceptable to the claimant, then:

   a. The Company may withdraw from the defense of the Named Insured (if it has assumed the defense) by tendering control of the defense to the Named Insured, and the Named Insured shall thereafter, at its own expense, negotiate or defend such COVERED LITIGATION independently of the Company; and

   b. The Company's liability shall not exceed the smaller of (i) the then remaining applicable limit of indemnity, or (ii) the amount for which the CLAIM could have been settled if such recommendation had been consented to, plus LITIGATION EXPENSES incurred by the Company, and LITIGATION EXPENSES incurred by the Named Insured prior to the date of such refusal.

C. **False and Fraudulent Claims**
If the Named Insured shall submit any CLAIM knowing the same to be false or fraudulent, this Policy shall become void and all insurance hereunder shall be forfeited.

D. **Cooperation of Named Insured**

-13-                    (DefPolicy2000–042501)

IN 000051

Throughout the course of any COVERED LITIGATION, the Named Insured shall fully cooperate with the Company in providing full information concerning the conduct of COVERED LITIGATION, including the selection and briefing of counsel, choice of forum, if any, the general and specific conduct of COVERED LITIGATION, and any in or out of court settlement negotiations. Named Insured shall cooperate with Company in providing other documents and material as Company may request from time to time.

E.        **Arbitration**

1.      Any dispute between the Named Insured and the Company arising out of this Policy shall be promptly referred to arbitration for final determination.

2.      Matters referred to arbitration under this policy shall be heard by a single arbitrator which shall be selected by the Company and the Named Insured from the American Arbitration Association's list of approved arbitrators in accordance with their selection procedures. In the event the Company and the Named Insured are unable to agree upon an arbitrator, the arbitrator will be selected by the Federal District Court having jurisdiction to hear CIVIL PROCEEDINGS alleging INFRINGEMENT. For any dispute arising out of Article IV, Part A, the arbitrator shall be admitted to practice before the US Patent & Trademark Office. The arbitrator shall apply the Federal Rules of Evidence which Rules may be modified by agreement of the parties. The proceedings shall be informal.

3.      The decision, in writing, of the arbitrator, when filed with the parties, shall be final and binding on both parties. Judgment upon the arbitration award may be entered in any court having jurisdiction. However, the arbitrator may not make binding decisions concerning the validity of a PATENT, TRADEMARK or COPYRIGHT, or the INFRINGEMENT thereof.

4.      The cost of Arbitration shall be shared equally between the Named Insured and the Company.

F.        **Recovery of Costs**

In the event that any COVERED LITIGATION results in the Named Insured receiving:

1.      RECOVERED COSTS, such recovery shall be shared between the Company and the Named Insured pro rata in proportion to their respective contributions to LITIGATION EXPENSE; and/or

2.      an award, if any, of court costs and/or attorneys' fees, the same shall be shared between the Company and the Named Insured pro rata in proportion to their respective contributions to LITIGATION EXPENSE; provided that, in no event shall the Company be entitled to recover, under the above Provision 1 and this Provision 2 combined, a sum greater than the total of all its payments in respect to the COVERED LITIGATION.

G.        **Subrogation**

In the event of any payment under this Policy, the Company shall be subrogated to all the Named Insured's rights of recovery therefor against any person or organization, and the Named Insured shall execute and deliver all instruments and papers and do whatever else is necessary to secure such rights for the Company. The Named Insured shall do nothing to prejudice such rights either before or after a CLAIM. Any amount recovered in excess of the Company's total payment shall be restored to the Named Insured, less the cost to the Company of recovery.

H.        **Termination of Coverage**

1.      Cancellation by Named Insured:

This Policy may be cancelled at any time by Named Insured upon prior written notice to the Company stating the effective date of cancellation and return of the Policy to the Company.

      (DefPolicy2000-042501)

IN 000052

2.   Cancellation by the Company
This Policy may be cancelled by the Company at any time by the giving of not less than thirty (30) days' written notice to the Named Insured at the last known address; provided, however, that not less than ten (10) days' written notice shall be given for non-payment of premium.

3.   Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

4.   If the Company cancels, earned premium shall be computed pro rata. If the Named Insured cancels, earned premium shall be computed in accordance with customary short rate table and procedures.

5.   In the event that this Policy is cancelled in accordance with any of the foregoing provisions of this Section, such cancellation shall not terminate the Company's obligation to continue to reimburse the Named Insured for LITIGATION EXPENSE and DAMAGES (if included on the Declarations Page) incurred in respect of any COVERED LITIGATION which is proceeding under the Policy at the time of cancellation; moreover, such cancellation shall not affect the Company's right to Recovery of costs, as provided in Section IV.F.

I.   Minimum Earned Premium
1.   The minimum earned premium for this policy is twenty percent (20%) of the premium stated in Item 3 of the Declarations and is not subject to short rate or pro rata adjustment in the event of cancellation by the Named Insured. In the case of multiple year policies, the minimum earned premium is twenty percent (20%) of the first year's premium.
2.   Cancellation for nonpayment of premium after the effective date of this policy shall be deemed a request by the Named Insured for cancellation of this policy, thereby activating the foregoing minimum earned premium provision.

J.   Transfer or Assignment
This Policy may not be transferred, sold, or assigned by the Named Insured. The Company may transfer, sell or assign this Policy only with the sale of substantially all of its assets.

K.   Excess Insurance
1.   The insurance provided under this Policy shall apply only as excess insurance over any other valid and collectible insurance available to the Named Insured unless such other insurance specifically applies as excess insurance over the Limits of Liability provided herein.
2.   In the event any other Insurer, including but not limited to, any Professional Liability Insurer or any General Liability Insurer, denies coverage or indemnification as the case may be for any reason whatsoever for an INFRINGEMENT which may be covered under a policy issued by such Insurer and also covered hereunder, written notice shall immediately be given by or on behalf of the Named Insured to the Company. Such notice shall contain the reason for such denial as stated by such other Insurer. As a condition precedent to making a CLAIM under this Policy, the Named Insured, upon the Company's request, shall initiate legal proceedings against said other Insurer to determine by final judgment the legality of its position. If such legal proceedings described above are unsuccessful, expense incurred by the Named Insured with the prior approval of the Company shall be considered LITIGATION EXPENSE.

(DefPolicy2000–042501)

IN 000053

L.    **Excess Indemnity**
The insurance provided under this policy shall also apply only as excess indemnification over any other indemnification available to the Named Insured from whatever source. In the event any Indemnitor denies any indemnification for any reason whatsoever for an INFRINGEMENT which may be covered under an indemnification provision of an agreement between itself and Named Insured and also covered hereunder, written notice shall immediately be given by or on behalf of the Named Insured to the Company. Such notice shall contain the reason of such denial as stated by the Indemnitor. As a condition precedent to making a CLAIM under this policy, the Named Insured, upon the Company's request, shall initiate legal proceedings against the said Indemnitor to determine by final judgment the legality of its position. If such legal proceedings described above are unsuccessful, expense incurred by the Named Insured with prior approval of the Company shall be considered LITIGATION EXPENSE.

M.    **Conformity to Statute**
In the event that any terms of this Policy are found to be in conflict with any terms mandated by the statutes of the jurisdiction in which this Policy is issued, such terms shall be deemed to be re-formed to conform with those mandatory statutes. The provisions of this Policy are severable, and the voiding of any provision by operation of law shall not void the entire Policy, but only such provision or provisions.

N.    **Extended Reporting Period**

1.    If the Company cancels this Policy for any reason other than for non-payment of premium or refuses to renew it, the Named Insured shall have the right to one Extended Reporting Period for CIVIL PROCEEDINGS alleging INFRINGEMENT commenced during the POLICY PERIOD such Extended Reporting Period being for any INFRINGEMENT on or after the Effective Date stated in the Declarations Page of this Policy and before the end of the POLICY PERIOD which is and otherwise would be covered by this Policy.

2.    If the Named Insured makes a written request to the Company and pays the additional premium for an Extended Reporting Period Endorsement within thirty (30) days after the end of the POLICY PERIOD, the Extended Reporting Period will be twelve (12) months from the Effective Date of cancellation or non-renewal of this Policy. The additional premium shall be 125% of the last whole annual premium for this Policy, and shall be fully earned upon the Effective Date of the Endorsement. The Extended Reporting Period Endorsement shall not be cancelled.

3.    The Limits of Liability that remain at the end of the POLICY PERIOD after reimbursement of all LITIGATION EXPENSE during the POLICY PERIOD are not reinstated, renewed or increased for CLAIMS first made or brought during the Extended Reporting Period. Any CLAIM first made or brought during the Extended Reporting Period will be deemed to have been first made on the last day of the POLICY PERIOD.

IN WITNESS WHEREOF, the Company has caused this Policy and the forms and endorsements attached thereto to be executed according to law.

_Thresa M. Morgan_
_____
Secretary

_Nichols M. Brown, Jr._
_____
President

-16-                    (DefPolicy2000–042501)

IN 000054