THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COUPONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ELLEN A. EFROS, ESQ.; RONALD P. KANANEN, ESQ.; RADER, FISHMAN & GRAUER, PLLC; and DOES 1-20, <br><br> Defendants. | Case No. 1:06-CV-00142 HHK <br><br> **ORAL ARGUMENT REQUESTED** |

### INDIAN HARBOR INSURANCE COMPANY'S CONSOLIDATED REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO INTERVENE

## I. INTRODUCTION

Plaintiff, Coupons, Inc. ("Coupons") and Defendants (collectively, "Rader, Fishman") seek to deny Indian Harbor Insurance Company ("Indian Harbor") its right to protect its interests by intervening in this case, solely because there is an ongoing arbitration between Indian Harbor and one of the parties to this action. However, intervention is warranted in this case because Indian Harbor has interests in the claims asserted here that can only protected by participation in this litigation. The facts and legal issues to be resolved in both the arbitration and the litigation arise from the same underlying litigation. Indian Harbor has an interest not only in obtaining discovery relating to Rader, Fishman's conduct and Coupons' actual and imputed knowledge that it cannot obtain elsewhere, but also in exploring its own claims for malpractice or other similar claims against Rader, Fishman based on Rader, Fishman's legal opinion and representations issued in seeking insurance coverage for Coupons. If this litigation proceeds without Indian Harbor's participation, Indian Harbor would lose its right to valuable discovery which could resolve issues in the pending arbitration and would be prejudiced by any precedent set in Coupons' malpractice action against Rader, Fishman. Litigation of the claims against

Rader, Fishman would also create the risk of inconsistent results in future litigation and waste judicial resources by forcing Indian Harbor to assert its interests against Rader, Fishman in subsequent litigation.  In addition, based on the differing positions of all parties involved, and the fact that there are multiple actions proceeding simultaneously, neither Coupons nor Rader, Fishman could adequately represent Indian Harbor's interests.  Accordingly, Indian Harbor's motion to intervene must be granted.

## II. ARGUMENT

### A. Indian Harbor Should Be Permitted to Intervene as of Right

#### 1. Indian Harbor Has a Legally Protected Interest in This Action

Rader, Fishman's and Coupons' narrow challenge to Indian Harbor's motion to intervene rests on the untenable position that Indian Harbor has no "legally protected interest" in the alleged malpractice claims against Rader, Fishman.  A simple review of the facts involved in this lawsuit makes it clear that Indian Harbor easily meets the Article III standing requirements under Rule 24(a)(2) and therefore has a "legally protected interest."  *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) ("[o]ur conclusion that the NRD has constitutional standing is alone sufficient to establish that NRD has an 'interest'…"); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998) ("Rule 24(a) impliedly refers not to *any* interest the applicant can put forward, but only a legally protectable one…Thus, a party that seeks to intervene as of right must demonstrate that it has standing to participate in the action.").

The United States Court of Appeals for the D.C. Circuit has clearly established that an intervenor need only prove it has Article III standing -- it is not required to assert a cause of action as long as it can exhibit an "interest."  *Jones v. Prince George's County*, 348 F.3d 1014, 1017-18 (D.C. Cir. 2003) (finding standing even though there was no cause of action).  As the court in *Jones* (*id.*) stated:

> In a motion to intervene, the question is not whether the applicable law assigns the prospective intervenor a cause of action. Rather, the question is whether the individual may intervene in an already pending cause of action….As the Rule's plain text indicates, intervenors of right need only an 'interest' in the litigation--not a 'cause of action' or 'permission to sue.'…The Supreme Court concluded that the lack of a cause of action does not, in itself, bar a party from intervening.

Furthermore, the D.C. Circuit has recognized that the definition of "interest" in Rule 24(a)(2) is ambiguous and that attempts to narrow the definition have been rejected. *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967). Rather, the "interest" test has been characterized as "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process..." *Id.*; *Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 105 F.R.D. 106, 110 (D.D.C. 1985) ("whether or not a party should be allowed to intervene as of right should be guided not by a 'myopic fixation upon interest,' but by the policies behind the interest requirement."). Accordingly, the "'true inquiry' is not whether a lawsuit should be begun, but whether already initiated litigation should be extended to include additional parties." *Indep. Petrochemical Corp.*, 105 F.R.D. at 110 (quoting *Smuck v. Hobson*, 408 F.2d 175, 179 (D.C. Cir. 1969)).

As Rader, Fishman indicates, to establish standing, the intervenor must show injury-in-fact, causation and redressability. (Rader, Fishman Opp'n at 7). The injury-in-fact for standing is defined as "concrete and actual or imminent, not conjectural or hypothetical." *Envtl. Defense v. Leavitt*, 329 F. Supp. 2d 55, 66 (D.D.C. 2004) (citing *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 243 (D.C. Cir. 1999)). Indian Harbor can demonstrate at least two concrete injuries which its participation in this action would redress.

          *a)*      <u>*Indian Harbor has an "interest" in conducting discovery*</u>

Indian Harbor has an "interest" in participating in discovery in this action that might implicate substantial portions, if not the entirety, of the pending dispute between Coupons and

Indian Harbor. Coupons and Rader, Fishman contend that intervention for discovery purposes is not a sufficient "interest" or "injury" to permit intervention under Rule 24(a). (Rader, Fishman Opp'n at 8; Coupons Opp'n at 10). There is no authority in this Circuit holding that discovery is not a valid purpose for intervention. Rather, the Court of Appeals for the D.C. Circuit has recognized that under certain circumstances, intervention can be used for discovery purposes. In *United States v. Am. Telephone & Telegraph Co.,* 642 F.2d 1285 (D.C. Cir. 1980), MCI was permitted to intervene to assert the work product privilege in order to protect a database from being produced in discovery to AT&T. *Id.* at 1290-1291. The work product privilege was considered a "legal interest" because, although it was a collateral issue to the main action, it could be directly lost through the operation of a discovery order. *Id.* at 1292; s*ee also United States v. British Am. Tobacco Australian Svcs.*, 437 F.3d 1235, 1237 (D.C. Cir. 2006) (allowing intervention to assert privileges); *Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 21, 30 (D.D.C. 1998) ("this rule has been interpreted to permit intervention in discovery disputes by parties…"). In fact, intervention has been permitted for the limited purpose of fact gathering. In *Oil, Chemical and Atomic Works Int'l Union v. NLRB*, 806 F.2d 269 (D.C. Cir. 1986), employees that were on strike were granted the right to intervene in a lawsuit brought by the Union for the limited purpose of allowing their attorney to question certain employees about working conditions at the plant. *Id.* at 270.

Moreover, courts routinely allow parties to intervene for a limited purpose or for a specific issue, as long as they can demonstrate a "legally protectable interest." *See, e.g.*, *Equal Employment Opportunity Comm'n v. National Children's Center, Inc.*, 146 F.3d 1042, 1047 (D.C. Cir. 1998) (permitting permissive intervention for purpose of accessing documents, but not to rule on merits of a claim or defense); *Mountain Top Condo. Ass'n. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 368 (3d Cir. 1995) ("They are entitled to intervene as to specific

issues so long as their interest in those issues is significantly protectable."); *Low v. Altus Finance, S.A.*, 44 Fed. Appx. 282, 285 (9th Cir. 2002) (allowing intervention to present evidence on damages).

Coupons' allegation that Rader, Fishman failed to disclose patents at issue in the *Black Diamond* litigation and Rader, Fishman's admission that it actually found, but did not disclose at least one of the patents that was the subject of the *Black Diamond* litigation, directly relate to the issue in the arbitration of whether Coupons had knowledge of the patents at issue before it renewed the Intellectual Property Infringement Defense Cost Reimbursement Policy (the "Policy"). In addition, Coupons' assertion that Rader, Fishman asserted a defense that caused Coupons to pay more to settle the *Black Diamond* litigation and Rader, Fishman's recent admissions that Coupons instructed Defendants not to submit a claim form for reasons including that it believed its litigation costs would not exceed the $500,000 retention, implicate the issue in the arbitration of how much, if anything, Indian Harbor would be required to reimburse Coupons. Indian Harbor has no other means of obtaining information on these issues which may resolve some of the issues in an ongoing arbitration. Therefore, Indian Harbor could lose important rights if intervention in this case were denied.

The cases Rader, Fishman and Coupons each cite to support their position that discovery is not a valid basis for intervention are not applicable to Indian Harbor's motion to intervene. *In re New Motor Vehicles Canadian Export Antitrust Litigation*, 225 F.R.D. 62, 63 (D. Me. 2004) (cited by Rader, Fishman) is a district court opinion in a multidistrict litigation from another circuit that is not binding on this court. In addition, as set out below, unlike the proposed intervenors in *New Motor Vehicles*, Indian Harbor can demonstrate an interest in the "disposition of the action" between Coupons and Rader, Fishman. *Id.* Furthermore, the court in *New Motor Vehicles* had actually issued an Order which permitted state court plaintiffs, such as the proposed

intervenors, to have access to the discovery in the federal action. *Id.* It was the proposed intervenors' choice not to take advantage of that method of obtaining discovery. *Id.* In contrast to that case, there is no established procedure for Indian Harbor to obtain discovery. In fact, Coupons and Rader, Fishman have resisted Indian Harbor's effort to obtain discovery from Rader, Fishman. Instead, Coupons has chosen to disclose only limited and self-selected communications it had with Rader, Fishman. Thus, Indian Harbor has no alternative except intervention to obtain the discovery relevant to the claims that Coupons asserted against it in the arbitration. *Compare Griffith v. Univ. Hosp., LLC*, 249 F.3d 658, 662 (7th Cir. 2001) (denying intervention because the intervenor could obtain discovery in its arbitration).

Similarly, the case cited by Coupons -- *Haworth Inc. v. Steelcase, Inc.*, 12 F.3d 1090 (Fed. Cir. 1993) -- is inapplicable to the facts of this case. In *Haworth*, the proposed intervenor sought to intervene to obtain documents from a case which had been submitted to a confidential alternative dispute resolution proceeding. *Id.* at 1092. The Federal Circuit denied the motion for intervention because access to documents in the confidential ADR proceeding would undermine the policy favoring private resolution of disputes and would threaten the parties continued cooperation and participation in the ADR proceeding. *Id.* at 1093-94. The crux of the decision in *Haworth* -- the public policy favoring confidentiality of ADR proceedings -- is simply not at risk here. This action brought by Coupons against Rader, Fishman is a federal court action. Indian Harbor's participation in this action would not implicate any confidentiality interests of either Coupons or Rader, Fishman. Therefore, the rationale for denying intervention in *Haworth* is simply inapplicable to Indian Harbor's motion to intervene.

      b) <u>Indian Harbor has an "interest" in the malpractice litigation pending in this Court</u>

Indian Harbor can establish a second clear injury which creates an interest requiring Indian Harbor's participation in this action. Rader, Fishman argues that Indian Harbor has no

basis for commencing an independent legal proceeding against Coupons if Indian Harbor is not allowed to intervene. (Rader, Fishman Opp'n at 9). However, Rader, Fishman's argument ignores the fact that Indian Harbor has been injured by Rader, Fishman's conduct.

According to the D.C. Circuit, as long as Indian Harbor has standing, it is not required to bring a cause of action to establish the requisite "interest" for Rule 24(a). *Jones*, 348 F.3d at 1018; *see also United States v. Phillip Morris USA*, 2005 WL 1830815, at *5 (D.D.C.) (permitting interest groups to intervene even though statute lacked a private right of action). Although Indian Harbor has not alleged a specific cause of action at this point, resolution of the issue of whether Rader, Fishman committed malpractice in its patent search will directly effect Indian Harbor's interest in pursuing redress against Rader, Fishman for its role in inducing Indian Harbor to issue a policy to Coupons based upon apparently inaccurate and misleading representations. Participation by Indian Harbor would avoid wasteful and inconsistent litigation in the future. Thus, contrary to Rader, Fishman's argument (Opp'n at 9), the policy behind intervention -- of disposing of lawsuits -- will also be met if Indian Harbor is permitted to intervene.

Rader, Fishman conducted a patent search and issued (a) a legal opinion to Coupons that summarized its opinions regarding potential infringement (the "Opinion Letter") and (b) a letter representing the process used by Coupons to avoid infringing the intellectual property rights of others (the "Comfort Letter"). In this action, Coupons is alleging that Rader, Fishman committed malpractice in conducting its patent search. In reliance on the patent search and the letters issued by Rader, Fishman, Indian Harbor issued the Policy to Coupons. Indian Harbor's reliance on the Opinion Letter and Comfort Letter was both reasonable and justified considering Rader, Fishman's experience in the industry. Rader, Fishman knew that Indian Harbor relied upon the Opinion Letter and the Comfort Letter in determining whether it would issue the Policy

-7-

to Coupons for its patents. Had Rader, Fishman not committed malpractice in the issuance of the Opinion Letter and Comfort Letter, Indian Harbor would have had the opportunity to exclude coverage of the patent at issue in the *Black Diamond* litigation, which is the basis of Coupons' malpractice claim against Rader, Fishman, or to decline issuance of any policy to Coupons.

Indian Harbor's reliance on Rader, Fishman's Opinion Letter and Comfort Letter establishes a "legally protectable interest" for the purpose of intervention. In *Dimond v. District of Columbia*, 792 F.2d 179 (D.C. Cir. 1986), a case involving the plaintiff's challenge to D.C.'s no fault law, State Farm moved to intervene because, in calculating rates it charged, it had relied on expected savings resulting from statutory limitations on recoveries for noneconomic losses. *Id.* at 192. The D.C. Circuit held that State Farm exhibited the required "interest" because if the plaintiff prevailed on its challenge, the statutory changes would have exposed State Farm to additional fees it had not foreseen. *Id.* Similarly, Indian Harbor's "interest" stems from its reliance on Rader, Fishman's legal opinions on the patent search and justifies its intervention here. *See also Fund for Animals, Inc.*, 322 F.3d at 735 (permitting intervention based on intervenor's reliance on revenues for funding).

Moreover, an insurance company's reliance on opinion letters has been repeatedly held to be a source of liability. For example, in *RTC Mortgage Trust 1994 v. Fidelity Nat'l Title Ins. Co.*, 58 F. Supp. 2d 503, 525 (D.N.J. 1994), the court held an attorney liable for malpractice to a non-client mortgage company. In *RTC Mortgage Trust*, an attorney who acted as counsel for buyer and seller and owned the title company, also wrote an opinion letter for one mortgage company that failed to disclose a second mortgage. 58 F. Supp. 2d at 523. The court held that an attorney owed "a duty of care to non-clients when the attorneys know, or should know, that non-clients will rely on the attorney's representations…a lawyer's duty may run to third parties who forseeably rely on the lawyer's opinion or other legal services." *Id.* at 521 (citing *Petrillo v.*

*Bachenberg*, 655 A.2d 1354 (N.J. 1995)).  The court held that the lawyer had breached its duty of care, which was the proximate cause of injury to the mortgage company because "but for the inaccurate opinion letter, [the mortgagor] would not have gone through with the mortgage transaction."  *Id.*

Likewise, in *Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver, N.A.*, 892 P.2d 230 (Colo. 1995) (en banc), the respondent-bank expressed interest in purchasing bonds to finance a construction project.  *Id.* at 233.  Before purchasing the bonds, the respondent asked for assurance that there was no risk that a pending lawsuit would cause a default of the bonds.  *Id.* at 234.  Lawyers for the seller issued an opinion letter that stated that the pending lawsuit had no merit.  *Id.*  Based on the opinion letter, the respondent purchased the bonds and issued a comfort letter stating it relied on its own investigation of material facts in the transaction.  *Id.*  When the pending lawsuit was found to indeed have merit and the bonds defaulted, the respondent sued the seller's attorneys for negligent misrepresentation based on the opinion letter.  *Id.*  The Supreme Court of Colorado reversed dismissal of the claim because the opinion letters were issued "for the purpose of inducing respondent [to purchase the bonds.]"  *Id.* at 237.  In addition, the court found that, in the context of the entire transaction, the comfort letters did not disclaim the respondent's reliance on the opinion letters.  *Id.* at 238; s*ee also Molecular Tech. Corp. v. Valentine*, 925 F.2d 910, 916 (6th Cir. 1991) (imposing duty on attorney for offering circular relied on by investors); *Greycas, Inc. v. Proud*, 826 F.2d 1560, 1565 (7th Cir. 1987) (finding attorney liable for negligent misrepresentation in opinion letter); *Prudential Ins. Co. v. Dewey, Ballentine, Bushby, Palmer & Wood*, 605 N.E.2d 318, 322 (N.Y. 1992) (finding attorney owed insurance company duty of care in issuing opinion letter concerning debt restructuring); *Hood v. Prudential Ins. Co.*, 758 F. Supp. 764, 767 (D.D.C. 1991) (finding that insurance policy would not have been issued if the insured had not made material omissions in application).

Similarly, Indian Harbor relied upon Rader, Fishman's Opinion Letter and Comfort Letter in issuing the Policy. If Coupons' allegations are correct, Rader, Fishman has committed malpractice in failing to disclose the patent at issue in the *Black Diamond* litigation. As a result of issuing the Policy, Indian Harbor has incurred substantial attorneys fees and costs in defending its decision to decline coverage, that it would not have incurred had Rader, Fishman conducted its search properly and with due care. In addition, Indian Harbor may incur additional liability to Coupons than it would have incurred but for Rader, Fishman's alleged malpractice. Therefore, Indian Harbor has suffered injury-in-fact as a result of Rader, Fishman's alleged malpractice which intervention in this lawsuit will redress.

        *c)*        *Indian Harbor's "interest" is not speculative*

Rader, Fishman and Coupons also contend that Indian Harbor's injury is speculative and would be unaffected by the outcome of this action. (Coupons Opp'n at 10-11; Rader, Fishman Opp'n at 9). As demonstrated above, Indian Harbor's interest is more concrete than either Coupons or Rader, Fishman suggest. In addition, the cases that Coupons and Rader, Fishman rely on to show that Indian Harbor's "interest" is not sufficiently concrete are inapplicable to its motion to intervene here because the key factor in those cases was that the proposed intervenor sought to intervene based on an indemnification clause when judgment for the plaintiff in the underlying litigation was yet to be established. Furthermore, in both cases the movant was permitted to intervene permissively based on the similarity of the facts between the cases.

For example, in *Nationwide Mutual Ins. Co. v. Nat'l REO Mgmt., Inc.*, 205 F.R.D. 1, 2 (D.D.C. 2000) (cited by Rader, Fishman), Nationwide sought a declaratory judgment that it had no obligation to defend or indemnify the defendant under an insurance policy. The plaintiff in one of the underlying suits moved to intervene as of right, claiming that the defendant would be unable to pay any judgment she obtained in her lawsuit unless the Nationwide policy provided

coverage. *Id.* at 4. Intervention as of right was denied because the plaintiff in the underlying tort action had yet to receive a judgment; therefore her interest in the coverage action was too "hypothetical." *Id.*

In *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 25-26 (D.D.C. 2002) (cited by Coupons), DSMC alleged that NGTL and Convera were engaged in a conspiracy to steal its trade secrets. *Id.* at 17. That dispute was submitted to arbitration pursuant to the arbitration clause in the NGTL/DSMC agreement. *Id.* Then, DSMC filed suit against Convera, alleging misappropriation of trade secrets. *Id.* NGTL sought to intervene, arguing that the litigation would impact its interest because in the event that Convera were held liable, it would seek indemnification from NGTL. *Id.* at 25. However, the two contingencies to NGTL's "interest" being invoked were: 1) Convera had to lose the lawsuit; and 2) Convera had to succeed in holding NGTL liable for indemnification. *Id.* at 25-26. The potential harm caused by an indemnification agreement was considered "too attenuated to justify intervention as of right because that harm is contingent on intervening events." *Id.* at 26. Here, Indian Harbor's interest is starkly contrasted with the interest addressed in those cases. Indian Harbor's intervention for discovery does not hinge on any contingencies. Moreover, Rader, Fishman's potential liability to Indian Harbor based on its reliance on the legal opinions in issuing the Policy, is not subject to any contingency either.

### 2. Indian Harbor's Interests Will Be Impaired if Intervention is Denied

Both Coupons and Rader, Fishman argue that Indian Harbor's interest in this action is not impaired because the arbitration will take place before this litigation proceeds. (Rader, Fishman Opp'n at 9; Coupons Opp'n at 11). However, their contention is short-sighted for two reasons.

First, Indian Harbor's participation in this action could provide meaningful discovery from Rader, Fishman that is not otherwise available. If Indian Harbor is not permitted to

participate in discovery in this action, its interest would be impaired. The arbitration does not begin for nearly two months. As a practical matter, therefore, to the extent Indian Harbor's interest involves discovery, there is ample time to conduct the one-day depositions and other discovery Indian Harbor seeks to defend itself against the claims asserted by Coupons.

Second, if it were not permitted to intervene in this action, Indian Harbor's interest in the malpractice allegation against Rader, Fishman would be harmed. Indian Harbor has a direct interest in the malpractice claims against Rader, Fishman, because it issued the underlying Policy in reliance on Rader, Fishman's Opinion Letter and Comfort Letter that now appear, based upon Coupons' claims, to have been rendered inaccurate and contrary to the appropriate standard of care. Based on Rader, Fishman's representations, Indian Harbor incurred substantial attorneys fees and costs and may have liability to Coupons that it otherwise would not have had but for Rader, Fishman's alleged conduct. *See, e.g., Fund for Animals*, 322 F.3d at 735 (holding loss of revenues sufficient for impairment); *Mova Pharm.*, 140 F.3d at 1076 (loss of market share constitutes impairment); *United States v. Phillip Morris, USA Inc.*, 2005 WL 1830815, at *5 (D.D.C.) (finding interest groups' interest impaired when government changed its position on remedies).

Indeed, in this proceeding, the Court will be asked to render judgments regarding the very malpractice issues that Indian Harbor would be litigating in an action against Rader, Fishman. The precedent established by this court will inevitably affect the outcome of any claim Indian Harbor were to bring against Rader, Fishman. The fact that Indian Harbor would not be bound by collateral estoppel or res judicata principles does not affect the interest Indian Harbor has in this action. *Nuesse*, 385 F.2d at 702 ("stare decisis principles may in some cases supply the practical disadvantage that warrants intervention as of right."); *Huron Envtl. Activist League v. Envtl. Prot. Agency*, 917 F. Supp. 34 (D.D.C. 1996) (allowing intervention because lawsuit

12

would establish a rule of law unfavorable to intervenors). Alternatively, if this case is resolved short of trial, the parties may fail to preserve the evidence of Rader, Fishman's alleged malpractice. Thus, Indian Harbor's interests in the malpractice claims against Rader, Fishman will be impaired if Indian Harbor is not permitted to participate in this action.

> **3. Neither Rader, Fishman Nor Coupons will Adequately Represent Indian Harbor's Interests.**

The differing interests, positions and perspectives of the parties to this dispute make it readily apparent that neither plaintiff nor the defendant would adequately represent Indian Harbor's interests as contemplated by Rule 24(a). *See Fund for Animals, Inc.*, 322 F.3d at 735 ("the requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate."); *Am. Tel. & Tel. Co.*, 642 F.2d at 1293 (allowing intervention when intervenor's interest is similar but harm not identical to existing party); *Nuesse*, 385 F.2d at 703 (holding that "interests need not be wholly 'adverse' before there is a basis for concluding that existing representation of a 'different' interest may be inadequate."). Because of the differing positions between all of the parties on the issues that are central to this case, none of them will make the same legal arguments. *Dimond*, 792 F.2d at 193.

Coupons cannot adequately represent Indian Harbor's interests in this action because it is simultaneously pursuing a claim of bad faith against Indian Harbor for denying coverage under the Policy. Rader, Fishman contends that Coupons will vigorously pursue its claim that there were deficiencies in the patent search, which would represent Indian Harbor's interest. (Rader, Fishman Opp'n at 12-13). However, Coupons has conflicting interests in pursuing its malpractice claim against Rader, Fishman. While it may have an interest in showing any inaccuracies were Rader, Fishman's fault, it may have a greater interest in explaining away such inaccuracies as immaterial. Moreover, from a broader perspective, Coupons' interests are

directly adverse to Indian Harbor's because a finding of malpractice could affect its bad faith claim against Indian Harbor in the arbitration.

Nor could Rader, Fishman adequately represent Indian Harbor's interests in this case since their interests are directly adverse to Indian Harbor's in fundamental respects. Indian Harbor's decision to issue the Policy was based on Rader, Fishman's patent search, its Opinion Letter and Comfort Letter -- which Indian Harbor will seek to prove is faulty and Rader, Fishman will seek to show is accurate and competent. Additionally, even with regard to issues as to which Indian Harbor and Rader, Fishman may appear to have similar interests, such as the date Rader, Fishman advised Coupons to file its claim, Rader, Fishman's role and duties as counsel to Coupons in the *Black Diamond* litigation are inherently different than an insurer's role in issuing a Policy and deciding whether it will provide coverage for certain claims. *See Fund for Animals, Inc.,* 322 F.3d at 736 (finding party did not adequately represent intervenor's interest because although there was some overlap, the party would not give the intervenor's interest the same kind of primacy as the intervenor). Thus, Rader, Fishman could not "adequately represent" Indian Harbor's interests. Because these conflicts between the parties exist, Indian Harbor clearly meets the low threshold of proving "inadequate representation."

      **B.**    **Indian Harbor Satisfies the Requirements for Permissive Intervention**

In this Circuit, "the force of precedent compels a flexible reading of Rule 24(b)." *Equal Employment Opportunity Comm'n (EEOC) v. National Children's Center, Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). In fact, the D.C. Circuit has allowed intervention in "situations where the existence of any nominate 'claim' or 'defense' is difficult to find." *Id.* (citing *Nuesse v. Camp*, 385 F.2d 694, 704 (D.C. Cir. 1967)). There is no question that Indian Harbor can meet the flexible requirements under Rule 24(b).

First, it is apparent that Indian Harbor shares a question of law or fact in common with the parties to the pending action. "A finding that the same facts give rise to the applicant's independent claim and the lawsuit before the court is enough to establish common question of law or fact." *Nationwide Mutual Ins. Co. v. Nat'l REO Mgmt. Inc.*, 205 F.R.D. 1, 6 (D.D.C. 2000) (denying victim's intervention as of right in insurer's declaratory judgment action against insured, but granting permissive intervention for limited purpose based on similarity of facts). Commonality can even be found when the intervenor's case is pending in a different jurisdiction. *EEOC*, 146 F.3d at 1047.

In *Nationwide*, the insured was allowed to intervene in the federal court action because even though the policy was not an issue in her underlying case pending in Superior Court, "neither case [could] be decided without determining the source of the applicant's injuries." 205 F.R.D. at 6; *see also EEOC*, 146 F.3d at 1046 (granting permissive intervention because of the factual similarities between two lawsuits). Likewise, in *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14 (D.D.C. 2002), a case relied upon by Coupons, while the court denied intervention as of right to an intervenor who was a party to an arbitration with one of the parties in the federal court action, it permitted permissive intervention because "the facts at issue in the arbitration and [the] litigation at least in part overlap…[and] will involve much of the same factual development." *Id.* at 27

Here, both Coupons' arbitration of the bad faith insurance dispute and Coupons' malpractice action against Rader, Fishman arise from the *Black Diamond* litigation. Neither can be fully decided without determining whether Rader, Fishman conducted its patent search using reasonable care. In the arbitration, Coupons claims Indian Harbor denied coverage under the Policy in bad faith. Indian Harbor denied coverage, in part, because Coupons was aware of infringing patents before the renewal of the 2002 Policy. In the malpractice action, Coupons

alleges that Rader, Fishman breached its duty because it found one of the patents at issue, but did not include it in its Opinion Letter because it thought it was irrelevant. Indian Harbor relied on the Opinion Letter in issuing the Policy under which it denied coverage. Thus, the same facts gave rise to both actions. In addition, the information learned by participation in this lawsuit may shed light on issues in the arbitration. *EEOC*, 146 F.3d at 1048 ("there may be common questions, but also the record material in *NCC* might shed light on the substance of [the intervenor's] suit."). Furthermore, if Indian Harbor were to bring a claim against Rader, Fishman, the same factual development would need to take place.

Even if Indian Harbor does not seek a determination of the merits of a claim against Rader, Fishman, it can still intervene permissively. In an analogous situation, numerous cases have allowed permissive intervention by non-parties so they can access discovery that was protected by a protective order in a pending or settled case. *See, e.g., EEOC,* 146 F.3d at 1047; *Wilk v. Am. Med. Assoc.*, 635 F.2d 1295, 1296 (7th Cir. 1980). Several courts have recognized that "the correct procedure for a nonparty to challenge a protective order is through intervention for that purpose." *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990). In these cases, the movant was permitted to intervene because of the similarity of the cases and to avoid wasting judicial resources.

For example, in *Wilk v. Am. Med. Assoc.*, 635 F.2d 1295, 1296 (7th Cir. 1980), the plaintiffs alleged that the defendants participated in a nationwide conspiracy to eliminate the chiropractic profession. Extensive discovery took place, which was unavailable to nonparties pursuant to a protective order. *Id.* New York state sought to intervene to modify the protective order so that it could access the discovery that had taken place in the federal action. *Id.* The court held that a protective order could be modified if it would place private litigants in a position they would otherwise reach only after repetition of another's discovery, and would not

prejudice the rights of the party opposing modification. *Id.* at 1299. The court allowed New York to intervene so that it could access the voluminous discovery that had taken place. *Id.* at 1301. Similarly, in *In re Linerboard Antitrust Litigation*, 333 F. Supp. 2d 333, 335 (E.D. Pa. 2004), the court permitted a party to a similar antitrust suit pending in Canada, to intervene in a federal court action to modify a confidentiality order so that it could gain access to discovery materials in that case.

Allowing intervention would not unduly delay or prejudice the adjudication of Coupons' malpractice action. Central to the court's decisions to permit intervention in both *Linerboard* and *Wilk* was the "wastefulness of requiring [the intervenor] to duplicate discovery already made." *Wilk*, 635 F.2d at 1299. Here, allowing Indian Harbor to intervene would avoid the possibility of duplicative discovery in any future suit Indian Harbor could bring against Rader, Fishman. Thus, contrary to the parties' arguments that intervention would increase expenses in this litigation, or lead to cumulative discovery, intervention would actually decrease *future* expenses by allowing Indian Harbor to participate now. Furthermore, since the parties are already engaged in arbitration on a related issue, the time and expense involved were Indian Harbor to intervene would be insignificant.

### III. **CONCLUSION**

For the foregoing reasons, Indian Harbor's motion to intervene should be granted.

May 22, 2006

Respectfully submitted,

SONNENSCHEIN NATH & ROSENTHAL LLP

By    /s/ Kirk R. Ruthenberg
      Kirk R. Ruthenberg #415520
      1301 K Street, N.W.
      Washington, D. C. 20005
      (202) 408-6400
      (202) 408-6399 (facsimile)
      kruthenberg@sonnenschein.com

      Attorneys for Indian Harbor Insurance Company

Of Counsel:
Sonnenschein Nath & Rosenthal LLP
Donald M. Carley
Peter R. Soares
685 Market Street, 6th Floor
San Francisco, CA 94105
(415) 882-5000
(415) 543-5472 (facsimile)

## CERTIFICATE OF SERVICE

      I, Erin M. Shoudt, do hereby certify that on May 22, 2006, the foregoing Consolidated Reply Memorandum in Support of Indian Harbor's Motion to Intervene was filed and served utilizing the court's electronic case filing program on the following:

        Daniel E. Farrington
        THE FARRINGTON LAW FIRM
        4550 Montgomery Avenue
        Suite 775 North
        Bethesda, MD 20814
        (301) 951-1544
        Email: dfarrington@farringtonlaw.com

        Jonathan K. Tycko
        TYCKO ZAVAREEI, & SPIVA, LLP
        2000 L Street, NW
        Suite 808
        Washington, DC 20036
        (202) 973-0900
        Fax: (202) 318-2623
        Email: jtycko@tzslaw.com

        Mark J. Hancock
        SEDGWICK, DETERT, MORAN & ARNOLD LLP
        One Market Plaza
        Steuart Tower
        San Francisco, CA 94105
        (415) 781-7900
        Fax: (415) 781-2635
        Email: mark.hancock@sdma.com

        Steven D. Wasserman
        SEDGWICK, DETERT, MORAN & ARNOLD LLP
        One Market Plaza
        Steuart Tower
        San Francisco, CA 94105
        (415) 781-7900
        Fax: (415) 781-2635
        Email: steven.wasserman@sdma.com

In addition, paper copies of the foregoing Consolidated Reply Memorandum in Support of Indian Harbor's Motion to Intervene was served by first class U.S. Mail, postage prepaid on the following:

> Neil A. Gotenier
> FARELLA, BRAUN & MARTEL, LLP
> 235 Montgomery Street
> San Francisco, CA 94104
>
> Louise A. Warren
> FARELLA, BRAUN & MARTEL, LLP
> 235 Montgomery Street
> San Francisco, CA 94104

    /s/ Erin M. Shoudt

Erin M. Shoudt