THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COUPONS, INC. ) | Case No. 1:06-CV-00142 HHK |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| ELLEN A. EFROS, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**SUR-REPLY OF DEFENDANTS ELLEN A. EFROS, RONALD P. KANANEN AND RADER, FISHMAN & GRAUER, PLLC IN OPPOSITION TO INDIAN HARBOR INSURANCE COMPANY'S MOTION TO INTERVENE**

Defendants Ellen A. Efros, Ronald P. Kananen, and Rader, Fishman & Grauer, PLLC (collectively, "defendants") submit this sur-reply in opposition to the motion to intervene filed by Indian Harbor Insurance Company ("Indian Harbor").

Indian Harbor's reply memorandum filed on May 22, 2006 contained new matter which defendants had no opportunity to address when they filed their opposition. Specifically, Indian Harbor now claims for the first time to have a new "interest" in the pending litigation—"an interest . . . in exploring its own claims for malpractice or other similar claims against Rader, Fishman based on Rader, Fishman's legal opinion and representations issued in seeking insurance coverage for Coupons." (Reply at 1.) Although Indian Harbor ascribes great importance to this alleged interest, it inexplicably omitted reference to it in the opening memorandum or in its proposed Complaint In Intervention. The absence of any explanation for this omission suggests that this new "interest" was, in actuality, an afterthought, included in the reply in a misguided effort to compensate for Indian Harbor's complete inability to respond to defendants' argument that Indian Harbor is improperly attempting to circumvent the discovery

1

limitations it accepted when it agreed to private arbitration. In any event, for the reasons set forth below, Indian Harbor's new interest does not provide valid grounds to support intervention for conducting unlimited, exploratory discovery of a possible claim against Rader, Fishman & Grauer, PLLC ("Rader").

## I.     INDIAN HARBOR'S NEW CONTENTION

Coupons' complaint alleges that in 2001 Rader conducted a patent search and prepared an opinion letter. Coupons alleges that this letter was provided to Coupons and to Indian Harbor in connection with Coupons' application for patent-infringement insurance coverage. (Coupons' Complaint, ¶10.) Coupons alleges that Rader repeated this process in 2002, when Coupons submitted a renewal application for the policy. (Coupons' Complaint, ¶10.) Indian Harbor now for the first time alleges in its reply that it relied on these two letters in issuing the policy to Coupons. (Reply at 7.) It argues that to the extent Rader did commit malpractice in preparing the opinion letters—something which Rader strongly denies and which has not been proven—"Indian Harbor would have had the opportunity to exclude coverage of the patent at issue in the Black Diamond litigation . . . or to decline issuance of any policy to Coupons." (Reply at 8.)

Indian Harbor claims that its alleged "reliance on Rader, Fishman's Opinion Letter and Comfort Letter establishes a 'legally protectable interest' for purposes of intervention." (Reply at 8.) It further claims that if it is not permitted to intervene, its purported "interest in the malpractice allegations against Rader, Fishman would be harmed." (Reply, p 12.) Indian Harbor's description of this purported "harm" is entirely speculative and unsupported. First, it asserts that "[t]he precedent established by this court will inevitably affect the outcome of any claim Indian Harbor were to bring against Rader, Fishman." (Reply, 12.) Second, Indian Harbor contends that "if this case is resolved short of trial, the parties may fail to preserve the evidence of Rader, Fishman's alleged malpractice." (Reply at 13.) Indian Harbor also claims that denying

2

it leave to intervene would "waste judicial resources by forcing Indian Harbor to assert its interests against Rader, Fishman in subsequent litigation." (Reply at 2.)  However, Indian Harbor acknowledges that it "has not alleged a specific cause of action" against Rader. (Reply at 7.)  Rather, Indian Harbor wants to intervene just so that it can "*explor[e]* its own claims for malpractice" against Rader.  (Reply at 1; emphasis added.)  Accordingly, Indian Harbor's proposed intervention in this case would not obviate any purported need for "subsequent litigation."

## II.     ARGUMENT

Because Indian Harbor's alleged new interest in "exploring" a possible claim against Rader is really a pretext for conducting discovery for the arbitration, it is not a valid basis for intervention and the motion to intervene should be denied on that ground.  Further, even if the new interest in "exploring" a claim against Rader is taken at face value, it still fails to constitute an adequate basis for mandatory or permissive intervention.

**A.     Indian Harbor's Newly-Identified Interest Does Not Entitle Indian Harbor to Intervene as of Right**

   *1.     Indian Harbor Possesses Neither Article III Standing Nor a Legally Protected Interest in this Action*

Indian Harbor alleges that it has been injured by Rader's "role in inducing Indian Harbor to issue a policy to Coupons based upon apparently inaccurate and misleading representations." (Reply at 7.)  Indian Harbor claims that its reliance on Rader's opinion letters "establishes a 'legally protected' interest" for the purpose of intervention." (Reply at 8.)  However, Indian Harbor's claims of "inaccurate and misleading representations" by Rader rest entirely on unproven, disputed allegations in Coupons' complaint. (*See* Reply at 5.)  Indian Harbor acknowledges that whether Rader made any "inaccurate and misleading representations" has not been determined. (Reply at 7, ". . . resolution of the issue of *whether Rader, Fishman*

3

*committed malpractice in its patent search* will directly affect Indian Harbor's interest in pursuing redress against Rader, Fishman . . . ."; emphasis added.)  Thus, Indian Harbor's purported new interest in intervening is not based on any "clear injury" (Reply at 6) attributable to Rader.  Rather, it is based on a hypothetical claim against Rader which will not be determined prior to the resolution of the present action.

Indian Harbor acknowledges on page 3 of its Reply that, to establish Article III standing, the claimant's "injury in fact" must be "concrete and actual or imminent, not conjectural or hypothetical."  *Envtl. Defense v. Leavitt*, 329 F.Supp.2d 55, 66 (D.D.C. 2004) (citing *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 243 (D.C. Cir. 1999)).  However, Indian Harbor's purported injury based on Coupons' unproven allegations against Rader is neither concrete nor imminent, but is speculative and hypothetical.  Its alleged interest based on this speculative injury is not legally protectable and Indian Harbor does not demonstrate more than "a mere provable claim," as it must.  See *Nationwide Mut. Ins. v. National REO Management*, 205 F.R.D. 1, 4 (D.D.C. 2000)  ("Interpreting this connection between a sufficient interest to intervene and Article III standing, the D.C. Circuit requires that the interest be concrete enough to be 'legally protectable.'  This court has held that 'an intervenor must demonstrate more than 'a mere provable claim' in order to satisfy the threshold interest required by [Rule 24]"; citations omitted.)

Indian Harbor cites *Dimond v. District of Columbia*, 792 F.2d 179 (D.C. Cir. 1986), in support of its position that its interest in "exploring" a claim against Rader is a legally protectable interest under Rule 24.  In that case, an insurance company had an unequivocal financial stake in the outcome of a challenge to the 1982 No-Fault Insurance Act.  The *Dimond* decision states:

> In the instant case, State Farm has an interest relating to the challenge to the 1982 No-Fault Insurance Act, and the disposition of this challenge could well impair State Farm's ability to protect this interest.  In its motion to intervene, State Farm alleges that it relied upon an expected savings resulting from the statutory

4

>limitations on the ability of automobile accident victims to recover noneconomic losses in calculating the rates to charge for no-fault insurance policies in the District of Columbia. By expanding the class of victims able to recover noneconomic losses, the District Court's judgment exposes State Farm to additional pain and suffering damages, attorneys' fees and other litigation expenses which State Farm did not foresee. State Farm cannot recoup these losses through an increase in premiums because District of Columbia law provides that any new insurance rates can only be applied prospectively.

*Id.* at 192.

Contrary to Indian Harbor's argument, the exposure to economic losses faced by State Farm as a result of the *Dimond* litigation does not resemble any risk faced by Indian Harbor as a result of the present litigation. The issue of statutory construction in the *Dimond* litigation presented State Farm with the risk of monetary losses which it could not have recouped through premium increases. In contrast, the present litigation does not put Indian Harbor in jeopardy of losing any rights or having to pay any money. Denial of intervention based on Indian Harbor's new interest will not jeopardize Indian Harbor's right to "explore" a purported claim against Rader on a later date or outside of this litigation.

Another problem with Indian Harbor's argument is that Indian Harbor provides no support for its assertion that "an insurance company's reliance on opinion letters has been repeatedly held to be a source of liability." (Reply at 8.) None of the cases it cites in support of this proposition involve reliance by an insurance company on an opinion letter in connection with the issuance of a policy, and only one construes District of Columbia law. The only case cited by Indian Harbor which applies District of Columbia law is *Hood v. Prudential Ins. Co.*, 758 F. Supp. 764 (D.D.C. 1991). It is irrelevant to the present action because it involves neither an attorney nor an opinion letter. In *Hood*, a woman misrepresented her health status in order to procure a life insurance policy and then died of complications arising from alcoholism. 758 F. Supp. at 765. The insurance company denied the beneficiaries' claims for policy benefits on the ground that the insured had falsely denied alcohol dependency in the policy application. *Id.* The

5

court's ruling centered on what constitutes an actionable false statement by an insurance applicant, not on whether an attorney can be liable to a third-party insurance company based on alleged misstatements in an opinion letter. *Id.* at 766-767. Thus, *Hood* does not support the proposition for which it has been cited by Indian Harbor.

Likewise, the non-District of Columbia cases cited by Indian Harbor do not involve opinion letters given to insurance companies in connection with the issuance of insurance policies. Rather, the complaining parties in these cases are lenders and creditors. See *RTC Mortgage Trust 1994 v. Fidelity Nat'l Title Ins. Co.*, 58 F.Supp.2d 503, 525 (D.N.J. 1994) (mortgage company), *Mehaffy Rider, Windholz & Wilson v. Central Bank Denver, N.A.,* 892 P.2d 230, 233 (Colo. 1995) (bank), *Molecular Tech, Corp. v, Valentine*, 925 F.2d 910, 916 (6th Cir. 1991) (investors), *Prudential Ins. Co. v. Dewey*, 80 N.Y.2d 377, 379 (N.Y. 1992) (insurance company acting as creditor). Moreover, as these decisions are from other jurisdictions having no connection with the events alleged in this case, they are not controlling. Thus, Indian Harbor has provided no support for its argument that "an insurance company's reliance on opinion letters has been repeatedly held to be a source of liability."

Another serious flaw in Indian Harbor's argument is that its alleged interest in "exploring" a malpractice claim against Rader in this case runs afoul of the Federal Rules of Civil Procedure (the "Rules"). The Rules relating to discovery assume that in District Court litigation a "claim" has been alleged. Rule 26 defines the permissible scope of discovery based on "the claim or defense of any party . . . ." In the absence of the anchor point of a "claim," the proper scope of Indian Harbor's discovery obligations and permissible conduct would not be subject to definition. For example, if Indian Harbor is given party status in this case, it will be required to make initial disclosures under Rule 26(a)(1). Under Rule 26(a)(1)(A) it will be required to list witnesses having information that it "may use to support its claims or defenses,"

6

and under Rule 26(a)(1)(B), it will be required to produced documents it "may use to support its claims or defenses." In the absence of a claim, Rader will have no way of knowing whether Indian Harbor has complied with its disclosure obligations. Likewise, with respect to Indian Harbor's hypothetical claim, Rader will not be able to identify its defenses and, accordingly, its own disclosure obligations under Rule 26 could not be defined.

Further, disputes would arise as to the proper scope of Indian Harbor's questioning in depositions, and as to the proper scope of its document requests and interrogatories. Rader would have the same questions with respect to its own entitlement to discovery concerning Indian Harbor's hypothetical claim. These issues could not be resolved under the Rules, because no claim is to be alleged.

Rule 27 governs the taking of depositions before an action is filed. Such depositions are only allowed when detailed procedural requirements are met and the party desiring to take the depositions establishes that "the perpetuation of the testimony may prevent a failure or delay of justice." (Rule 27(a)(3).) Indian Harbor does not purport to satisfy the requirements of Rule 27 and, instead, it appears to be attempting an end-run around that rule, just as it is attempting to circumvent the Federal Arbitration Act discovery limitations applicable to its private arbitration with Coupons.

Rule 11 presents another issue. The certification made by a party under that rule requires that there be support for the party's "claims, defense, and other legal contentions . . ." (Rule 11(b)(2)) and "allegations and other factual contentions" (Rule 11(b)(3)). Indian Harbor only purports to present a hypothetical claim relating to possible future litigation. In doing so, it appears to be circumventing the Rule 11 pre-filing investigation requirement. This should not be allowed, particularly in connection with a serious accusation of legal malpractice.

Based on the above, the Federal Rules of Civil Procedure should be construed to forbid intervention for the purpose of conducting exploratory discovery of the type sought by Indian Harbor. Discovery conducted for use in a possible future action is impermissible. "In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. *Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied.*" *Oppenheimer Fund, Inc. v Sanders*, 437 U.S. 340, 353 n.17 (1978) (emphasis added).

Finally, if the court rules that Indian Harbor's new interest in "exploring" a claim against Rader does not satisfy Rule 24, the policy behind the rule will not be offended. "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 699 (D.C. Cir. 1967). By granting Indian Harbor leave to intervene, the court would not be "disposing of a lawsuit" because this litigation would not necessarily dispose of Indian Harbor's potential claim, which is not even being alleged. Indian Harbor's intervention in this case would only serve to increase the cost of litigation to defendants as they respond to all of Indian Harbor's discovery purportedly intended for use in a hypothetical future lawsuit against Rader. For all of the reasons stated above, Indian Harbor has not met its burden of establishing, with respect to its new desire to "explore" a claim against Rader, that it has Article III standing or a legally protected interest in this action.

    2.    *This Action Does Not Threaten to Impair Any Legally Protected Interest*

Once an applicant has successfully established a sufficient interest in the subject of the action, Rule 24(a) states that it must demonstrate that "disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." The threatened impairment described by Indian Harbor is too tenuous and speculative to entitle it to intervene as

of right. First, Indian Harbor asserts that "[t]he precedent established by this court will inevitably affect the outcome of any claim Indian Harbor were to bring against Rader, Fishman." (Reply, 12.) In making this argument, Indian Harbor is not referring to any res judicata effect that this action could have. This is shown by Indian Harbor's statement that it "would not be bound by collateral estoppel or res judicata principles" in any future action against Rader. (Reply at 12.) Rather, Indian Harbor appears to be asserting that any judgment in this case could have a negative stare decises effect on a possible future action against Rader. "The issue of stare decises is different from that of res judicata, which involves a decision about a specific factual controversy rather than an issue of law." 6 Moore's Federal Practice, §24.03[3][b] (Matthew Bender 3d ed.).

Indian Harbor does not identify in its reply any particular ruling on an issue of law that will likely be made by this Court and which would have an adverse stare decises effect on Indian Harbor's rights. Given the nature of the fact-intensive claim in involved in this case—negligence—that is not surprising. This is because, "[r]ecurring common law actions such as breach of contract and negligence are unlikely to achieve the practical stare decises impairment necessary to satisfy Rule 24(a). In contrast, stare decisis is neatly presented by novel issues of statutory construction." 6 Moore's Federal Practice, §24.03[3][b] (Matthew Bender 3d ed.). The cases cited by Indian Harbor in its reply involve "novel issues of statutory construction" and are materially distinguishable from those in the present action. In the first case cited by Indian Harbor, *Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967), "a question of first impression [was] being presented that [would] involve a decision whether terms in the National Bank Act mean[t] that the Comptroller of the Currency [could] authorize a national bank . . . to branch where the laws of the State of Wisconsin would not permit a state bank to branch . . . ." *Nuesse*, 385 F.2d at 702. The party seeking leave to intervene was the Commissioner of Banks for the State of

9

Wisconsin, who was in charge of enforcing state laws relating to banking. He successfully argued that the court's decision construing the National Bank Act could impair his ability to vindicate his approach to the issue in another court. In contrast, the present action is fact intensive and involves no similar issue of statutory construction.

      The same is true with respect to the other case cited by Indian Harbor, *Huron Envtl. Activists League v. Envtl. Prot. Agency*, 917 F.Supp. 34 (D.D.C. 1996). In *Huron*, the plaintiff sought to enjoin the United States Environmental Protection Agency ("EPA") from conducting further meetings with cement industry trade groups and from using their advice and recommendations obtained in violation of the Federal Advisory Committee Act, 5 U.S.C.S. app. § 1 et seq. ("FACA"). The parties applying for leave to intervene were the trade groups that had previously engaged in meetings with the EPA concerning the regulation of cement kiln dust. The District Court ruled that the trade groups should be allowed to intervene because, if the plaintiff prevailed in its suit, the trade groups would be barred under the FACA from participating in further meetings with the EPA. Similar to *Nuesse*, this case presented an issue of statutory construction having no parallel in the present action. Indian Harbor's claim of threatened impairment is too tenuous to justify intervention.

      As a second form of threatened impairment of its interest, Indian Harbor contends that "if this case is resolved short of trial, the parties may fail to preserve the evidence of Rader, Fishman's alleged malpractice." (Reply at 13.) Indian Harbor cites no authority showing that such a speculative form of impairment should be recognized as a valid ground for allowing intervention. Nor does it cite any factors indicating that there is a heightened risk of a loss of evidence in this case as compared to any other potential legal malpractice case. In these circumstances, Indian Harbor has not shown a "practical" risk of impairment of its ability to protect its interest, as Rule 24(a) requires.

Finally, Indian Harbor claims that denying it leave to intervene would "waste judicial resources by forcing Indian Harbor to assert its interests against Rader, Fishman in subsequent litigation." (Reply at 2.) This is not a threatened impairment of Indian Harbor's ability to protect its interests. Accordingly, it is not a valid basis for intervention as of right. Further, as stated above, Indian Harbor is not pursuing a claim against Rader in this action. Accordingly, Indian Harbor's proposed intervention in this case would not obviate any purported need for "subsequent litigation."

In summary, Indian Harbor has failed to meet its burden of showing that a disposition of the action may as a practical matter impair or impede its ability to protect any alleged interest it may have in exploring a potential claim against Rader.

    3.    *Indian Harbor Has Not Met Its Burden of Showing That Its Interest Will Be Inadequately Represented by Existing Parties in This Litigation*

Indian Harbor must also establish that its purported interest in exploring a legal malpractice claim against Rader is not "adequately represented by existing parties." Rule 24(a). Indian Harbor cannot make this showing because it has no legally protected interest in this action. Further, the "interest" that it does claim to have will not be impaired by any disposition of this action. Both of these points are discussed above.

Moreover, even as to the interest it claims to have in "exploring" a possible claim against Rader, its interest will be adequately represented in this case by Coupons. The basis for Indian Harbor's contention that it may have a malpractice claim against Rader rests upon, or coincides with, the allegation in Coupons' complaint that Rader committed errors in its patent search. (See Coupons' Complaint, ¶20.b.) Indian Harbor states in its reply brief that "resolution of the issue of whether Rader, Fishman committed malpractice in its patent search will directly effect [sic] Indian Harbor's interest in pursuing redress against Rader, Fishman . . . ." (Reply at 7.)

11

Indian Harbor asserts that its interests are adverse to those of Coupons in the pending AAA arbitration. (Reply at 13.) However, both of them apparently share the objective of conducting discovery as to whether Rader mishandled the patent search. Although Indian Harbor acknowledges that Coupons "may have an interest in showing any inaccuracies were Rader, Fishman's fault," it contends that Coupons "may have a greater interest in explaining away such inaccuracies as immaterial." (Reply at 13.) However, Indian Harbor does not explain why it is that Coupons would have any such "greater interest." In the absence of any reason for believing something to the contrary, it must be assumed that Coupons' will vigorously attempt to prove the allegations in its complaint.

In summary, not only does Indian Harbor lack a legally-protected interest in exploring an unasserted claim against Rader in this case, but the interest that it does claim to have (but which gives it no right to intervene) will be adequately represented by Coupons as it pursues its claim in this case.

**B.**     **Indian Harbor Is Not Entitled to Intervene Permissively**

Rule 24(b) governs permissive intervention. Permissive intervention may be granted "when a statute of the United States confers a conditional right to intervene" (that is not something that Indian Harbor alleges here) or "when an applicant's claim or defense and the main action have a question of law or fact in common." Rule 24(b).

The arguments provided above in opposition to mandatory intervention also support denial of permissive intervention, and they are hereby incorporated by reference. Indian Harbor's purported new interest in intervening is just a pretext for justifying the taking of discovery which is not permitted in its private arbitration. Further, Indian Harbor has cited no authority to support its argument that a party should be permitted to intervene in pending litigation for the purpose of conducting unlimited, exploratory discovery concerning a possible,

future claim. The cases Indian Harbor cites only allowed intervention for the limited purpose of allowing the intervenor to have access to existing documents produced in related litigation. In *Equal Employment Opportunity Commission v. National Children's Center, Inc*, 146 F.3d 1042 (D.C. Cir. 1998), a sexual harassment victim sought intervention in a sexual harassment case for the limited purpose of obtaining relevant records that were under seal. In *Wilk v. Am. Med. Assoc.*, 635 F.2d 1295, 1296 (7th Cir. 1980) the State of New York sought intervention in a Sherman Act case for the purpose of modifying a protective order applying to discovery so that it could use the materials that had already been produced. Finally, in *In re Linerboard Antirust Litigation*, 333 F.Supp.2d 333 (E.D. Pa. 2004), a party to a similar antitrust case sought leave to intervene in order to gain access to discovery that had already been collected by the plaintiff. No unlimited discovery of possible claims was permitted in any of these cases.

Indian Harbor's participation in the case would make this litigation significantly more expensive for defendants as they may be forced to submit to extended depositions, respond to additional written discovery and deal with any motions that arise therefrom. In addition, as stated above, Indian Harbor's participation in discovery would present many practical difficulties in light of the fundamental assumption made in the Federal Rules of Civil Procedure that a party participating in discovery has filed a pleading alleging a specific claim or defense. The Rules cannot be construed to permit exploratory discovery of the type sought by Indian Harbor. That is a sufficient reason for denying leave to intervene. Further Costly discovery disputes would likely arise, and this would not be fair to defendants, particular where the discovery will be obtained for use in a private arbitration to which defendants are not parties, and Indian Harbor's discovery efforts would contribute nothing to resolution of the present action.

### III.     CONCLUSION

For all the reasons stated above, Indian Harbor's motion should be denied in its entirety.

                                Respectfully submitted,

June 2, 2006                  _____/s/_____
                                Steven D. Wasserman
                                CA Bar No. 88291 (admitted pro hac vice)
                                Mark J. Hancock
                                CA Bar No. 160662 (admitted pro hac vice)
                                SEDGWICK, DETERT, MORAN & ARNOLD LLP
                                One Market Plaza
                                Steuart Tower, 8th Floor
                                San Francisco, CA  94105
                                (415) 781-7900 (telephone)
                                (415) 781-2635 (fax)
                                steven.wasserman@sdma.com
                                mark.hancock@sdma.com
                                *Counsel for Defendants Ellen A. Efros, Ronald P. Kananen and Rader, Fishman & Grauer, PLLC*

                                Jonathan K. Tycko
                                D.C. Bar No. 445851
                                Kathleen R. Hartnett
                                D.C. Bar No. 483250
                                TYCKO, ZAVAREEI & SPIVA LLP
                                2000 L Street, N.W., Suite 808
                                Washington, D.C. 20036
                                (202) 973-0900
                                (202) 973-0950 (fax)
                                jtycko@tzslaw.com
                                khartnett@tzslaw.com
                                *Counsel for Defendants Ellen A. Efros and Ronald P. Kananen and for Defendant and Counterclaim-Plaintiff Rader, Fishman & Grauer, PLLC*