THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COUPONS, INC.,

        Plaintiff,

v.

ELLEN A. EFROS, et al.,

        Defendants.

AND RELATED COUNTERCLAIM

Case No. 1:06-CV-00142 HHK

### DEFENDANTS' MOTION TO COMPEL: (1) PLAINTIFF TO FURTHER RESPOND TO DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS; (2) PLAINTIFF TO FURTHER RESPOND TO DEFENDANT RONALD P. KANANEN'S FIRST SET OF INTERROGATORIES; AND (3) FURTHER RESPONSES TO DEPOSITION QUESTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Pursuant to Fed.R.Civ. P. 33, 34 and 37, defendants ELLEN A. EFROS, RONALD P. KANANEN, AND RADER, FISHMAN & GRAUER, PLLC (collectively referred to herein as "defendants") do move for an order compelling (1) plaintiff COUPONS, INC., ("Coupons") to further and completely respond to Defendants' First Request for Production of Documents, Request No. 36; (2) Coupons to further and completely respond to defendant Ronald P. Kananen's First Set of Interrogatories, Interrogatory No. 8; and (3) further responses to questions asked at the depositions of Coupons' officers Steven Boal and Jeffrey Weitzman.

This motion is made pursuant to Federal Rules of Civil Procedure 33, 34 and 37, and is based on this Notice, the Memorandum of Points and Authorities, and the Declaration of

Mark J. Hancock submitted and filed herewith, and such other papers and pleadings as may be presented at the hearing on this motion.

January 25 2007

Respectfully submitted,

*[signature]*

Steven D. Wasserman
CA Bar. No. 88291 (appearing *pro hac vice*)
Mark J. Hancock
CA Bar. No. 160662 (appearing *pro hac vice*)
SEDGWICK, DETERT, MORAN & ARNOLD LLP
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
(415) 781-7900
(415) 781-2635 (fax)
steven.wasserman@sdma.com
mark.hancock@sdma.com
*Counsel for Defendants*

Jonathan K. Tycko
D.C. Bar No. 445851
TYCKO & ZAVAREEI LLP
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
(202) 973-0900
(202) 973-0950 (fax)
jtycko@tzslaw.com
*Counsel for Defendants and for Counterclaim-Plaintiff*

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I. **INTRODUCTION AND SUMMARY OF ARGUMENT**

This is a legal malpractice action in which defendants, who are plaintiff's former counsel, recently propounded written discovery seeking documents and information from plaintiff about the settlement plaintiff reached in the underlying litigation that forms part of the basis of this case. At the depositions of plaintiff's officers, defendants asked questions seeking this same information. The one interrogatory and one document request, and related deposition questions, that are the subject of this motion are directed at plaintiff's allegation that defendants' purported negligence caused plaintiff to incur $2.8 million in attorneys' fees and costs (with subsequent counsel) in the defense and ultimate settlement of the underlying litigation. Defendants deny that they are responsible for Coupons' involvement in the underlying litigation, and certainly dispute plaintiff's claim that they should be required to pay Coupons' legal expenses in that case, as well as the money spent to settle that litigation. But given that plaintiff now seeks to claim all of those damages against defendants, discovery regarding that settlement must be available to defendants.

Defendants should be permitted access to this information not only to determine the reasonableness of the claimed damages, but also because defendants need this information to defend themselves against plaintiff's assertion that their alleged negligence proximately caused those damages. Discovery of this information is also necessary so that defendants may determine whether the negligence of others contributed to the damages now claimed against them.

Notwithstanding defendants' extensive meet-and-confer efforts to informally resolve the matters addressed in this motion, plaintiff has refused to provide the required information, citing privilege objections. At the suggestion of the Court, made in the January 4, 2007

SF/1381726v1

discovery conference call held pursuant to the Scheduling Order in this case, defendants have brought the motion to resolve this issue.

The bottom line is that plaintiff should not be permitted to claim millions of dollars in damages against their former counsel, and then conveniently hide behind the attorney-client privilege and work-product doctrine to prevent discovery as to the basis of those damages. Case law and common sense support defendants' position that they are entitled to the requested information and documents sought in this motion.

## II. FACTUAL BACKGROUND

### A. Plaintiff's Allegations

In November of 2002, Coupons was sued for patent infringement in a lawsuit styled *Black Diamond CCT Holdings, LLC, et al. v. Coupons, Inc.*, Case No. RDB-02-CV3701 (the "Black Diamond Litigation"). Ex. A, FAC, at 9.[1] Coupons retained defendants as counsel to represent it in the litigation. Ex. A, FAC, at 9. Defendants eventually ceased to represent Coupons, who then retained the law firm of Foley & Lardner, LLP to represent it in the Black Diamond Litigation.

Coupons alleges that defendants' negligence gave rise to the Black Diamond litigation, which caused it to suffer damages to defend itself and ultimately to settle that patent infringement suit. *See* Ex. A, FAC, at 22. In its Rule 26 Initial Disclosure, Coupons specified that it incurred $2.8 million in attorney's fees and costs in the defense of the Black Diamond Litigation and the settlement of that action. *See* Ex. B, Coupons' Rule 26 Init. Discl. (Oct. 5, 2006) at p. 5, ¶C. Those are the damages it now seeks to recover against defendants. The

---

[1] All references to exhibits pertain to those attached to the accompanying declaration of Mark J. Hancock.

2

single interrogatory and document production request, and related deposition questions, at issue in this motion are directed at this claim for damages.

### B. Defendants' Discovery Is Specifically Tailored To Plaintiff's Alleged Damages Related To The Black Diamond Litigation

On October 9, 2006, defendants served plaintiff with a First Request for Production of Documents. Ex. C. On November 2, defendant Kananen served plaintiff with a First Set of Interrogatories. Ex. D. This discovery requested information and documents concerning, in part, information about the settlement reached in the Black Diamond Litigation. Plaintiff served its responses to Defendants' First Request for Production of Documents on November 14, and its responses to defendants Kananen's First Set of Interrogatories on December 7. Ex. E and F, respectively. Rather than provide complete responses to the discovery concerning the Black Diamond Litigation, plaintiff objected on the grounds of the attorney-client privilege and the work-product doctrine. Defendants maintain that the requests were reasonable in scope and directly relevant to the issues of causation, contributory negligence and the reasonableness of the settlement in the Black Diamond Litigation.

The single document request and lone interrogatory that are the subject of the present dispute between the parties before this Court, along with plaintiff's responses, are as follows:

- **Defendants' First Request for Production of Documents No. 36**: ALL DOCUMENTS RELATING TO the settlement agreement reached in the UNDERLYING ACTION including, but not limited to, DOCUMENTS RELATING TO the settlement negotiations and ANY advice concerning those negotiations OR the eventual settlement received by COUPONS from FOLEY & LARDNER, FARELLA, BRAUN & MARTEL LLP, or any other attorney(s).[2]

---

[2] The "UNDERLYING ACTION" is defined in the discovery requests as "the lawsuit styled *Black Diamond v. Coupons, Inc.*, United States District Court for the District of Maryland, Case No. L02CV3701."

3

SF/1381726v1

**Plaintiff's Response to Defendants' First Request for Production of Documents No. 36**: Coupons objects to this request on the ground that it calls for documents protected by the attorney-client and attorney work product privileges and documents protected as settlement and mediation communications. Without waiving this objection, Coupons will produce the settlement agreement.

- **Defendant Kananen's First Set of Interrogatories-Interrogatory No. 8**: State all of the reasons COUPONS decided to settle the UNDERLYING ACTION on the terms that it did.

   **Plaintiff's Response to Defendant Kananen's First Set of Interrogatories-Interrogatory No. 8**: Coupons objects to this interrogatory on the grounds that it calls for information subject to the attorney-client privilege and the attorney work product protection. Without waiving this objection, Coupons responds as follows: At the time Coupons settled the E-Centives lawsuit, the court had denied Coupons' motion for summary judgment. Coupons therefore faced a time-consuming and expensive trial and possible appeal. Notwithstanding Coupons' continued belief that its products did not infringe the Barnett patents, Coupons concluded that the settlement was reasonable in light of the costs of going forward and the risks, however small, of an adverse result.

Defendants sent a meet and confer letter to plaintiff on December 1, outlining the deficiencies in plaintiff's responses to Defendants' First Set of Request for Production of Documents, including Request No. 36, and requesting that plaintiff supplement its response. Ex. G. On December 21, defendants sent a meet and confer letter outlining the deficiencies in plaintiff's responses to other written discovery, including defendant Kananen's First Set of Interrogatories, including plaintiff's response to Interrogatory No. 8. Ex. H. Over the next few weeks, the parties exchanged several letters and emails concerning the substance of those responses. Ex. I, J, K, L, M, N, O, P, Q, and R.

On January 4, 2007, the parties participated in a telephone conference with the Court concerning outstanding discovery issues. The parties raised the issue of whether plaintiff is required to fully respond to discovery concerning the settlement of the Black Diamond Litigation. The Court declined to decide the dispute at that time and invited briefing on the matter. See Hancock Declaration, ¶ 22.

The dispute between the parties also concerns deposition questions concerning the settlement of the Black Diamond Litigation. On January 9, defendants deposed Coupons' CEO Steven Boal and asked the following question: "What were the reasons that Coupons decided to settle the Black Diamond litigation when it did?" See Hancock Declaration, ¶ 23, Ex. S. Plaintiff's counsel objected on the grounds of attorney-client privilege and instructed the witness not answer. *Ibid.* The deponent provided an incomplete response. *Ibid.* Likewise, on January 12, defendants deposed Coupons' president Jeffrey Weitzman and asked the following question: "With respect to the Black Diamond settlement, what factors went into the decision to settle the Black Diamond suit on the terms that Coupons did?" See Hancock Declaration, ¶ 24, Ex. T. Plaintiff's counsel again objected on the attorney-client privilege grounds and the deponent provided an incomplete response. *Ibid.*

Based on the foregoing, and at the suggestion of the Court, defendants have filed the instant motion.

### III.    LAW & ARGUMENT

#### A.    The Court Should Compel Plaintiff To Serve Further Responses To The Interrogatory And Document Production Request At Issue, And To Provide Complete Responses To Related Deposition Questions

Federal Rule of Civil Procedure 26(b) provides that parties may obtain discovery regarding any non-privileged matter that is relevant to the claim or defense of any party and is admissible in evidence or reasonably calculated to lead to the discovery of admissible evidence. For good cause, the Court may also order discovery of any matter relevant to the subject matter involved in the action. F.R.C.P. 26(b).

A party submitting an interrogatory or a request for production "may move for an order under Rule 37(a) with respect to any objection to or other failure to answer...." See Fed. R. Civ. Proc. 33(b)(5) and 34(b). Under Rule 37(a), "[i]f a deponent fails to answer a question

5

propounded or submitted under Rules 30 or 31,...or a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling answer, or a designation, or an order compelling inspection in accordance with the request...."[3] Fed. R. Civ. Proc. 37(a)(2)(B).

Here, the single interrogatory and document production request at issue, as well as the related deposition questions, go to the heart of plaintiff's damages claim, and are therefore directly relevant to defendants' affirmative defenses and vital to their ability to defend themselves. This information cannot be obtained elsewhere and thus should be compelled by this Court.

### B. By Seeking Damages For Attorneys Fees *And* The Amount Of Settlement Paid In The Black Diamond Litigation, Plaintiff Has Waived The Attorney-Client Privilege

Plaintiff has raised the attorney-client privilege in its objections to the interrogatory and document production request at issue, as well as to related deposition questions. Defendants respectfully submit that plaintiff has waived the privilege based on its demand for damages against defendants, which has placed "at issue" matters relating to the settlement of the Black Diamond Litigation.

"Under the doctrine of 'implied' or 'at issue' waiver, 'the attorney-client privilege is waived when the client places otherwise privileged matters in controversy.'" *Minebea Co., Ltd., v. Papst*, 355 F.Supp.2d 518, 522 (D.D.C. 2005), quoting *Ideal Elec. Sec. Co. v.*

---

[3] Fed Rules Civ Proc R 37(a)(3) provides that "[f]or purposes of this subdivision an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond."

6

*International Fid. Ins. Co.*, 129 F.3d 143, 151 (D.C. Cir. 1997); See also, *Byers v. Burleson*, 100 F.R.D. 436 (D.D.C. 1983) (finding that the plaintiff waived the attorney-client privilege as to her present attorney by placing the statute of limitations in issue).[4]

This Court has also utilized the three-part test first set forth in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975), to determine whether there has been an implied or "at issue" waiver when the following three elements are present: "(1) [T]he assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *Minebea, supra*, 355 F.Supp.2d at 522,[5] quoting *Hearn, supra*, at 581; See also *Rutgard v. Haynes*, 185 F.R.D. 596, 600 (S.D. Cal. 1999).

The case of *Rutgard* is factually on all fours with the present matter. In *Rutgard*, the plaintiff sued his former attorney for alleged misconduct in connection with a civil antitrust case. *Rutgard, supra*, 185 F.R.D. at 598. After the alleged misconduct occurred, plaintiff retained other counsel to defend him in a subsequent yet related malicious prosecution case. *Ibid.* As part of the damages claimed against his former attorney, the plaintiff sought recovery

---

[4] Indeed, Coupons' counsel, Farella, Braun & Martell, should be well-aware of this principle. See *IMO Industries, Inc. v. Anderson Kill & Olick*, 746 N.Y.S.2d 572 (finding that the plaintiff had waived the attorney-client privilege as to communications with its counsel, Farella, Braun & Martell, by placing those communications at issue in its legal malpractice action).

[5] In *Minebea*, this Court held that the plaintiff had waived the attorney-client privilege as to communications with its non-party counsel by placing those communications in issue. See *Minebea, supra*, 355 F.Supp.2d at 524-525. The plaintiff-client had repeatedly stated that it justifiably relied on statements by the defendant, and the defendant's attorneys, concerning various legal matters, including the scope of patents and rights under licenses. *Id.* at 524. The defendant sought information that the plaintiff received from its own lawyers concerning these same matters. *Ibid.* This Court found that by placing its reliance on the defendant's statements in issue, the plaintiff opened the door to exploration of what other persons, documents, and information the plaintiff had relied upon. *Ibid.*

of attorneys' fees paid to defense counsel in the malicious prosecution case, as well as the amount paid to settle the case. *Ibid.* In discovery, the defendant-attorney sought the files of counsel in the malicious prosecution case relating to representation of the plaintiff in that action. *Id.* at 597.

The defendant argued that because the amount of attorneys' fees and settlement were in issue, the attorney-client privilege and work-product doctrine had been waived. *Rutgard, supra,* 185 F.R.D. at 598. The court agreed with the defendant that the plaintiff had waived the attorney-client privilege and stated:

> **By claiming damages to recover the amount of the settlement of the malicious prosecution case, Plaintiff has waived the attorney-client privilege between himself and [counsel] by putting "in issue" the reasonableness of the settlement, and [counsel's] actions in defending him and recommending that settlement.**

*Id.* at 599-600 (emphasis added). Although the plaintiff retained defense counsel in the malicious prosecution case subsequent to the alleged malpractice of the defendant, the court reasoned that "by claiming damages here for the settlement Plaintiff paid in the malicious prosecution action, *the 'underlying action' during which 'issues of proximate cause can arise as to who committed the malpractice' must include both the antitrust case and the malicious prosecution case.*" *Id.* at 599 (emphasis added).

As further support that the "underlying action" must necessarily encompass both actions, the *Rutgard* court pointed out that the defendant reasonably raised the affirmative defense of contributory negligence, alleging that plaintiff's counsel in the malicious prosecution case may have contributed to the settlement damages. *Rutgard, supra,* 185 F.R.D. at 599.

In applying the *Hearn* three-part test, the *Rutgard* court also concluded that the privilege had been waived under that analysis:

8

SF/1381726v1

> Plaintiff has asserted the privilege here after filing suit against Defendant and claiming damages in the amount of the settlement he paid in the malicious prosecution suit. Second, Defendant has shown that the protected information may be relevant to the element of causation and to his affirmative defense of contributory negligence, as well as on the issue of the reasonableness of the damages claimed. **Defendant needs access to materials from the entire malicious prosecution case to defend against the allegation that his alleged negligence during the handling of the prior antitrust suit was in fact the proximate cause of the settlement elected to be paid by Plaintiff in the malicious prosecution suit.** Third, application of the attorney-client privilege would deny Defendant access to the relevant information available regarding this aspect of his defense herein. This Court finds that Plaintiff waived the attorney-client privilege with regard to communications between himself and [counsel] concerning [counsel's] defense of the malicious prosecution suit.[6]

*Rutgard, supra*, 185 F.R.D. at 600 (emphasis added).

Here, Coupons has placed its purportedly privileged communications concerning the Black Diamond Litigation in issue, just as the plaintiff in *Rutgard* did. Coupons alleges that because defendants' negligence gave rise to the Black Diamond Litigation, it has suffered damages related to defending itself *and* ultimately settling that suit. Whether defendants' alleged negligence was the proximate cause of those damages has thus clearly been placed in issue by Coupons. Moreover, defendants herein have raised the affirmative defense of contributory negligence, and whether counsel in the Black Diamond Litigation contributed to the alleged settlement damages is also clearly in issue.[7] As a result, the scope of the "underlying action" necessarily includes both the events prior to and during the Black Diamond

---

[6] Moving parties anticipate that plaintiff will raise the case of *Fishcel & Kahn, Ltd, v. Van Straatten Gallery, Inc.*, 189 Ill.2d 579 (Ill. 2000) in its opposition. That case is distinguishable from *Rutgard* and the present action because there the court determined that the information sought was available from other sources, whereas defendants here are clearly unable to obtain the requested information elsewhere. See *Fishcel & Kahn, Ltd, supra*, 189 Ill.2d at 589-590.

[7] Defendants have noticed the deposition of Foley & Lardner. Plaintiff's counsel has indicated that it will raise objections based on the attorney-client privilege at that deposition. Accordingly, counsel for plaintiff and defendants have agreed to put that deposition off until the court rules on this motion.

Litigation. In fact, in this case that nexus is even stronger than in *Rutgard* because here the alleged malpractice and the ultimate settlement all involve the same case – the Black Diamond Litigation. Coupons must not be permitted to seek damages for the settlement of the Black Diamond Litigation without allowing defendants to conduct discovery concerning that settlement. *Rutgard, supra,* 185 F.R.D. at 600.

The application of the three-part *Hearn* test to the present case likewise leads to the inevitable conclusion that plaintiff has waived the attorney-client privilege. First, Coupons asserted the privilege after filing suit against defendants and claiming as damages the settlement it paid in the underlying Black Diamond Litigation. Second, the communications with counsel in the Black Diamond Litigation may be relevant to the element of causation and to defendants' affirmative defense of contributory negligence, as well as to the issue of the reasonableness of the damages claimed. Defendants need access to communications between Coupons and Foley & Lardner concerning the Black Diamond Litigation settlement for potential use in defending against the allegation that their alleged negligence was the proximate cause of the settlement Coupons ultimately elected to pay. Third, application of the attorney-client privilege would completely deny defendants any access to the relevant information regarding this important aspect of their defense given that they would be unable to obtain the requested information elsewhere (unlike the situation in the *Fischel* case). What advice plaintiff was given on settlement and who gave the advice are important in determining whether the settlement was reasonable. Additionally, documents leading up to the eventual settlement may shed light on the reasonableness of that settlement, why that amount was agreed to and whether the negligence of others contributed to it.

Case law thus confirms that Coupons has waived the attorney-client privilege and should be required to provide the requested information and documents concerning the Black Diamond settlement. As the court noted in *Pappas v. Holloway,* 787 P.2d 30 (Wash. 1990):

> In this instance, the Holloways [former clients] cannot counterclaim against Pappas [former attorney] for malpractice and at the same time conceal from him communications which have a direct bearing on this issue simply because the attorney-client privilege protects them. To do so would in effect enable them to use as a sword the protection which the Legislature awarded them as a shield.

*Pappas, supra,* 787 P.2d at 36 (finding the plaintiff had waived the attorney-client privilege with respect to communications with other attorneys).

### C.  Plaintiff's Work Product Objection Is Likewise Without Merit

Plaintiff also invoked the work-product doctrine as part of its objection to the written discovery requests at issue in this motion. That objection in this context also fails.

Federal Rule of Civil Procedure 26(b)(3) provides, in pertinent part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only ***upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.*** In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

(Emphasis added.) "Rule 26(b)(3) on its face protects against the discovery of [opinion] work product. However, exceptions have been made where such information is directly in issue, and the need for its production is compelling...." *Rutgard, supra,* 185 F.R.D. at 601, quoting *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926, 931 (N.D. Cal. 1976).

11

Applying Rule 26(b)(3) and the exception thereto, the court in *Rutgard* held that the work product, including mental impressions and opinions, of counsel in the malicious prosecution case was discoverable. *Rutgard, supra*, 185 F.R.D. at 601. The court found that the "work product may be relevant to the element of causation and to Defendant's affirmative defense of contributory negligence, as well as whether the damages claimed are reasonable." *Ibid*. The court further found that the defendant needed access to the malicious prosecution files to defend against the allegations that his alleged negligence was the proximate cause of the settlement amount that the plaintiff had elected to pay. *Ibid*. The malicious prosecution files were the only source of this information. *Ibid*.

Likewise in the instant case, the work-product doctrine does not protect the files concerning the Black Diamond Litigation and the settlement of that case. Because Coupons is claiming damages for the attorneys' fees and costs expended in the defense of the Black Diamond Litigation and the settlement amount it paid in that case, communications concerning those issues have been placed directly in issue by Coupons. The communications related to the defense costs and the settlement may be relevant to the element of causation and to defendants' affirmative defense of contributory negligence, as well as to the issue of the reasonableness of the damages claimed. Defendants need access to these materials to defend against the allegation that their alleged negligence was the proximate cause of the defense costs expended and the settlement plaintiff elected to pay. Defendants, therefore, have both a substantial and compelling need for this information and obviously cannot obtain it elsewhere. As such, defendants have met the requirements of establishing why plaintiff cannot rely on the work-product doctrine to shield production of the requested information.

### D. Plaintiff's Objection to Defendants' Document Request As "Protected Settlement and Mediation Communications" is Misplaced

In addition to the attorney-client privilege and work-product objections, plaintiff's response to Defendants' First Request for Production of Documents-No. 36 also contains an objection that the request seeks "documents protected as settlement and mediation communications." Ex. E. This objection is misplaced because F.R.E. Rule 408, which governs the admissibility of settlement communications, does not apply to communications that are not offered to "prove liability for or invalidity of the [compromised] claim or its amount." *Id.* Here, defendants are seeking settlement communications in order to defend themselves against Coupons' claims, not for a purpose prohibited by Rule 408. Any objection based on protected settlement or mediation communications is, therefore, inapplicable to the present dispute and defendants are entitled to production of the requested information pertaining to the settlement since plaintiff has placed the settlement directly at issue in its claim for damages against defendants.

### IV. CONCLUSION

Based on the foregoing, these moving Defendants respectfully request that the Court grant their motion compelling Coupons to provide further responses to Defendants' First Request for Production-No. 36 and defendant Kananen's First Set of Interrogatories-No. 8, and to produce Steven Boal and Jeffrey Weitzman for a second deposition to answer questions concerning the Black Diamond settlement.

January 25, 2007

Respectfully submitted,

*[signature]*

Steven D. Wasserman
CA Bar. No. 88291 (appearing *pro hac vice*)
Mark J. Hancock

13

SF/1381726v1

        CA Bar. No. 160662 (appearing *pro hac vice*)
        SEDGWICK, DETERT, MORAN & ARNOLD LLP
        One Market Plaza
        Steuart Tower, 8th Floor
        San Francisco, California 94105
        (415) 781-7900
        (415) 781-2635 (fax)
        steven.wasserman@sdma.com
        mark.hancock@sdma.com
        *Counsel for Defendants*

        Jonathan K. Tycko
        D.C. Bar No. 445851
        TYCKO & ZAVAREEI LLP
        2000 L Street, N.W., Suite 808
        Washington, D.C. 20036
        (202) 973-0900
        (202) 973-0950 (fax)
        jtycko@tzslaw.com
        *Counsel for Defendants and for Counterclaim-*
        *Plaintiff*