Coupons, Inc. v. Ellen A. Efros, et al.
USDC, District of Columbia, 1:06-CV-00142 HHK

DECLARATION OF MARK J. HANCOCK IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL

# EXHIBIT O

## Seidlitz, Erik

| | |
|---|---|
| **From:** | NGoteiner@fbm.com |
| **Sent:** | Thursday, December 28, 2006 10:33 AM |
| **To:** | erik.seidlitz@sdma.com |
| **Cc:** | DCusack@fbm.com; mark.hancock@sdma.com; steven.wasserman@sdma.com; stephanie.sheridan@sdma.com; jtycko@tzlegal.com |
| **Subject:** | RE: Coupons / Plaintiff's Resp. to RFPs and the AC privilege |

We also read your cases as not providing you the support that you believe they do. Dennis will address that point when he has a moment during his much deserved downtime. Thanks.

-----Original Message-----
**From:** Goteiner, Neil (24) x4485
**Sent:** Thursday, December 28, 2006 10:21 AM
**To:** 'Seidlitz, Erik'
**Cc:** Cusack, Dennis (27) x4475; Hancock, Mark; Wasserman, Steven; Sheridan, Stephanie; 'jtycko@tzlegal.com'
**Subject:** RE: Coupons / Plaintiff's Resp. to RFPs and the AC privilege

Erik: Deem this the response that you requested by tomorrow. You're absolutely correct about the limited nature of my email. But you are incorrect about whether Rader had a chance to object to the Indian harbor settlement. Mark knew about settlement discussions and the pending settlement, and could have objected to it. But Rader was thrilled with it, as you've subsequently admitted. Indeed, the bigger trump on this point is your judicial admission about the success of the Indian Harbor litigation. This is the core of your summary judgment motion. That is the real mccoy for judicial estoppel, according to your cases. It's too late to reconsider the issue.

Regarding the Black Diamond litigation, you're also wrong but for other reasons that I invite you to address as part of our meet and confer. It's my understanding that you knew of the Black Diamond settlement amount, and by the time that Rader knew about the probable malpractice claim. But Rader said nothing to stop the settlement or to suggest that Rader thought the settlement unreasonably high. More fundamentally, and independently, neither Rader nor your office have suggested at all anywhere that the Black Diamond litigation was settled at too high an amount given the litigation costs of the pending trial and Efros' and Kananen's omissions during the litigation, as well as their admissions in the deposition. I'm kind of astonished that you are pushing this discovery point. This is why we need to go a bit further on our meet and confer obligations if you truly want to go down this road and feature Rader's actions in any discovery motion.

Efros' and Kananen's failure to think through the significance of the micro sites' collection of personal identification information, the Yahoo-Coupon contract (discussing personal identification information) about which Kananen spoke with Yahoo and Boal, and Efros' dispositive admission of the "very close" infringement question given the micro sites, and the failure of Rader's summary judgment motion all mean two things: (1) the settlement of the Black Diamond litigation was terribly reasonable given the liability risks (significance to Coupons) and litigation costs; and (2) it was Rader's malpractice in failing to pick up these issues that contributed to the stubborn conclusion that the settlement was reasonable. Indeed, point (1) is clearly enough. Further Black Diamond had other arguments that made the litigation a horse race, of which Rader was well aware. On top of all this, Efros' malpractice on the 273 issue also made the settlement reasonable. While Boal couldn't quantify in his deposition the 273 risk, Efros' malpractice increased Coupons' risk for paying Black Diamond's attorney's fees, and therefore the reasonableness of the settlement.

I heard Efros and Kananen's testimony that neither of them knew about the micro sites until well into the Black Diamond litigation. In my opinion, the Court will be incredulous about that position given Kananen's other testimony, and in any event will ask the fundamental question of how that could have escaped your

early due diligence in the case since it was such an important fact. I doubt that you want to raise this front and center in a motion to compel, but I've been wrong before about Rader's self-destructive litigation strategy and tactics.

In any event, we need not quibble about all this now. What we need to do, however, for our meet and confer is first to hear from you that based on all of Rader's knowledge about the risks of the litigation at the time of the hand over to Foley (risks including costs of pre trial, trial and appeal) that Rader and you have formed the good faith provisional view that the Black Diamond settlement was unreasonable, and why. In short we need to hear from you that Rader objects to the Black Diamond litigation as unreasonable. That is the pre-condition, in my opinion, for making this inquiry relevant. Then we can proceed to address further your demand for these materials. Neil

-----Original Message-----
**From:** Seidlitz, Erik [mailto:erik.seidlitz@sdma.com]
**Sent:** Thursday, December 28, 2006 9:26 AM
**To:** Goteiner, Neil (24) x4485
**Cc:** Cusack, Dennis (27) x4475; Hancock, Mark; Wasserman, Steven; Sheridan, Stephanie; 'jtycko@tzlegal.com'
**Subject:** RE: Coupons / Plaintiff's Resp. to RFPs and the AC privilege

Neil -

Your December 26, 2006 email only addresses one issue raised in our December 19, 2006 letter, and the point you make about the arbitration settlement does not relate to the particular document request at issue.

Plaintiff is seeking to recover the cost of the settlement monies paid in the Black Diamond litigation. Thus, the reasonableness of that amount, and whether it should have been paid at all, are relevant to the issue of damages. This is exactly the same situation as in *Rutgard* where the court found that the attorney-client privilege and work-product doctrine had been waived. The request which is the subject of our meet and confer letter pertains to the settlement in the Black Diamond litigation. Thus, your comments about the settlement in the arbitration are irrelevant. Also, there has been no "judicial estoppel" of any sort--Rader did not have any opportunity to object to any settlement entered into by Coupons.

Please provide a complete response to all issues raised in our December 19, 2006 letter by December 29, 2006.

Thank you,


**Erik R. Seidlitz**
Attorney at Law
**SEDGWICK, DETERT, MORAN & ARNOLD LLP**
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Direct: 415.627.1579
Main: 415.781.7900
Fax: 415.781.2635
erik.seidlitz@sdma.com
www.sdma.com

-----Original Message-----
**From:** NGoteiner@fbm.com [mailto:NGoteiner@fbm.com]
**Sent:** Tuesday, December 26, 2006 5:12 PM
**To:** erik.seidlitz@sdma.com
**Cc:** DCusack@fbm.com; mark.hancock@sdma.com; steven.wasserman@sdma.com;

1/22/2007

stephanie.sheridan@sdma.com; jtycko@tzlegal.com
**Subject:** RE: Coupons / Plaintiff's Resp. to RFPs and the AC privilege

Dennis is out of the office on vacation and I don't want to repeat his research or speak for him. I would, however, independently offer this for us to talk about in his absence. Malpractice defendant lawyers will sometimes challenge the underlying settlement as too low and thereby put in issue whether the client sufficiently mitigated its losses so as to be able to proceed against the lawyer for a specific amount of damages. Otherwise the reasonableness of the underlying settlement is not in issue and there is no reason to carve out an exception to the AC privilege and work product doctrine. Rader of course is judicially estopped to make this argument since Rader has asserted that the arbitration and the settlement was a success since the $3 million settlement was a happy event. And of course, Rader never objected to the settlement and never suggested that Coupons should obtain more. Thus, the communications Rader seeks are irrelevant, are a breach of the AC privilege and work product doctrine, and are outside the narrow exception which Rader has foregone. We can discuss this when you and Mark are prepared to respond to my outstanding questions.

-----Original Message-----
**From:** Seidlitz, Erik [mailto:erik.seidlitz@sdma.com]
**Sent:** Tuesday, December 26, 2006 11:53 AM
**To:** Goteiner, Neil (24) x4485
**Cc:** Cusack, Dennis (27) x4475; Hancock, Mark; Wasserman, Steven; Sheridan, Stephanie; 'jtycko@tzlegal.com'
**Subject:** Coupons / Plaintiff's Resp. to RFPs

Neil -

I understand Dennis Cusack is out of the office until next week so I am directing the attached correspondence to your attention. Please provide a response to the letter by December 29, 2006, in lieu of the December 27 date provided for in the letter.

Thank you,

**Erik R. Seidlitz**
Attorney at Law
**SEDGWICK, DETERT, MORAN & ARNOLD LLP**
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Direct: 415.627.1579
Main: 415.781.7900
Fax: 415.781.2635
erik.seidlitz@sdma.com
www.sdma.com

---

The information in this email is intended for the named
recipients only.  It may contain privileged and confidential
matter.  If you have received this email in error, please
notify the sender immediately by replying to this email.
Do not disclose the contents to anyone.  Thank you.

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance
with Treasury Department regulations, we inform you that
any U.S. federal tax advice contained in this correspondence

1/22/2007

(including any attachments) is not intended to be used, and
cannot be used, for the purpose of (i) avoiding penalties that
may be imposed under the U.S. Internal Revenue Code or
(ii) promoting, marketing or recommending to another party
any transaction or matter addressed herein.

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Farella Braun + Martel LLP

The information in this email is intended for the named
recipients only.  It may contain privileged and confidential
matter.  If you have received this email in error, please
notify the sender immediately by replying to this email.
Do not disclose the contents to anyone.  Thank you.

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance
with Treasury Department regulations, we inform you that
any U.S. federal tax advice contained in this correspondence
(including any attachments) is not intended to be used, and
cannot be used, for the purpose of (i) avoiding penalties that
may be imposed under the U.S. Internal Revenue Code or
(ii) promoting, marketing or recommending to another party
any transaction or matter addressed herein.

1/22/2007