Coupons, Inc. v. Ellen A. Efros, et al.
USDC, District of Columbia, 1:06-CV-00142 HHK

DECLARATION OF MARK J. HANCOCK IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL

# EXHIBIT R

## Seidlitz, Erik

| | |
|---|---|
| **From:** | NGoteiner@fbm.com |
| **Sent:** | Thursday, December 28, 2006 3:41 PM |
| **To:** | mark.hancock@sdma.com; erik.seidlitz@sdma.com |
| **Cc:** | DCusack@fbm.com; steven.wasserman@sdma.com; stephanie.sheridan@sdma.com; jtycko@tzlegal.com |
| **Subject:** | RE: Coupons / Plaintiff's Resp. to RFPs and the AC privilege |

Mark: You're right that it was the Foley summary judgment motion, but the point is that Coupons lost. You're wrong about not knowing about the Indian Harbor settlement, I mentioned to you that we were settling for $ 3million and thought that there was an email reference as well which I'll look for. In any event, the dispositive point is not whether you/Rader knew about it, but that you've argued the IH settlement was a successful settlement which precludes Rader now objecting to it. I had understood that Rader was informed of the Black Diamond settlement amount, and will reconfirm that. In any event, and again more dispositively, Rader has not objected to that settlement as being too much and obviously cannot given the risks, including the 273 issue irrespective of how Boal evaluated it. And so while I take your objections to the facts, (and we should be objective about the facts), even if you're correct on each of them, they are totally immateral to the merits, as also reflected in the secondary importance I give them in my email.

You are missing the relevant language of the Yahoo contract that follows your quoted language and establishes that the Yahoo contract is indeed important to Rader's malpractice: The Yahoo Agreement provided that Yahoo could collect personal identification information from consumers beyond zip codes, but that Yahoo would keep the information. Even IPISC understood this.   Robert Fletcher Depo., vol. 4, 28:25-31:23;  Robin Fletcher Depo., vol. 4, 130:6-17. Yahoo could also use such personal identification information to send consumers emails with links to coupons accessible through  the Coupons system.  The Yahoo Agreement provided in relevant part:

> "Yahoo desires to license from Coupons . . the Coupons Inc. Software, as defined herein. Coupons Inc desires to  . . . provide the specified technical expertise and resources required to assist Yahoo in utilizing the Coupons, Inc. Software during the trial period, also as set forth herein." First Recital.
>
> "Although a consumer may be required to furnish his or her zip code at the time he or she clicks on Banner Advertising to print a Coupon, no Coupon or Banner Advertising may contain terms or conditions of redemption which are unlawful in the Territory, or which require a consumer to furnish personal information other than the zip code to Coupons, Inc. as a precondition to redeeming, viewing, or printing a coupon, such as name address, phone number, or information about the consumer's use of the Yahoo Properties. *Notwithstanding the foregoing, Coupons, Inc. understands that Yahoo may request additional information from consumers or may integrate the use of Yahoo!Maps or other Yahoo or their party technologies in conjunction with Coupons on the*

1/22/2007

> *Yahoo Properties – for example, to display and print a list of Advertiser retail locations related to Coupon redemption – and that any additional information requested from a consumer by Yahoo (i.e. to generate such maps or to utilize such technologies or for market research purposes) will not be provided to Coupons, Inc, and will be owned solely by Yahoo." Id.* at ¶2.2 (Emphasis added.)

> "Yahoo and Yahoo subsidiaries will send Coupon-enabled electronic mail only to consumers who opt in to receive such electronic mail." Id. at ¶ 2.1 (Emphasis added.)

Thus, the Yahoo Agreement clearly provided that Yahoo, in conjunction with using the Coupons Bricks system, could collect personal identification information for its own purposes beyond zip codes. The Agreement also provided for the consumer to opt out of data collection, if he or she wished. ¶3.2) Indeed, the Yahoo Agreement further described the collection of additional personal information by way of its exhibits. A Coupons Privacy Policy, a defined term referring to Exhibit C, makes clear that other web sites linked to Coupons' web site may collect "personally identifiable information."*Id.* at p. 3. The Yahoo "Privacy Policy," also a defined term in the Agreement, "describes how and what data is collected and generated by Yahoo on the Yahoo Properties and explains how this data may be used or exchanged with third parties." p. 4. The Yahoo Agreement thus described in detail Yahoo's collection of personal identification information, in addition to zip codes. If Indian Harbor understood that the Yahoo contract provided for collection of personal identification information, it's inconceivable and malpractice that Kananen did not and did not know of it. The same goes for Efros.

In any event, without a clearly stated threshold objection to the two settlements, made rationally and in good faith, and not just to get privileged material, we are constrained to decline your request to produce privileged material. Even if you make the objection, there are the other issues which Dennis and I have addressed.

-----Original Message-----
**From:** Hancock, Mark [mailto:mark.hancock@sdma.com]
**Sent:** Thursday, December 28, 2006 2:41 PM
**To:** Goteiner, Neil (24) x4485; Seidlitz, Erik
**Cc:** Cusack, Dennis (27) x4475; Wasserman, Steven; Sheridan, Stephanie; 'jtycko@tzlegal.com'
**Subject:** RE: Coupons / Plaintiff's Resp. to RFPs and the AC privilege

Neil, I have to jump in here just to point out that you are making a lot of erroneous factual assertions. You may be planning to submit your email in connection with our possible motion to compel, but it needs to be made clear that you are really distorting things. These are some of the more obvious inaccuracies in your message below. I disagree with your arguments about the merits of your case and about the deposition testimony, but I am leaving those alone for now.

1. We were told nothing about the settlement discussions between Coupons and Indian Harbor.

2. Who are you saying knew about the Black Diamond settlement amount and when? Rader had been relieved as counsel at the time the settlement was reached, and the deal was negotiated without their input. Rader had no opportunity to object.

1/22/2007

3. You mischaracterize the Yahoo-Coupons contract. The agreement states that Yahoo may not "require a customer to furnish personal information other than the zip code to Coupons, Inc. as a pre-condition to redeeming, viewing, or printing a Coupon, such as name, address, phone number, or information about the customer's use of the Yahoo Properties."

4. There was no "Rader summary judgment" motion. The motion was prepared by successor counsel, who gave Rader no meaningful opportunity for input.

5. You mischaracterize Boal's testimony regarding the 273 defense. He testified that the effect of the defense was "de minimus."

Argue what you want as part of the meet and confer process, but don't misstate the facts. It's not productive.

Mark

-----Original Message-----
**From:** NGoteiner@fbm.com [mailto:NGoteiner@fbm.com]
**Sent:** Thursday, December 28, 2006 10:33 AM
**To:** erik.seidlitz@sdma.com
**Cc:** DCusack@fbm.com; mark.hancock@sdma.com; steven.wasserman@sdma.com; stephanie.sheridan@sdma.com; jtycko@tzlegal.com
**Subject:** RE: Coupons / Plaintiff's Resp. to RFPs and the AC privilege

We also read your cases as not providing you the support that you believe they do. Dennis will address that point when he has a moment during his much deserved downtime. Thanks.

-----Original Message-----
**From:** Goteiner, Neil (24) x4485
**Sent:** Thursday, December 28, 2006 10:21 AM
**To:** 'Seidlitz, Erik'
**Cc:** Cusack, Dennis (27) x4475; Hancock, Mark; Wasserman, Steven; Sheridan, Stephanie; 'jtycko@tzlegal.com'
**Subject:** RE: Coupons / Plaintiff's Resp. to RFPs and the AC privilege

Erik: Deem this the response that you requested by tomorrow. You're absolutely correct about the limited nature of my email. But you are incorrect about whether Rader had a chance to object to the Indian harbor settlement. Mark knew about settlement discussions and the pending settlement, and could have objected to it. But Rader was thrilled with it, as you've subsequently admitted. Indeed, the bigger trump on this point is your judicial admission about the success of the Indian Harbor litigation. This is the core of your summary judgment motion. That is the real mccoy for judicial estoppel, according to your cases. It's too late to reconsider the issue.

Regarding the Black Diamond litigation, you're also wrong but for other reasons that I invite you to address as part of our meet and confer. It's my understanding that you knew of the Black Diamond settlement amount, and by the time that Rader knew about the probable malpractice claim. But Rader said nothing to stop the settlement or to suggest that Rader thought the settlement unreasonably high. More fundamentally, and independently, neither Rader nor your office have suggested at all anywhere that the Black Diamond litigation was settled at too high an amount given the litigation costs of the pending trial and Efros' and Kananen's omissions during the litigation, as well as their admissions in the deposition. I'm kind of astonished that you are pushing this discovery point. This is why we need to go a bit further on our meet and confer obligations if you truly want to go down this road and feature Rader's actions in any discovery motion.

Efros' and Kananen's failure to think through the significance of the micro sites' collection of personal identification information, the Yahoo-Coupon contract (discussing personal identification information) about which Kananen spoke with Yahoo and Boal, and Efros' dispositive admission of the "very close" infringement question given the micro sites, and the failure of Rader's summary

1/22/2007

judgment motion all mean two things: (1) the settlement of the Black Diamond litigation was terribly reasonable given the liability risks (significance to Coupons) and litigation costs; and (2) it was Rader's malpractice in failing to pick up these issues that contributed to the stubborn conclusion that the settlement was reasonable. Indeed, point (1) is clearly enough. Further Black Diamond had other arguments that made the litigation a horse race, of which Rader was well aware. On top of all this, Efros' malpractice on the 273 issue also made the settlement reasonable. While Boal couldn't quantify in his deposition the 273 risk, Efros' malpractice increased Coupons' risk for paying Black Diamond's attorney's fees, and therefore the reasonableness of the settlement.

I heard Efros and Kananen's testimony that neither of them knew about the micro sites until well into the Black Diamond litigation. In my opinion, the Court will be incredulous about that position given Kananen's other testimony, and in any event will ask the fundamental question of how that could have escaped your early due diligence in the case since it was such an important fact. I doubt that you want to raise this front and center in a motion to compel, but I've been wrong before about Rader's self-destructive litigation strategy and tactics.

In any event, we need not quibble about all this now. What we need to do, however, for our meet and confer is first to hear from you that based on all of Rader's knowledge about the risks of the litigation at the time of the hand over to Foley (risks including costs of pre trial, trial and appeal) that Rader and you have formed the good faith provisional view that the Black Diamond settlement was unreasonable, and why. In short we need to hear from you that Rader objects to the Black Diamond litigation as unreasonable. That is the pre-condition, in my opinion, for making this inquiry relevant. Then we can proceed to address further your demand for these materials. Neil

>-----Original Message-----
> **From:** Seidlitz, Erik [mailto:erik.seidlitz@sdma.com]
> **Sent:** Thursday, December 28, 2006 9:26 AM
> **To:** Goteiner, Neil (24) x4485
> **Cc:** Cusack, Dennis (27) x4475; Hancock, Mark; Wasserman, Steven; Sheridan, Stephanie; 'jtycko@tzlegal.com'
> **Subject:** RE: Coupons / Plaintiff's Resp. to RFPs and the AC privilege
>
> Neil -
>
> Your December 26, 2006 email only addresses one issue raised in our December 19, 2006 letter, and the point you make about the arbitration settlement does not relate to the particular document request at issue.
>
> Plaintiff is seeking to recover the cost of the settlement monies paid in the Black Diamond litigation. Thus, the reasonableness of that amount, and whether it should have been paid at all, are relevant to the issue of damages. This is exactly the same situation as in *Rutgard* where the court found that the attorney-client privilege and work-product doctrine had been waived. The request which is the subject of our meet and confer letter pertains to the settlement in the Black Diamond litigation. Thus, your comments about the settlement in the arbitration are irrelevant. Also, there has been no "judicial estoppel" of any sort—Rader did not have any opportunity to object to any settlement entered into by Coupons.
>
> Please provide a complete response to all issues raised in our December 19, 2006 letter by December 29, 2006.
>
> Thank you,
>
>
> **Erik R. Seidlitz**
> Attorney at Law
> **SEDGWICK, DETERT, MORAN & ARNOLD LLP**
> One Market Plaza
> Steuart Tower, 8th Floor

1/22/2007

San Francisco, California 94105
Direct: 415.627.1579
Main: 415.781.7900
Fax: 415.781.2635
erik.seidlitz@sdma.com
www.sdma.com

-----Original Message-----
**From:** NGoteiner@fbm.com [mailto:NGoteiner@fbm.com]
**Sent:** Tuesday, December 26, 2006 5:12 PM
**To:** erik.seidlitz@sdma.com
**Cc:** DCusack@fbm.com; mark.hancock@sdma.com; steven.wasserman@sdma.com; stephanie.sheridan@sdma.com; jtycko@tzlegal.com
**Subject:** RE: Coupons / Plaintiff's Resp. to RFPs and the AC privilege

Dennis is out of the office on vacation and I don't want to repeat his research or speak for him. I would, however, independently offer this for us to talk about in his absence. Malpractice defendant lawyers will sometimes challenge the underlying settlement as too low and thereby put in issue whether the client sufficiently mitigated its losses so as to be able to proceed against the lawyer for a specific amount of damages. Otherwise the reasonableness of the underlying settlement is not in issue and there is no reason to carve out an exception to the AC privilege and work product doctrine. Rader of course is judicially estopped to make this argument since Rader has asserted that the arbitration and the settlement was a success since the $3 million settlement was a happy event. And of course, Rader never objected to the settlement and never suggested that Coupons should obtain more. Thus, the communications Rader seeks are irrelevant, are a breach of the AC privilege and work product doctrine, and are outside the narrow exception which Rader has foregone. We can discuss this when you and Mark are prepared to respond to my outstanding questions.

-----Original Message-----
**From:** Seidlitz, Erik [mailto:erik.seidlitz@sdma.com]
**Sent:** Tuesday, December 26, 2006 11:53 AM
**To:** Goteiner, Neil (24) x4485
**Cc:** Cusack, Dennis (27) x4475; Hancock, Mark; Wasserman, Steven; Sheridan, Stephanie; 'jtycko@tzlegal.com'
**Subject:** Coupons / Plaintiff's Resp. to RFPs

Neil -

I understand Dennis Cusack is out of the office until next week so I am directing the attached correspondence to your attention. Please provide a response to the letter by December 29, 2006, in lieu of the December 27 date provided for in the letter.

Thank you,

**Erik R. Seidlitz**
Attorney at Law
**SEDGWICK, DETERT, MORAN & ARNOLD LLP**
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Direct: 415.627.1579
Main: 415.781.7900
Fax: 415.781.2635
erik.seidlitz@sdma.com
www.sdma.com

1/22/2007

The information in this email is intended for the named
recipients only.  It may contain privileged and confidential
matter.  If you have received this email in error, please
notify the sender immediately by replying to this email.
Do not disclose the contents to anyone.  Thank you.

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance
with Treasury Department regulations, we inform you that
any U.S. federal tax advice contained in this correspondence
(including any attachments) is not intended to be used, and
cannot be used, for the purpose of (i) avoiding penalties that
may be imposed under the U.S. Internal Revenue Code or
(ii) promoting, marketing or recommending to another party
any transaction or matter addressed herein.

---

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Farella Braun + Martel LLP

---

The information in this email is intended for the named
recipients only.  It may contain privileged and confidential
matter.  If you have received this email in error, please
notify the sender immediately by replying to this email.
Do not disclose the contents to anyone.  Thank you.

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance
with Treasury Department regulations, we inform you that
any U.S. federal tax advice contained in this correspondence
(including any attachments) is not intended to be used, and
cannot be used, for the purpose of (i) avoiding penalties that
may be imposed under the U.S. Internal Revenue Code or
(ii) promoting, marketing or recommending to another party
any transaction or matter addressed herein.

---

The information in this email is intended for the named
recipients only.  It may contain privileged and confidential
matter.  If you have received this email in error, please
notify the sender immediately by replying to this email.
Do not disclose the contents to anyone.  Thank you.

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance
with Treasury Department regulations, we inform you that
any U.S. federal tax advice contained in this correspondence

(including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

1/22/2007