Coupons, Inc. v. Ellen A. Efros, et al.
USDC, District of Columbia, 1:06-CV-00142 HHK

DECLARATION OF MARK J. HANCOCK IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL

# EXHIBIT T

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

--oOo--

COUPONS, INC.,              )
                            )
       Plaintiff,           )
                            )
   vs.                      ) No. 1:06-CV-00142-HHK
                            )
ELLEN A. EFROS, et al.,     )
                            )
       Defendants.          )
_____)

VIDEOTAPED DEPOSITION OF JEFFREY WEITZMAN

Friday, January 12, 2007

CONFIDENTIAL TRANSCRIPT AND EXHIBITS

ROUGH TRANSCRIPT

REPORTED BY: DENISE A. FORD, CSR 7525 (390082)

1   direct impact on the -- on how we were able to
2   manage that litigation.
3           MR. HANCOCK:  Q.  With respect to
4   the Black Diamond settlement, what factors went into
5   the decision to settle the Black Diamond suit on the
6   terms that Coupons did?
7           MR. CUSACK:  Let me caution you, you
8   can answer that, just do it without reference to
9   discussions you had with attorneys.
10          THE WITNESS:  And of course most of
11  those decisions were made in collaboration and in
12  discussions with our attorneys.
13      Some of the factors were the likely costs of
14  going all the way through litigation, the likelihood
15  that we would win on -- win at trial versus -- and
16  our attorneys at the time at Foley felt that -- we
17  can't tell you that, sorry.
18      That there were discussions around the risks
19  of prevailing at trial, the risks and likelihood of
20  prevailing on appeal if that was necessary, and the
21  cost of going through all of that, and we had to
22  consider what our tolerance was for incurring those
23  costs and our ability to meet those costs.
24      So in April of 2005 when we settled, in
25  March and April of 2005, we had very little money

ROUGH TRANSCRIPT                                    196

```
 1   left.  I don't recall specifics.  I think we may
 2   have noted it in here.  We were pretty low in cash.
 3   We had gone to the well, so to speak, in terms of
 4   getting additional funding through the sale of stock
 5   a number of times.  And we had to consider the
 6   likelihood that we could continue to fund our
 7   operations and the lawsuit, our existing cash, our
 8   outstanding legal bills and the prospects in the
 9   case.  And those along with some obviously factors
10   considering what was being proposed and what was
11   offered and what impact that would have on us, on
12   our business going forward, those were the things
13   that ultimately led us to accept that settlement.
14           MR. HANCOCK:  Thank you.  At least
15   for now those are all the questions I have.  I think
16   he has a few.
17           Let me add one thing, I think my position
18   might be anticipated by counsel already, I didn't
19   have a chance, obviously, to review the
20   late-produced documents today after lunch.  At least
21   as to and those perhaps other issues I am not going
22   agree that the deposition is closed, but I am not
23   saying I am going to ask you to come back either,
24   but it is a possibility.
25           MR. CUSACK:  Steven observed on
```

```
 1   Tuesday he has never heard an attorney agree a
 2   deposition was closed.  Your reservations are noted.
 3                MR. TYCKO:  I guess the other issue
 4   that falls into that same category is the issue of
 5   the assertion of the attorney/client privilege with
 6   respect to the Foley communications.
 7                MR. CUSACK:  Right.  That's on the
 8   record.
 9                EXAMINATION BY MR. TYCKO
10        Q.   Good afternoon, Mr. Weitzman.  I am
11   Jonathan Tycko with Tycko & Zavareei LLP.  I
12   represent the defendants in this case, but I also
13   represent the law firm of Rader, Fishman & Grauer in
14   connection with the counterclaims that have been
15   asserted against Coupons, Inc.
16        I am just going to ask you a few questions
17   related to the counterclaim.
18        Now, I believe that you previously testified
19   that after Mr. Serafin left Coupons that you became
20   the person who was responsible for reviewing Rader,
21   Fishman & Grauer's invoices; is that correct?
22        A.   Yes.
23        Q.   And was that January of 2005?  2004?
24        A.   2004, I believe.  I don't know when
25   the first time we received an invoice after that
```